UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SARA & MICHAEL TILLER                          :
as parents and next friend of the minor child, :
A.T.,                                          :
and                                            :
A.T., individually                             :
4515 Garrison Street, N.W.                     :
Washington, DC 20019                           :
                                               :
        Plaintiffs                             :
                                               :
        v.                                     :        CIVIL ACTION NO.
                                               :
GOVERNMENT OF THE DISTRICT OF COLUMBIA :
A Municipal Corporation                        :
                                               :
        Defendant.                             :
                                               :
Serve:                                         :
Linda Singer,                                  :
Attorney General                               :
District of Columbia                           :
441 4th Street, N.W.                           :
Washington, DC 20001                           :
                                               :
and                                            :
                                               :
Mayor Adrian Fenty                             :
Office of the Secretary                        :
1350 Pennsylvania Avenue, N.W.                 :
Washington, DC 20004                           :

COMPLAINT

JURISDICTION

1.      Plaintiff brings this Complaint seeking relief from an adverse decision regarding

the provision of a free appropriate public education, pursuant to the Individuals

with Disabilities Education Improvement Act ("IDEIA"), 20 U.S.C.§§ 1400 *et seq*.

This Court has jurisdiction pursuant to 28 U.S.C.§§ 1331 and 1343; and pendant

jurisdiction pursuant to 5 D.C.Mun. Regs.§§ 3000 *et seq.*  Declaratory relief is
authorized by 28 U.S.C.§§ 2201 and 2202.

2.    Plaintiffs are the parents of the minor child, A.T., and they have resided in the
District of Columbia during the time of the underlying administrative proceedings.

3.    Defendant is a municipal corporation.  As one of its governmental functions,
Defendant operates the District of Columbia Public Schools System ("DCPS").
DCPS is responsible for affording children with disabilities in the District of
Columbia all rights pursuant to IDEIA.

### FACTS

4.    A.T. was born in Naples, Italy on 10/17/03, when her father, a physician, was on
active military duty.  She has an identical twin.  At the age of 2 ½ months, A.T.
contracted bacterial meningitis and was hospitalized for 6 weeks in intensive
care in Naples, Italy.  Post meningitis concerns were noted with both language
and motor development.

5.    In March 2004, A.T.'s hearing was reported as normal.  Tubes were placed in
her ears to closely monitor for post hearing loss due to the meningitis.  When
A.T. was 15 months of age, she was diagnosed with profound sensorineural
hearing loss.

6.     A.T. received a cochlear implant in the United States in February 2005 which
was activated in March 2005.  Subsequently, the family in April 2005 relocated to
the Washington, DC area.  A.T. was enrolled in the River School in April 2005.

7.    Mrs. Tiller contacted the Early Intervention Program in D.C. and an
IFSP dated 7/13/06 was developed.  Her transition from an IFSP to an IEP was

to occur prior to her third birthday on 10/17/06.  On 9/01/06 D.C.  Early

Intervention sent an invitation to DCPS for a transition meeting to be held

9/19/06.  The meeting was held at the DCPS CARE CENTER and individual(s)

from DCPS were in attendance.  DCPS did not develop an IEP for A.T. at that

time.

8.    On December 7, 2006, DCPS notified Ms. Tiller that they were now ready to

convene a MDT/IEP meeting.  The date suggested was December 18, 2006.

The meeting could not be held on December 18, 2006 as school was closed for

the holiday and none of A.T.'s teachers were available from December 15

through January 2, 2007.   The Parent offered to have the meeting either before

the 15th or after January 2, 2007.  DCPS advised that they would not be able to

meet before the 15th.

9.    The MDT/IEP meeting was finally convened by DCPS on February 1, 2007.

DCPS classified A.T. as Hearing Impaired and refused to consider an additional

classification of Speech & Language Impaired which would result in a

classification of Multiple Disabilities.  The Speech & Language Impairment

classification was supported by evaluations.  Neither the parent nor Anna's

teachers and related service providers agreed with the sole classification of

Hearing Impairment given A.T.'s background of post meningitis language delays

and previous evaluations diagnosing Apraxia, a Speech & Language Disorder.

10.    DCPS subsequently developed an IEP and issued a Notice of Placement for

A.T. to receive 1 ½ hours of Speech & Language Therapy per week; 1 hour of

direct Occupational Therapy services per week; ½ hour of Occupational consult

services per month and 1 hour of Audiology services per week as a non-attending student.  The location of services was designated as Anna's neighborhood school, Janney Elementary School.  DCPS advised the parent that A.T. could receive the related services on the IEP at Janney Elementary but, could not be enrolled to attend school until she was of school age.

