# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

SARA & MICHAEL TILLER, *as parents
and next friend of minor child* A.T.,
    Plaintiffs,

    v.

DISTRICT OF COLUMBIA,

    Defendant.

Civil Action No. 07-1736 (JR)

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant, by counsel, respectfully moves for summary judgment pursuant to

Fed. R. Civ. Pro. 56 and LCvR 56.1.

A memorandum of points and authorities, a statement of material facts as to

which there are no genuine issues in dispute, and a proposed order are attached hereto.

Respectfully submitted,

PETER J. NICKLES
Interim Attorney General
for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

*/s/ Edward P. Taptich*
EDWARD P. TAPTICH [#012914]
Chief, Equity Section II

*/s/ Amy Caspari*
AMY CASPARI [#488968]
Assistant Attorney General
441 Fourth Street, N.W.
Sixth Floor South
Washington, D.C. 20001
(202) 724-7794

February 14, 2008

1

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| SARA & MICHAEL TILLER, *as parents and next friend of minor child* A.T., Plaintiffs, v. DISTRICT OF COLUMBIA, Defendant. | Civil Action No. 07-1736 (JR) |

**<u>DEFENDANT'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE</u>**

1. A.T. is a student with a hearing impairment who, before age 3, was receiving early intervention services under her 07/13/06 District of Columbia Individualized Family Service Plan. A.R. 76.

2. Ms. Tiller, A.T.'s mother works at the River School as a science teacher and has three other children enrolled there.  A.R. Supplement 79.

3. When A.T. turned two years old, she began attending private school at the River School two days a week; in September 2006, just before she turned three, she enrolled as a full-time student at the River School.  A.R. 79.

4. A.T. is still currently enrolled there. Complaint.

5. The River School is not a special education school, and A.T. does not have a special education teacher.  A.R. Supplement 80.

6. On February 1, 2007, approximately three months after A.T. turned three, a multidisciplinary team meeting ("MDT/IEP") meeting was convened by DCPS pursuant to the IDEIA in which a team of educators from A.T.'s school, DCPS and A.T.'s mother participated to develop an IEP.  A.R. 143, 173.

7.  At A.T.'s IEP meeting, the team addressed any need for special education or related services for A.T. as a result of her hearing impairment.  A.R. 159.

8.  DCPS concluded that A.T.'s impairment did not call for her to attend any full-time placement because she was only three (and school enrollment is not required in the District until age 5), and because she had no cognitive deficits—she has a 145 nonverbal IQ score (99% above the normative population). A.R. 171.

9.   DCPS did prescribe related services to be implemented at Janney, A.T.'s neighborhood school.  Id and A.R. 69 and 550.

10. Pursuant to the Speech and Language ("SL") goals and objectives proposed by the River School, and agreed to by DCPS at the February 1, 2007 meeting, DCPS offered the following related services: 1.5 hours of SL therapy, 1 hour of occupational therapy,1 hour of audiology services, and ½ hour of OT consult per month.  A.R. 161,173.

11. At the meeting, the parent and the River School disputed DCPS findings that A.T. should only be classified as HI.  A.R. 160.

12. The River School and the student's mother asked that, in addition to HI, A.T. should be classified as SLI, and that this additional classification should result in a full-time placement at the River School, where A.T. would receive additional services.  A.R. 160.

13. DCPS disagreed because they concluded that the student's SLI only resulted from her HI, but was not a separate classification. A.R. 160.

14. Because of the dispute, A.T.'s mother refused to sign the IEP.  A.R. 173.

15.  On 02/21/07, Plaintiffs filed an administrative due process hearing request, and the parent's counsel sent a letter to the DCPS Care Center rejecting the IEP and placement, *unilaterally placing A.T. at the River School* for the 2006-2007 school year.  A.R. 187, 189.

16. A.T. has sought, <u>and has received,</u> all of A.T.'s related services Janney since the creation of the IEP.  A.R. 173 and Exhibit 1, Declaration of Dr. Shelley Wood, Janney SEC.

17. The hearing complaint raised three issues: Did DCPS deny A.T. a FAPE for the 2006-07 school year by (1) developing her 02/01/07 IEP with an inappropriate disability code, (2) failing to provide A.T. her required amount of OT and SL therapy related services, and (3) failing to provide A.T. an appropriate placement. A.R. 189.

18. At hearing, A.T.'s River School speech and language pathologist ("SLP") was not called to testify.  A.R. 424.

19. Ms. Kane, another River School SLP who did not perform A.T.'s SL evaluation and did not provide SL therapy to A.T., but relied on a 06/27/06 report performed by the River School to recommend "[A.T.] receive a minimum of twenty (20)-hours of classroom based (push-in) Speech-Language services and at least one (1)-hour of pull-out (outside of class) Speech-Language Therapy per week." A.R. 461.

20. Donna Morere, Ph.D., Clinical Neuro-Psychologist was called as a witness by the Plaintiffs at the administrative hearing.  A.R. Supplement 107.

21. Dr. Morere also did not evaluate A.T., but through a review of A.T.'s existing evaluation reports, and her March 16, 2007, 1.5 hour observation of A.T., opined that A.T.'s primary disability should be SLI.  A.R. Supplement 107.

22. Dr. Morere recommended that A.T. needed a full-time day program (twenty (20) hours of push-in SL services) and two hours of pull-out SL therapy per week.  A.R. Supplement 107-110.

23. Dr. Morere did not participate in A.T.'s 02/01/07 MDT/IEP meeting, and she did not visit Janney or talk to anyone there about its services.  A.R. Supplement 130-131.