11.    DCPS advised that her placement would be home (as this is the least restrictive placement according to DCPS) until she reached school age.

12.    Neither the parent nor A.T.'s teachers and related service providers agreed with the amount of services being proposed for A.T.  Specifically, A.T. required significantly more Speech & Language services than were being proposed.  In addition to the 1 ½ hours of pull out speech & language services, A.T. requires 20 hours of push in speech & language services in order to address her significant language delays.

13.    DCPS would not allow Ms. Tiller to register A.T. with DCPS until 9/27/06.  On 9/27/06, DCPS developed a Student Evaluation Plan that indicated that DCPS would just review all outside evaluations provided by the parent and only perform one evaluation (Brigance) to evaluate her educational performance.

14.    DCPS did not convene a MDT/IEP meeting by 10/17/06, when A.T. turned age (3) three.

15.    Additionally, DCPS refused to add Physical Therapy services on her IEP even though the need for P.T. was previously documented on her IFSP.  DCPS finally agreed that they would perform a P.T. evaluation but gave no explanation as to why this evaluation had not been done previously and prior to the convening of

the MDT/IEP meeting.  DCPS had been in receipt of the IFSP since September 2006.

16.    A.T's parents did not agree with the IEP or the placement proposed by DCPS and therefore, A.T. remained at the River School where she has been making appropriate educational progress.

17.    On February 20, 2007, Petitioners filed a Due Process Complaint Notice alleging, inter alia, (1)a violation of the student's right to a Free Appropriate Public Education (FAPE) by failing to evaluate her in all areas of suspected disability; (2) failing to determine her eligibility and develop an IEP and determine placement by the time the student turned (3) three years of age; (3) failing to develop an appropriate IEP and (4) failing to provide an appropriate educational placement.

18.    Pursuant to the Complaint filed a Due Process Hearing was scheduled on May 9, 2007.  After the in-person testimony of two witnesses for the Petitioners the hearing was continued to May 24, 2007.

19.    Testimony was continued on May 24, 2007, but not completed and a 3rd day of testimony was scheduled for June 20, 2007, on which date all testimony was finally completed.

20.    With regard to the first issue of DCPS' failure to provide a physical therapy evaluation, the Petitioners provided evidence that at the February 1, 2007, IEP meeting DCPS admitted that a physical therapy evaluation needed to be completed.  However at no time from that date through the date of the DPH did DCPS take steps to complete said evaluation.

21. Subsequent to the Due Process Hearing Determination the parent's of A.T. went to Janney, E.S. for the purpose of having Janney provide the related services outlined in A.T.'s IEP.  Representing Janney at the meeting were Shellie Woods, Toni Wills and Principal Cartland.  Ms. Woods explained that now Janney is A.T.'s home school, they are her case managers.  That since Janney does not have an audiologist or sensory gym, nor had Janney been asked or notified about their ability to provide services when the IEP was written, they were recommending two full time special education programs one at Barnard and the other at Key E.S.

## COUNT I

21. Plaintiffs repeats and realleges paragraphs 1 - 20.

22. The Hearing Officer erred when he concluded DCPS met their obligation under IDEIA with regard to this issue.  First the Hearing Officer was under the mistaken belief that an occupational therapy evaluation instead of a physical therapy evaluation was necessary.  Second, he also mistakenly concluded that the student was receiving OT services at the River School, and thus DCPS' obligations to fully evaluate A.T. had been met.  A.T. was not receiving either OT or PT services at the River School.

## COUNT II

23. Plaintiff repeats and realleges paragraphs 1 - 22.

24. With regard to the remaining issues, the Hearing Officer erred in determining that DCPS fulfilled its obligations under IDEIA when he concluded that, although

admittedly (3) three months after the student reached age 3, DCPS developed an IEP which could be implemented at Janney ES, the student's home school.

25.   The Hearing Officer's conclusion that DCPS had not violated IDEIA was made despite evidence that the goals agreed to by DCPS for the student's IEP required that they be implemented in a "classroom setting" and DCPS admitted that the student would be a non attending student, thus would receive not be placed in a calls or receive classroom instruction.

26.   The Hearing Officer's conclusion that DCPS had not violated IDEIA was made despite DCPS' conclusion that the least restrictive environment (LRE) for this student was Home, not her regular education classroom at the River School. Thus violating IDEIA's LRE regulatory provisions.

25.   The Hearing Officer's conclusion that DCPS had not violated IDEIA was made despite credible evidence, by a recognized expert neuropsychologist with a vast amount of experience in working with hearing impaired/deaf students having additional languages deficits, that A.T. would need a full time special education placement by the time she reached kindergarten at age 5 if she did not now receive the services requested by the parents.