24. A.T.'s mother, Ms.Tiller, participated in developing, but did not sign, A.T.'s 02/01/07 IEP because she did not agree with the HI disability code and wanted instead an SLI classification. A.R. Supplement 67-68.

25. She testified that she also did not agree with the hours of related services offered.  A.R. Supplement 67, 76.

26. A.T.'s classroom model at the River School is for an SLP to serve with the classroom teacher for twelve students.  A.R. Supplement 83-84.

27. The SLP's role at the River School is a regular education teacher and a speech and language pathologist.  Id.

28. The base tuition at the River School is $15,000/year but when the student receives the push-in 20 hours of Speech-Language services, as does A.T., the tuition is $38,000/year.  A.T.'s mother reported that she was not paying full tuition because she was receiving a grant to pay for a portion of the tuition, and her salary at the school paid for the remaining portion. A.R. Supplement 71-72.

29. DCPS witnesses testified that A.T. has an exceedingly high IQ, and that the River School recommendation of twenty hours of push-in services was not a model tailored to fit A.T.'s needs, nor was the school even providing such services. A.R. 171.

30. Janney can implement the related services that they recommended, that were tailored to A.T.'s needs. Id.

31. According to DCPS testimony of Ms. Johnson, DCPS Care Center Supervisor of the Early Childhood Education Program, she met A.T. and her mother when they came to the Care Center seeking a special education eligibility determination. A.R. 165.

32. Ms. Johnson participated in A.T.'s 02/01/07 MDT/IEP meeting. A.R. 173.

33. Ms Johnson visited and is familiar with the River School, having participated in other eligibility meetings with that school. A.R. 165.

34. A.T.'s nonverbal IQ score is 145, and A.T. does not need special education instruction, but would benefit from the related services prescribed. A.R. 165-172.

35. HI is A.T.'s primary disability because her language deficits are associated with that primary disability. Even if A.T. were coded HI and SLI as her parents requested, her current IEP goals and objectives would be the same because they were developed in order to close the gap between A.T.'s "present performance levels" and the function level of her comparable age peers. A.R. 557.

36. A student can receive SL therapy in his or her IEP to achieve their IEP goals and objectives without being coded as SLI, as does A.T. A.R 546.

37. The River School's policy is and has been that all HI students are SLI and that it programs for all of its students with the same or similar IEPs for twenty hours of push-in services. Based on her thirty years of experience Ms. Johnson believes that this is the only school that uses this model. A.R. 529-532 and 564-565.

38. A.T. is not actually receiving 20 hours of push in SL services since the River School credits those 20 hours by using a SLP as the classroom teacher because it does not have an HI teacher. A.R. 565-566.

39. Each of the River School's IEPs calls for 20 hours of push-in Speech-Language services, albeit each student does not receive 20 hours of direct push-in services from their in-class SLP teacher. Id.

40. Janney is an appropriate placement to implement her IEP because it can provide all of A.T.'s IEP related services, which is all she needs at this time based on her age, disability, IQ and language deficits. A.R. 529-565.

41. Ms. Thompson, DCPS' SLP, did not evaluate A.T. but reviewed A.T.'s 06/27/06 and 07/10/06 SL evaluation reports performed by the River School. A.R. 285-290 and A.R. 293-300.

42. Ms. Thompson observed A.T. for two hours in her classroom and in the gym area at the River School. Id. Ms. Thompson participated in A.T.'s 02/01/07 MDT/IEPT meeting. A.R. 173.

43. During her River School visit, Ms. Thompson observed that A.T.'s in-class SLP's role was to assist the entire class, and not just A.T—during her two hour observation, the SLP only spent 10-15 minutes with A.T. A.R. 290

44. Ms. Thompson also met with the in-class SLP and the River School Program
    Director and they never said the in-class SLP was there just for A.T. because the
    River School's educational program model places a SLP in the students'
    classroom. Id.

45. River School students who require it are also provided pull-out services. A.R. 291-
    292.

46. That described program model is set-up for all River School students and was not
    tailored for A.T. Id.

47. A.T. does not require specialized instruction based on her test scores in other
    areas: A.T.'s 09/12/06 Psychological Assessment Report performed by a River
    School evaluator states that "A.T.'s nonverbal IQ score is 145-in the superior
    range that exceeds 99% of the normative population." A.R. 296.

48. A.T.'s primary disability that triggers her IDEIA disability code is HI not SLI but
    if A.T. were SLI, SL therapy would be her related service, as it is now stated in
    her IEP. A.R. 299.

                              Respectfully submitted,

                              PETER J. NICKLES
                              Interim Attorney General
                              for the District of Columbia

                              GEORGE C. VALENTINE
                              Deputy Attorney General
                              Civil Litigation Division

                              */s/ Edward P. Taptich*
                              EDWARD P. TAPTICH [#012914]
                              Chief, Equity Section II

/s/ *__Amy Caspari__*
AMY CASPARI [#488968]
Assistant Attorney General
441 Fourth Street, N.W.
Sixth Floor South
February 14, 2008                    Washington, D.C. 20001

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

SARA & MICHAEL TILLER, *as parents
and next friend of minor child* A.T.,
    Plaintiffs,

    v.

DISTRICT OF COLUMBIA,

    Defendant.

Civil Action No. 07-1736 (JR)

## DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION

On June 29, 2007, an administrative hearing officer's decision ("HOD") was issued pursuant to the Individuals With Disabilities Education Improvement Act of 2004, 20 U.S.C. §§1400 et seq. ("IDEIA") concerning student A.T. The issue presented and decided at hearing was whether the District of Columbia Public Schools ("DCPS") denied A.T. a free appropriate public education ("FAPE") for the 2006-07 school year by developing her 02/01/07 Individualized Education Program ("IEP") with an inappropriate disability code, failing to provide A.T. the required amount of Occupational Therapy ("OT") and Speech-Language ("SL") therapy services, and failing to provide A.T. an appropriate placement.