26.   The Hearing Officer's conclusion that DCPS had not violated IDEIA was made despite evidence indicating that even if the student suffered from only a simple hearing loss the IEP proposed by DCPs would be inappropriate.

27.   The Hearing Officer's conclusion that DCPS had not violated IDEIA was made despite credible evidence from both a recognized expert neuropsychologist and speech and language therapist that completely contradicted the evidence

provided by DCPS.

## COUNT III

28.   Plaintiff repeats and realleges paragraphs 1 - 27.

29.   The Hearing Officer erred in accepting the witness DCPS proffered as an expert

speech and language pathologist, who admitted she had never treated a single

hearing impaired student nor any student with a cochlear implant. Thus

accepting her testimony as an expert over the otherwise uncontroverted

testimony of Plaintiffs experts amounted to error.

## COUNT IV

30.   Plaintiff repeats and realleges paragraphs 1 - 29.

31.   The Hearing Officer's erred in accepting the witness DCPS proffered as an

expert in special education because she had no credentials other than a long

work experience with DCPS.  Thus accepting her testimony as an expert over

the otherwise uncontroverted testimony of Plaintiffs experts amounted to error.

## COUNT V

32.   Plaintiff repeats and realleges paragraphs 1 - 31.

33.   The Hearing Officer's displayed a clear bias in favor of DCPS in his

determination through his findings of fact and conclusions of law.  Thus his

determination should be reversed.

## COUNT VI

34.   Plaintiff repeats and realleges paragraphs 1 - 33.

35.   The Hearing Officer's erred when he concluded that since the Plaintiffs had

refused to sign the proposed IEP and elected to file a Due Process Hearing,

DCPS was relieved of its obligations to provide FAPE under the IDEIA.

## COUNT VII

36.    Plaintiff repeats and realleges paragraphs 1 - 35.

37.    The Hearing Officer's erred in concluding that DCPS was relieved of their

obligations under IDEIA with regard to providing an appropriate placement

because the Plaintiffs refused to accept DCPS' proposed placement.

## COUNT VIII

38.    Plaintiff repeats and realleges paragraphs 1 - 37.

39.    The Hearing Officer erred in concluding that the River School was not the least

restrictive appropriate placement when he ignored that the proposed DCPS

placement of Home was more restrictive than the general education environment

of the River School.

## COUNT IX

40.    Plaintiff repeats and realleges paragraphs 1 - 39.

41.    The Hearing Officer's erred in concluding that the River School was not an

appropriate placement because they did not employ a hearing impaired teacher

and instead utilized a model of a regular education teacher assisted by a speech

and language pathologist.

## COUNT X

42.     Plaintiff repeats and realleges paragraphs 1 - 41.

43.     The Hearing Officer's showed his bias against the Plaintiffs when he concluded
        that their insistence than Janney ES was an inappropriate placement was based
        on their desire to have their daughter go to school where her mother worked
        instead of the expert testimony presented that Janney was inappropriate.

**COUNT XI**

42.     Plaintiff repeats and realleges paragraphs 1 - 43.

44.     Given the statements and participation of personnel, including Janney's Principal
        Mr. Cartland, subsequent to the DPH, that Janney had not been consulted when
        A.T.'s IEP was developed and that Janney was not appropriate and that given
        A.T.'s education needs they would be recommending two full time special
        education program placements at either Barnard or Key, E.S.; it was error for the
        Hearing Officer to rely on the testimony of witnesses from DCPS that Janney
        was an appropriate placement for A.T.

        **WHEREFORE**, Plaintiffs respectfully requests this court to:

        1.      Issue a judgment for Plaintiffs and against Defendants on all
                aforementioned counts;

        2.      Order that the July 2, 2007, Hearing Officer's Decision be reversed,
                ordering DCPS to provide full funding, with transportation to the River
                School for the 2007-2008 school year with compensatory education
                services and evaluations as determined by a forthcoming IEP meeting.

3.    Order an award of attorneys fees and costs to Plaintiffs; and

4.    Grant such other and further relief as the Court deems just and proper.


Respectfully submitted,


_____/s/_____
Paul S. Dalton, Esq.
D.C. Bar No. 439118
Dalton& Dalton, P.C.
1008 Pendleton Street
Alexandria, Virginia 22314
(703) 739-4300 (O)
(703) 739-2323 (F)


_____/s/_____
Ellen Douglass Dalton, Esq.
D.C. Bar No. 411612
Dalton& Dalton, P.C.
1008 Pendleton Street
Alexandria, Virginia 22314
(703) 739-4300 (O)
(703) 739-2323 (F)

JS-44
(Rev.1/05 DC)

**CIVIL COVER SHEET**

## I (a) PLAINTIFFS

*SARAH & MICHAEL TILLER* *110 c/*

*11001*

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____
(EXCEPT IN U.S. PLAINTIFF CASES)

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

*DALTON & DALTON,
1008 Pendleton Street
Alexandria, VA, 22314
703-739-4300*

## DEFENDANTS

*Government of the D.C*

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

Case: 1:07-cv-01736
Assigned To : Robertson, James
Assign. Date : 9/27/2007
Description: Civil Rights-Non-Employ.