The Hearing Officer determined that Plaintiffs failed to prove that A.T. was denied a FAPE when DCPS classified her as Hearing Impaired ("HI") and not Speech and Language Impaired ("SLI"), failed to prove how the three month

1

delay in performing the OT Evaluation resulted in a denial of a FAPE, and failed to prove that Janney Elementary School ("Janney") is an inappropriate placement to implement the 02/01/07 IEP.

In this appeal, Plaintiffs seek a reversal of the HOD, and an Order requiring DCPS "to provide full funding, with transportation to the River School for the 2006-2007 school-year with compensatory education services and evaluations as determined by a forthcoming IEP meeting." Complaint p. 10.

## FACTUAL BACKGROUND

A.T. is a student with a hearing impairment who, before age 3, was receiving early intervention services under her 07/13/06 District of Columbia Individualized Family Service Plan ("IFSP").[1] A.R. 76. A.T.'s mother is employed at River School as a science teacher. A.R. Supplement 79. When A.T. turned two years old, she began attending private school at the River School two days a week; in September 2006, just before she turned three, she enrolled as a full-time student at the River School. A.R. Supplement 83 and 97. She is still currently enrolled there. Id. Although A.T. has a hearing impairment, the River School is not a special education school, and A.T. does not have a special education teacher. A.R. Supplement 80.

On February 1, 2007, approximately three months after A.T. turned three, a multidisciplinary team meeting ("MDT/IEP") meeting was convened by DCPS pursuant to the IDEIA a team of educators from A.T.'s school, DCPS and A.T.'s mother participated to develop an IEP. A.R. 143, 173.

---

[1] The District of Columbia Department of Human Services, Office of Child Development, provided this plan.  Among other things, it encompasses an assessment of A.T's disability before age 3.  The details of that plan are not relevant to the Plaintiffs' IDEIA claims here.

At A.T.'s IEP meeting, the team addressed any need for special education or related services for A.T. as a result of her hearing impairment. A.R. 159. DCPS concluded that A.T.'s impairment did not call for her to attend any full-time placement because she was only three (and school enrollment is not required in the District until age 5),and because she had no cognitive deficits— she has a 145 nonverbal IQ score (99% above the normative population). A.R. 171. However, based on her hearing impairment, DCPS did prescribe related services to be implemented at Janney, her neighborhood school. A.R. 69, 550. Pursuant to the SL goals and objectives proposed by the River School, and agreed to by DCPS at the meeting, DCPS offered the following related services: 1.5 hours of SL therapy, 1 hour of occupational therapy,1 hour of audiology services, and ½ hour of OT consult per month. A.R. 161, 173.

At the meeting, the parent and the River School disputed DCPS findings that A.T. should only be classified as HI. A.R. 159-164. Thus, they disputed the placement and amount of services proposed pursuant to that HI classification. The River School and the student's mother asked that in addition to HI, A.T. should be classified as SLI, and that this additional classification should result in a full-time placement at the River School, where A.T. would receive additional services. A.R. 160. DCPS disagreed because they concluded that the student's SLI only resulted from her HI, but was not a separate classification. A.R. 160. Because of the dispute, A.T.'s mother refused to sign the IEP. A.R. 173.

On 02/21/07, Plaintiffs filed an administrative due process hearing

request, and the parent's counsel sent a letter to the DCPS Care Center rejecting the IEP and placement *unilaterally placing A.T. at the River School* for the 2006-2007 school year.  A.R. 187, 189.  Nonetheless, the parent has received, all of A.T.'s related services she sought at Janney since October 2007.  A.R. 173 and Exhibit 1, Declaration of Dr. Shelley Wood, Janney SEC.

The hearing complaint raised three issues: Did DCPS deny A.T. a FAPE for the 2006-07 school year by (1) developing her 02/01/07 IEP with an inappropriate disability code, (2) failing to provide A.T. her required amount of OT and SL therapy related services, and (3) failing to provide A.T. an appropriate placement?  A.R. 189.

At hearing, A.T.'s River School speech and language pathologist ("SLP") was not called to testify.  But Ms. Kane, another River School SLP who did not perform A.T.'s SL evaluation or provide SL therapy to A.T., but relied on a 06/27/06 report performed by the River School, recommended "[A.T.] receive a minimum of twenty (20)-hours of classroom based (push-in) Speech-Language services and at least one (1)-hour of pull-out (outside of class) Speech-Language Therapy per week." A.R. 461.

Plaintiffs also called Donna Morere, Ph.D., Clinical Neuro-Psychologist. Dr. Morere also did not evaluate A.T., but through a review of A.T.'s existing evaluation reports, and a 1.5 hour observation of A.T. on March 16, 2007, opined that A.T.'s primary disability should be SLI.  A.R. Supplement 107.  She also recommended that A.T. needed a full-time day program (twenty hours of push-in SL services) and two hours of pull-out SL therapy per week.  A.R.

Supplement 107-110.  *Dr. Morere did not participate in A.T.'s 02/01/07, MDT/IEPT meeting and she did not visit Janney or talk to anyone there about its services.*  A.R. Supplement 130-131.

A.T.'s mother, Ms.Tiller, participated in developing, but did not sign, A.T.'s 02/01/07 IEP because she did not agree with the HI disability code and wanted instead an SLI classification. A.R. Supplement 67-68.  She testified that she also did not agree with the hours of related services offered. A.R. Supplement 67 and 76.