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- ○ 1 U.S. Government Plaintiff
- ● 3 Federal Question (U.S. Government Not a Party)
- ○ 2 U.S. Government Defendant
- ○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

**○ A. Antitrust**
- ☐ 410 Antitrust

**○ B. Personal Injury/ Malpractice**
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Medical Malpractice
- ☐ 365 Product Liability
- ☐ 368 Asbestos Product Liability

**○ C. Administrative Agency Review**
- ☐ 151 Medicare Act

Social Security:
- ☐ 861 HIA ((1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g)
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g)

Other Statutes
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

**○ D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

**○ E. General Civil (Other)** OR **○ F. Pro Se General Civil**

Real Property
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent, Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

Personal Property
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

Bankruptcy
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

Prisoner Petitions
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

Property Rights
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

Federal Tax Suits
- ☐ 870 Taxes (US plaintiff or defendant
- ☐ 871 IRS-Third Party 26 USC 7609

Forfeiture/Penalty
- ☐ 610 Agriculture
- ☐ 620 Other Food &Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 RR & Truck
- ☐ 650 Airline Regs
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

Other Statutes
- ☐ 400 State Reapportionment
- ☐ 430 Banks & Banking
- ☐ 450 Commerce/ICC Rates/etc.
- ☐ 460 Deportation

- ☐ 470 Racketeer Influenced & Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Satellite TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 900 Appeal of fee determination under equal access to Justice
- ☐ 950 Constitutionality of State Statutes
- ☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

*2*

| O  G. *Habeas Corpus/*<br>*2255*<br><br>☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | O  H. *Employment*<br>*Discrimination*<br><br>☐ 442 Civil Rights-Employment<br>(criteria: race, gender/sex,<br>national origin,<br>discrimination, disability<br>age, religion, retaliation)<br><br>*(If pro se, select this deck)* | O  I. *FOIA/PRIVACY*<br>*ACT*<br><br>☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions<br>(if Privacy Act)<br><br><br>*(If pro se, select this deck)* | O  J. *Student Loan*<br><br>☐ 152 Recovery of Defaulted<br>Student Loans<br>(excluding veterans) |
|---|---|---|---|
| O  K. *Labor/ERISA*<br>*(non-employment)*<br><br>☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting &<br>Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ◉  L. *Other Civil Rights*<br>*(non-employment)*<br><br>☐ 441 Voting (if not Voting Rights<br>Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☒ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-<br>Employment<br>☐ 446 Americans w/Disabilities-<br>Other | O  M. *Contract*<br><br>☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment &<br>Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of<br>Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | O  N. *Three-Judge Court*<br><br>☐ 441 Civil Rights-Voting<br>(if Voting Rights Act) |

**V. ORIGIN**

◉ 1 Original
Proceeding
O 2 Removed
from State
Court
O 3 Remanded from
Appellate Court
O 4 Reinstated
or Reopened
O 5 Transferred from
another district
(specify)
O 6 Multi district
Litigation
O 7 Appeal to
District Judge
from Mag. Judge

**VI.  CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

APPEAL FROM ADVERSE HEARING OFFICER'S DECISION PURSUANT TO 20 USC §§ 1400 et seq.

**VII. REQUESTED IN**
**COMPLAINT**
☐ CHECK IF THIS IS A CLASS
☐ ACTION UNDER F.R.C.P. 23

DEMAND $ [_____]   Check YES only if demanded in complaint
JURY DEMAND:        YES ☐   NO ☒

**VIII. RELATED CASE(S)**
**IF ANY**
(See instruction)   YES ☐   NO ☐   If yes, please complete related case form.

DATE   9-27-07   SIGNATURE OF ATTORNEY OF RECORD _____

### INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The **JS-44** civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.      COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.    CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed <u>only</u> if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.     CASE ASSIGNMENT AND NATURE OF SUIT:  The assignment of a judge to your case will depend on the category you select that best represents the <u>primary</u> cause of action found in your complaint. You may select only <u>one</u> category. You <u>must</u> also select <u>one</u> corresponding nature of suit found under the category of case.

VI.     CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.   RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.