She further testified that she works at the River School and has three other children enrolled there.  A.R. Supplement 73.  She noted that A.T.'s classroom model at the River School is for an SLP to serve with the classroom teacher for twelve students.  A.R. Supplement 83-84.  Further, that the SLP's role is a regular education teacher and a speech and language pathologist.  Id.  She noted that the base tuition at the River School is $15,000/year, but when the student receives the push-in 20-hours of Speech-Language services, as does A.T., the tuition is $38,000/year.  Ms.Tiller reported that she was not paying full tuition because she was receiving a grant to pay for a portion of the tuition, and her salary at the school paid for the remaining portion. A.R. Supplement 71-72.

DCPS witnesses testified that A.T. has an exceedingly high IQ, and that the River School recommendation of twenty hours of push-in services was not a model tailored to fit A.T.'s needs, nor was the school even providing such services.  Further, they testified that Janney could implement the related services that they recommended, and that were tailored to A.T.'s needs.  A.R. 165 and

546.

According to DCPS testimony of Ms. Johnson, DCPS Care Center Supervisor of the Early Childhood Education Program, she met A.T. and her mother when they came to the Care Center seeking a special education eligibility determination. A.R. 165. She participated in A.T.'s 02/01/07 MDT/IEP meeting. A.R. 511. She visited and is familiar with the River School, having participated in other eligibility meetings with that school. A.R. 510. She testified that A.T.'s nonverbal IQ score is 145, and that A.T. does not need special education instruction, but would benefit from the related services prescribed. A.R. 512-515.

She further testified that HI is A.T.'s primary disability because her language deficits are associated with that primary disability, and that even if A.T. was coded HI and SLI, as her parents requested, her current IEP goals and objectives would be the same (A.R. 517) because they were developed in order to close the gap between A.T.'s "present performance levels" and the function level of her comparable age peers. A.R. 557. Moreover, Ms. Johnson emphasized that a student can receive SL therapy in his or her IEP to achieve their IEP goals and objectives without being coded as SLI, as does A.T. A.R 546.

Ms. Johnson further testified that *the River School's policy is and has been* that *all HI students are SLI* and that it programs twenty hours of push in services all of its students with the same or similar IEPs, based on her thirty years of experience, this is the only school that she is familiar with that uses this model.

A.R. 529-532 and 564-565. *However, she stressed that A.T. is not actually receiving 20 hours of push- in SL services because the River School credits those 20 hours by using a SLP as the classroom teacher because it does not have an HI teacher.* A.R. 566. *Thus, each in all of The River School IEPs she reviewed calls for 20 hours of push-in Speech-Language services, albeit each student does not receive 20 hours of direct push-in services from their in-class SLP teacher.* Id and A.R. 529-530. Finally, she testified that a hearing impaired teacher does exactly what the River School's in-class SLP is suppose to do— assist A.T. with her expressive and receptive language deficits. Id.

Ms. Johnson stressed that Janney is an appropriate placement to implement her IEP because it can provide all of A.T.'s IEP related services which is all she needs at this time based on her age, disability, IQ and language deficits. A.R. 520.

Ms. Thompson, DCPS' SLP, testified that she did not evaluate A.T. but reviewed A.T.'s 06/27/06 and 07/10/06 SL evaluation reports performed by the River School. A.R. 285-287. She observed A.T. for two hours in her classroom and in the gym area at the River School. Id. She participated in A.T.'s 02/01/07 MDT/IEPT meeting. A.R. 294.

During her River School visit, Ms. Thompson observed that A.T.'s in-class SLP's role was to assist the entire class, and not just A.T—during her two hour observation, the SLP only spent 10-15 minutes with A.T. A.R. 289-290. She also met with the in-class SLP and the River School Program Director and they never said the in-class SLP was there specifically for A.T., since the River

7

School's educational program model places a SLP in the students' classroom.
A.R. 291-292  Students who require it are also provided pull-out services. A.R.
291-292.  That described program model is set up for all River School students
and was not tailored for A.T.  Id.

Moreover, she testified that the primary disability that triggers her IDEIA
disability code is HI not SLI; and even if A.T. were SLI, SL therapy would be
her related service, as now stated in her IEP, and would not change.  A.R. 299-
300, 305-306.  Further, Ms. Thompson explained that A.T. does not require a
full time placement because A.T.'s test scores fall within the normal range for
her cognitive abilities, and she was not of school age.  A.R. 298.

## ARGUMENT

**1.  The standard of review for summary judgment.**

Under Rule 56(c) of the Federal Rules of Civil Procedure, a party is
entitled to summary judgment if "there is no genuine issue of material fact and
the moving party is entitled to judgment as a matter of law."  Celotex Corp. v.
Catrett, 477 U.S. 317, 323 (1986); Tao v. Freeh, 27 F.3d 635, 638 (D.C. Cir.
1994).  Although a court should draw all reasonable inferences from the records
submitted by the nonmoving party, the mere existence of a factual dispute, by
itself, is insufficient to bar summary judgment.  Anderson v. Liberty Lobby,
Inc., 477 U.S. 242, 248 (1986).  To be genuine, the issue must be supported by
evidence sufficiently admissible that a reasonable trier of fact could find for the
nonmoving party; to be material, the factual assertion must be capable of
affecting the substantive outcome of the litigation.  Id.; Laningham v. U.S.

Navy, 813 F.2d 1236, 1242-43 (D.C. Cir. 1987).

**2. The Hearing Officer's decision on the issue specified was based on, and supported by, the record.**

**a. Standard of Review for HODs.**

If a Plaintiff is aggrieved by a Hearing Officer's decision, an appeal of the decision under the IDEIA will lie. 20 USC §1415(i)(2)(B)(iii). In any action brought under that paragraph, the court (i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate. 20 USC §1415(i)(2)(C)(i)(ii)(iii); Green v. District of Columbia, 2006 U.S. Dist. Lexis 25288, at 21. "The review is independent but deference is still due to a state's administrative proceedings. . ." Board of Educ.of Hendrick Hudson Central Sch. Dist. v. Rowley, 458 U.S. 176, 206 (1982).

The Plaintiff bore the burden of proof on the issues at administrative hearing. Schaffer v. Weast, 546 U.S. 49 (2005); 5 DCMR 30 § 3030.3 (July 1, 2006). The party challenging the Hearing Officer's determination bears the burden of persuading the court that the Hearing Officer's determination was incorrect. Reid v. District of Columbia, 401 F. 3d 516, 521 (D.C. Cir 2005) (citing Kerkam v. McKenzie, 862 F. 2d 884, 887 (D.C. Cir. 1989)). Then the court may, "basing its decision on the preponderance of the evidence, [ ] grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(B)(iii).

In <u>Diatta v. District of Columbia</u>, 319 F. Supp 2d 57, 64 (D.D.C. 2004), this Court explained that, in determining whether to reverse a Hearing Officer's determination, the reviewing court must apply the two-prong test established in <u>Rowley</u>. First, the court must determine whether the state has complied with the procedural requirements of the IDEA. Second, the court must determine whether the IEP developed by the state is reasonably calculated to enable the child to receive educational benefits. <u>Rowley</u>, 458 U.S. at 206. If the court determines that the state has not met the <u>Rowley</u> test, then the court may, "basing its decision on the preponderance of the evidence, [ ] grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(B)(iii).

Plaintiff here has failed to show by a preponderance of the evidence that the Hearing Officer's decision is wrong. Thus, the HOD should be affirmed because as shown below, it is supported by the record evidence.

### b. **<u>Plaintiffs failed to show that an SLI disability code was the appropriate classification for this student.</u>**

The Complaint alleges that the IEP classification of HI was not sufficient, but that this student should be classified as both HI and SLI. A.R. 193. The Hearing Officer determined that Plaintiff failed to prove that A.T. was denied a FAPE when DCPS did not include an SLI disability code on her IEP because the record showed that, even if such an additional classification was warranted, the IEP services would not have changed, and that an SLI classification was based on a River School model not tailored for A.T. A.R. 16 ¶¶ 21 and 22, 18 ¶ 15, and 21 ¶ 41. In this case, the parent's request for such an

additional classification was supported by the private school that this student was parentally placed in, and it has not been shown how or why an SLI classification would benefit this student. As such, the hearing officer's findings were supported by the record evidence. Id.

The IDEIA, 20 U.S.C. §§ 1414(a), and 5 D.C.M.R. § 3000.1 (2003) require DCPS to fully evaluate every child suspected of having a disability within the jurisdiction of the District of Columbia, ages 3 through 22, to determine their eligibility for special education and related services and, if eligible, to provide special education and related services through an appropriate IEP and placement.  An IEP is "a written statement for each child with a disability that includes a statement of measurable annual goals, including academic and functional goals, designed to-

aa. Meet the child's needs that result from the child's disability to enable the child to be involved in and make progress in the general education curriculum; and

bb. Meet each of the child's other educational needs that results from the child's disability.

20 U.S.C. § 1414 (d)(1)(A)(i)(II)(aa), (bb).  At the beginning of each school year, each local educational agency shall have in effect an IEP as defined by 20 U.S.C. § 1414 (d)(1)(A).  20 U.S.C. § 1414 (d)(2)(A).

According to the evidence presented at hearing by Ms. Thompson, DCPS' SLP, and Ms. Johnson, DCPS' SEC, DCPS did exactly what the IDEIA required it to do regarding the IEP and placement of A.T. A.R. 19 ¶ 29. DCPS participated on 02/01/07 in the development of an appropriate IEP for the

student and, based on that IEP and A.T.'s unique needs, proposed an appropriate placement to implement it. Id.

Both DCPS witnesses testified that A.T.'s primary disability triggers an HI IDEIA disability code, and not SLI. A.R. 17 ¶ 22(g). Further, they testified that even if A.T. was SLI, SL therapy would be her related service, as now stated in her IEP. A.R. 305-306. It is undisputed that A.T.'s 02/01/07 IEP SL goals and objectives were developed by a River School SLP, and DCPS agreed they were appropriate and could meet A.T.'s needs, *and SL therapy is included in those services.* A.R. 11 ¶ 18(f), pp.176 and 303.

Ms. Johnson and Ms. Thompson also noted that the River School's policy is that all HI students are SLI, and so it programs all of its students with similar IEPs for 20 hours of push-in Speech-Language services, and that A.T. does not require specialized instruction (20 hours of push-in services) based on her test scores in other areas. A.R. 291, 298, 512-515. Further, Janney, her neighborhood school can implement all of the related services called for in her IEP. A.R. 17 ¶ 22(e), 18 ¶24(i).

Under the IDEIA, the IEP is developed by a team of professionals, including the child's parents, "as well as a representative of the local educational agency with knowledge about the school's resources and curriculum." Branham v. District of Columbia, 427 F.3d 7, 8 (D.C. Cir. 2005). An appropriate IEP, at a minimum, "must provide personalized instruction with sufficient support services to permit the child to benefit educationally from that instruction." Board of Educ. v. Rowley, 458 U.S. 176, 204 (1982).

That was done in this case on 02/01/07.

Accordingly, since the SLI classification was recommended by A.T.'s private school, which classifies all of its HI students as SLI, Plaintiffs failed to show such a classification is necessary as to A.T., or that Janney is not an appropriate placement. Thus, the HOD should be affirmed as to the appropriateness of A.T.'s current IEP classification.

### c. Any alleged delays in services were nominal and did not result in denials of FAPE.

The Complaint alleges that DCPS denied FAPE because an OT evaluation was not timely performed, and because the IEP was performed three months after A.T. turned three. A.R. 7. The Hearing Officer determined that such minor delays did not result in any harm to the student. The Hearing Officer's decision is supported by record evidence.

Pursuant to the IDEIA, 20 U.S.C. § 1414 (E) (ii), and 34 C.F.R. § 300.513 and 34 C.F.R. § 300.327, in matters alleging a procedural violation, a Hearing Officer may find that a child did not receive FAPE only if the procedural inadequacies caused a deprivation of educational benefits, resulted in harm, or deprived the parent the procedural rights afforded by the IDEIA. A.T. turned three in October 2006. An Occupational Therapy examination was performed on January 7, 2007, and the IEP was created on February 1, 2007. A.R. 143. A.T. was not denied a FAPE because the alleged procedural inadequacies—a three (3)-month delay in developing her IEP, and a failure to timely perform an OT Evaluation—did not impede A.T.'s right to a FAPE nor

deprive her of educational benefit *because she was attending her current parentally-selected "stay put" private placement, receiving all of her 02/01/07 IEP related services at Janney.*  Exhibit 1, Declaration of Dr. Shelley Wood, Janney SEC.

DCPS attempted to schedule the meeting on December 18, 2006, but the parent stated that the River School would be closed on December 18, 2007 for the winter holidays and that none of the staff would be available for such a meeting. A.R. 191-192.  Moreover, since A.T.'s mother participated in the 02/01/07 MDT/IEP meeting where the IEP was developed, the parent's right to participate in the decision-making process regarding the provisions of a FAPE was not impeded.  A.R. Supplement 67-68. [2]

Therefore, the hearing officer correctly concluded that no harm resulted from the three month delay in services, and the HOD should be affirmed in that regard.

### d.  Plaintiffs failed to show that Janney is not an appropriate placement.

The Complaint alleges that Janney is not an appropriate placement for the implementation of A.T.'s IEP.  A.R. 193.  The Hearing Officer determined

---

[2] The Complaint states that the Hearing Officer erred by addressing whether an occupational evaluation was performed, and not correctly addressing whether a physical therapy evaluation was performed.  To the extent that the claims at hearing were regarding a physical therapy evaluation and not an occupational therapy evaluation, at hearing A.T.'s mother testified that a physical therapy evaluation was in existence (A.R. 66, 103), and at the time of the MDT/IEP meeting, DCPS had agreed to come back and evaluate A.T. again.  She admitted that someone from DCPS did come to the school to observe A.T. in April 2007.  A.R. Supplement 66-67.  She also testified that the amount of OT and PT were sufficient. A.R. Supplement 76.  There is no record evidence that otherwise addresses any claims for a physical therapy evaluation.  Thus, based on the parent's own admissions, a physical therapy examination is already in existence and any claim for one here is unsupported.

that Plaintiff failed to prove that Janney is an inappropriate placement. A.R. 21 ¶

41. The Hearing Officer's findings are supported by the record evidence.

At hearing, Ms. Tiller testified that she disagreed with the at-home

placement because she wanted A.T. "to have an educational placement now."

A.R. Supplement 78. Other than the parent's desire for her child to attend the

River School (where A.T.'s mother is employed), there was nothing in the

record to show that such a placement is required under the IDEIA, or that the

recommended 1.5 hours of SL therapy, 1 hour of occupational therapy, ½ hour

of occupational consult, or 1 hour of audiology services could not be

implemented by Janney. In fact, A.T. has been attending Janney since October

2007 for the related services outlined in her IEP. Exhibit 1, Declaration of Dr.

Shelley Wood, Janney SEC. Simply because the parents disagree with proposed

placement and level of services, that alone is not enough to find the placement

inappropriate.

Pursuant to 34 C.F.R. § 300.17, FAPE is special education and related

services provided at public expense at an appropriate pre-school, elementary

school, or secondary school, and provided in conformity with an IEP. Pursuant

to 5 D.C.M.R. § 3013.1(e), the local education authority shall ensure that the

educational placement decision for a child with a disability is based on the

child's IEP.

Under the IDEIA the parent is entitled to participate in a group

discussion about placement and a group placement decision. The parent,

however, is only a member of the MDT/IEP team and not the final arbiter of

the placement decision. The IDEIA does not require that education judgments

will be designed according to the parent's desires:

> The primary responsibility for formulating the education to be accorded a [child with a disability] and for choosing the educational method most suitable to the child's needs, was left by the Act to state and local educational agencies in cooperation with the parent or guardian of the child. Thus proof alone that loving parents can draft a better program than a state offers does not, alone, entitle them to prevail under the Act.

Shaw v. District of Columbia, 238 F. Supp. 2d 127, 139 (D.D.C. 2002),

See also Shoenbach v. District of Columbia, 2006 WL 1663426 (D.D.C. 2006)

(the IDEIA does not require an education to satisfy the parent's wishes).

DCPS complied with these IDEIA obligations because Janney is an

appropriate public elementary school placement that can implement A.T.'s

02/01/07 IEP by providing all of her IEP called-for related services. A.T. is

currently receiving those related services at Janney, and her IEP has not been

shown to be inappropriate as to those services, or even that a full-time

placement such as the River School is appropriate to provide A.T.'s IEP

services.

Therefore, based on the evidence presented at hearing, the Hearing

Officer properly concluded that Plaintiff has failed to show DCPS denied FAPE

by placing A.T. at Janney.

## **CONCLUSION**

In this case, DCPS did create an appropriate IEP and properly proposed

a placement at Janney. But for the wishes of the parent for her child to attend a

private school, no violation of the IDEIA was demonstrated at the administrative

hearing, or in this forum.  Thus, the HOD should be affirmed.

Respectfully submitted,

PETER J. NICKLES
Interim Attorney General
for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

*/s/ Edward P. Taptich*
EDWARD P. TAPTICH [#012914]
Chief, Equity Section II

*/s/ Amy Caspari*
AMY CASPARI [#488968]
Assistant Attorney General
441 Fourth Street, N.W.
Sixth Floor South
February 14, 2008                              Washington, D.C. 20001





# FAX COVER

4130 Albemarle Street, NW
Washington, DC 20016

Phone: 202-282-0110
Fax: 202-282-0112
Email: janney.k12.dc.us

## *BERNARD T. JANNEY ELEMENTARY*

To: Amy Caspari

From: SWOOD

CC: _____

Date sent: 2/13/08

Phone number:

Time sent: 3 45

_____

Number of pages including cover page: _____

Fax number:

727 3625

__ Urgent    __ For Review    __ Please Comment    __ Please Reply

## Message:

A ▬▬ T ▬▬ A ffadavit

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

SARA & MICHAEL TILLER, *as parents*
*and next friend of minor child A.T.*,
  Plaintiffs,

  v.

DISTRICT OF COLUMBIA,

  Defendant.

Civil Action No. 07-1736 (JR)

## DECLARATION OF SHELLIE WOOD, PH.D.

I, Shellie Wood, do hereby declare under penalty of perjury that the foregoing is

true and correct:

1. I am a citizen of the United States of America, and over the age of 18, I have personal knowledge of the facts contained herein.

2. I have earned a masters and doctoral degree in Special Education . I hold a standard teaching license in the District of Columbia for special education (K-12).

3. I am the Special Education Coordinator for the District of Columbia Public Schools at Janney Elementary School ("Janney"). My job responsibilities include coordinating delivery of specialized and related services, chairing the eligibility process for students referred to special education, consulting with teachers and parents on provision of accommodations for children with special needs, liason to outside agencies, re special needs services, conducting assessments, managing legal records and hearing procedures for Janney school.

4. I am familiar with the related services for A.T. detailed in her February 1, 2007, IEP.

5. Janney can, and has been implementing the services detailed in A.T.'s IEP since October 1, 2007, with the exception of audiology. While attending a non-public school, A▇ has come to Janney two mornings weekly to participate in occupational and language therapies. The DCPS audiologist has been providing consultation and available for service in the event the parents elected to have A▇ audiology provided at Janney. To date the parents have elected to limit

1

A███s public services to OT and Speech  have have the audiology needs services where she is attending school.

6.  Pursuant to her Individualized Education Program ("IEP"), A.T. is currently receiving the following weekly services at Janney: 1.5 hours of speech and language therapy, 1 hour of occupational therapy, and ½ hour audiological consultation.  She is also receiving ½ hour of occupational consult per month.

7.  A.T. is brought to Janney for speech and OT before school begins twice weekly. She has made significant progress in both areas.  Progress reports attached.

8.  A.T.  has not had any major difficulties while at Janney and cooperatives happily during sessions.

9.  In addition, the attached progress reports demonstrate that A.T. is successfully meeting her IEP goals thus far.

2/13/2008
_____
**Date**

_**Shellie Wood, Ph.D.**_____
**Signature**

2

# DISTRICT OF COLUMBIA PUBLIC SCHOOL SYSTEM
## IEP REPORT CARD

STUDENT'S NAME: A_____

PUPIL #: 9226868

Meeting Date: _____ NON-

Page #: _____

GRADE: ATTENDING   SCHOOL: Janney ES

### GOAL
A_____ will sustain erect desk postures for classroom activities up to 15 min. with sensory reminders as needed (fidgets, disc to sit on) and with sensory/movement breaks structured into her routine.

SERVICE PROVIDER: J. Lull

| Date | Code | Attendance | Notes | CURRICULUM CONNECTION | | |
|------|------|-----------|-------|----------------------|---|---|
| | | | | OT | | |
| 1/25/08 | MP | Good | The student's progress A_____ is developing trunk control, strength and endurance. She continues to require movement and/or rest breaks during seated activities/tasks. | ☑ is ☐ is not sufficient to enable the student to achieve the goals within a year. | | |
| Date | Code | Attendance / | Notes | The student's progress | ☐ is ☐ is not sufficient to enable the student to achieve the goals within a year. | |
| Date | Code | Attendance / | Notes | The student's progress | ☐ is ☐ is not sufficient to enable the student to achieve the goals within a year. | |
| Date | Code | Attendance / | Notes | The student's progress | ☐ is ☐ is not sufficient to enable the student to achieve the goals within a year. | |
| Date | Code | Attendance / | Notes | The student's progress | ☐ is ☐ is not sufficient to enable the student to achieve the goals within a year. | |

### GOAL
A_____ will complete simply 4-5 piece interlocking puzzles with occasional visual cues.

SERVICE PROVIDER: J. Lull

| Date | Code | Attendance | Notes | CURRICULUM CONNECTION | | |
|------|------|-----------|-------|----------------------|---|---|
| | | | | OT | | |
| 1/25/08 | A | Good | The student's progress A_____ is able to complete a 4-5 piece interlocking puzzle independently. | ☑ is ☐ is not sufficient to enable the student to achieve the goals within a year. | | |
| Date | Code | Attendance / | Notes | The student's progress | ☐ is ☐ is not sufficient to enable the student to achieve the goals within a year. | |
| Date | Code | Attendance / | Notes | The student's progress | ☐ is ☐ is not sufficient to enable the student to achieve the goals within a year. | |
| Date | Code | Attendance / | Notes | The student's progress | ☐ is ☐ is not sufficient to enable the student to achieve the goals within a year. | |
| Date | Code | Attendance / | Notes | The student's progress | ☐ is ☐ is not sufficient to enable the student to achieve the goals within a year. | |

### PROGRESS CODE

A - Achieved
(The student has successfully completed the goal)

MP - Making progress
(The student is making expected degree of progress)

EB - Emerging Benchmark
(The skill necessary for the goal is beginning to appear.)

NP - No Progress
(The student is not making expected progress.)

N/A - Not Applicable At This Time
(The student has not begun to work on this goal.)

District of Columbia Public Schools   07-02-2001   Division of Special Education   IEP Report Card

# DISTRICT OF COLUMBIA PUBLIC SCHOOLS
## DIVISION OF SPECIAL EDUCATION

### Related Service Progress Report

Child's Name: A▮▮▮ T▮▮    Service Provider: T. Carroll-Wilk
Date of Birth: ▮▮▮/03    Discipline: Speech + Language
ID#: 9226688

Home School: Janney ES
Service School: Janney ES

Date of Report: 1-22-08

**Type of Service:**
Psychosocial Counseling/ Individual ___
Psychosocial Counseling/ Group ___
Speech/Language Therapy/ Individual ✓
Speech/Language Therapy/ Group ✓

Period of Intervention: SY2007-2008

**Goal to be addressed:** A▮▮▮ will increase expressive and receptive language skills via increased oral-motor abilities as evidenced by mastery of the following short-term objectives w/ 80% acc.
**Objective to be addressed:** A▮▮▮ will: 1) Follow 2-3 step directions w/ linguistic concepts. 2) Use 3-4 words per utterance to communicate requests and questions. 3) Identify a common object based on attribute or function. 4) Differentiate her tongue from her jaw. 5) Increase tongue elevation and mobility. 6) Repeat syllable patterns and words of increasing length. 7) Imitate oral movements in isolation and sequence oral motor exercises w/ fluid movements all w/ 80% acc or ¾ trials.

## Description of Presenting Issues:

A▮▮▮ is working on increase receptive and expressive language skills via increased oral-motor abilities.

## Outcome of Intervention:

This quarter therapy continues to focus on increasing A▮▮▮'s articulation and discrimination of initial consonant sounds. A▮▮▮ has shown an increased ability to work on task and recall initial consonant sounds. A▮▮▮ continues to work on labeling common objects and repeating simple sentences. Therapy will continue to focus on auditory discrimination and expressive vocabulary.

Signature of Service Provider: ▮▮▮▮▮▮▮▮

# DISTRICT OF COLUMBIA PUBLIC SCHOOLS
## DIVISION OF SPECIAL EDUCATION

### Related Service Progress Report

| | |
|---|---|
| Child's Name: A___ T___ | Service Provider: T. Carroll-Wilk |
| Date of Birth: ___/03 | Discipline: Speech + Language |
| ID#: 9226688 | |
| | Type of Service: |
| | Psychosocial Counseling/ Individual ___ |
| Home School: Janney ES | Psychosocial Counseling/ Group ___ |
| Service School: Janney ES | Speech/Language Therapy/ Individual ✓ |
| | Speech/Language Therapy/ Group ✓ |
| Date of Report: 11-2-07 | Period of Intervention: S4 2007-2008 |

**Goal to be addressed:** A___ will increase expressive and receptive language skills via increased oral-motor abilities as evidenced by mastery of the following short-term objectives w/ 80% acc.
**Objective to be addressed:** A___ will: 1) Follow 2-3 step directions w/ linguistic concepts. 2) Use 3-4 words per utterance to communicate requests and questions. 3) Identify a common object based on attribute or function. 4) Differentiate her tongue from her jaw. 5) Increase tongue elevation and mobility. 6) Repeat syllable patterns and words of increasing length. 7)Imitate oral movements in isolation and sequence oral motor exercises w/ fluid movements all w/ 80% acc or ¾ trials.

### Description of Presenting Issues:

A___ is working on increase receptive and expressive language skills via increased oral-motor abilities.

### Outcome of Intervention:

This quarter therapy has focused on increasing A___'s articulation of initial consonant sounds via tongue strengthening. A___ has shown increased an ability to perform isolated tongue movements w/ visual prompts. A___ has also been working on object labeling working towards increased expressive language. Therapy will continue to focus on oral motor strength and expressive vocabulary.

Signature of Service Provider: _____

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| SARA & MICHAEL TILLER, *as parents and next friend of minor child* A.T.,      Plaintiffs, <br><br> v. <br><br> DISTRICT OF COLUMBIA, <br><br>      Defendant. | Civil Action No. 07-1736 (JR) |

<u>**ORDER**</u>

Upon consideration of Plaintiffs' Motion for Summary Judgment and Defendant's

Cross-Motion for Summary Judgment, the Oppositions and Replies thereto, it is hereby

**ORDERED** that Defendant's Motion for Summary Judgment is **GRANTED**; and it is

**FURTHER ORDERED** that Plaintiffs' Motion for Summary Judgment is **DENIED;**

and it is

**FURTHER ORDERED** that this case is dismissed with prejudice.


_____
United States District Judge Robertson

1