# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| SARA & MICHAEL TILLER, | : | |
| as parents and next friend of the minor child, | : | |
| A.T. | : | |
| and | : | |
| A.T., individually | : | |
| | : | |
| **Plaintiffs** | : | |
| | : | |
| v. | : | Civil Action No.  07-1736 (JR) |
| | : | |
| GOVERNMENT OF THE DISTRICT OF COLUMBIA | : | |
| A Municipal Corporation | : | |
| | : | |
| **Defendant.** | : | |

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

COMES NOW, the Plaintiff, by and through undersigned counsel, and requests that this honorable Court grant a summary judgment pursuant to Federal Rule of Civil Procedure 56(c).  Plaintiffs are seeking a reversal of the June 29, 2007 Hearing Officer's Decision which determined that A.T. had not been denied access to a free and appropriate education.  Plaintiffs allege that the Defendant violated A.T.'s right to a Free Appropriate Public Education (FAPE) by failing to evaluate her in all areas of suspected disability; failing to determine her eligibility and develop an IEP and determine placement by the time the student turned (3) three years of age; failing to develop an appropriate IEP and; failing to provide an appropriate educational placement.  In support of its Motion and pursuant to Local Rules 7(a),(c), and (h), the Plaintiff submits its Memorandum of Points and Authorities in Support of its Motion for Summary Judgement, a Statement of Material Facts as to which there is no Genuine Issue, and a

proposed Order.

Respectfully submitted,

_____
Ellen Douglass Dalton, Esq
D.C. Bar No.411612
Paul S. Dalton, Esq.
D.C. Bar No. 439118
Dalton & Dalton, P.C.
1008 Pendleton Street
Alexandria, Virginia 22314
(703) 739-4300 (ph)
(703) 739-2323 (fax)

\

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **SARA & MICHAEL TILLER,** | : |
| **as parent and next friend of the minor child A.T.,** | : |
| **and** | : |
| **A.T., Individually** | : |
| | : |
| **Plaintiffs** | : |
| | : |
| v. | :**CIVIL ACTION NO. 07-1736(JR)** |
| | : |
| **GOVERNMENT OF THE DISTRICT OF COLUMBIA** | : |
| **A Municipal Corporation** | : |
| | : |
| **Defendant.** | : |
| | : |

## PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

COMES NOW, the Plaintiff, by and through undersigned counsel, and requests that this honorable Court grant a summary judgment pursuant to Federal Rule of Civil Procedure 56(c), finding that Hearing Officer Woods erred in his determination that A.T. had not been denied access to a free and appropriate education.  Plaintiffs allege that the Defendant violated A.T.'s right to a Free Appropriate Public Education (FAPE) by failing to evaluate her in all areas of suspected disability; failing to determine her eligibility and develop an IEP and determine placement by the time the student turned (3) three years of age; failing to develop an appropriate IEP and; failing to provide an appropriate educational placement and therefore seek reversal of the said determination.

**FACTUAL BACKGROUND**

A.T. was born in Naples, Italy on 10/17/03, when her father, a physician, was on active military duty.  She has an identical twin.  At the age of 2 ½ months, A.T. contracted bacterial meningitis and was hospitalized for 6 weeks in intensive care in Naples, Italy.  Post meningitis concerns were noted with both language and motor development.  A.R. 92.

In March 2004, A.T.'s hearing was reported as normal.  Tubes were placed in her ears to closely monitor for post hearing loss due to the meningitis.  When A.T. was 15 months of age, she was diagnosed with profound sensorineural hearing loss.  A.R. 93

A.T. received a cochlear implant in the United States in February 2005 which was activated in March 2005.  Subsequently, in April 2005, the family relocated to the Washington, DC area.  A.T. was enrolled in the River School in April 2005.  A.R. 108/T. 55-56 and 70.

Ms. Tiller contacted the Early Intervention Program in D.C. and an IFSP dated 7/13/06 was developed.  Her transition from an IFSP to an IEP was to occur prior to her third birthday on 10/17/06.  On 9/01/06 D.C. Early Intervention sent an invitation to DCPS for a transition meeting to be held 9/19/06.  The meeting was held at the DCPS Care Center and individual(s) from DCPS were in attendance.  DCPS did not develop an IEP for A.T. at that time.  A.R. 76 and 107/ T. 57-58.

DCPS would not allow Ms. Tiller to register A.T. with DCPS until 9/27/06.  On 9/27/06, DCPS developed a Student Evaluation Plan that indicated that DCPS would just review all outside evaluations provided by the parent and only perform one

4

evaluation (Brigance) to evaluate her educational performance.  A.R. 113/T. 470-471.

DCPS did not convene a MDT/IEP meeting by 10/17/06, when A.T. turned age (3)

three.  A.R. 159/T, 474.

On December 7, 2006, DCPS notified Ms. Tiller that they were now ready to

convene a MDT/IEP meeting.  The date suggested was December 18, 2006.  The

meeting could not be held on December 18, 2006 as school was closed for the holiday

and none of A.T.'s teachers were available from December 15 through January 2, 2007.

The parent offered to have the meeting either before the 15th or after January 2, 2007.

DCPS advised that they would not be able to meet before the 15th.  A.R. 140-142.

The MDT/IEP meeting was finally convened by DCPS on February 1, 2007.  DCPS

classified A.T. as Hearing Impaired and refused to consider an additional classification

of Speech & Language Impaired which would result in a classification of Multiple

Disabilities.  The Speech & Language Impairment classification was supported by

evaluations.  Neither the parent nor A.T.'s teachers and related service providers

agreed with the sole classification of Hearing Impairment given A.T.'s background of

post meningitis language delays and previous evaluations diagnosing Apraxia, a

Speech & Language Disorder.  A.R. 159-160 and 169.

DCPS subsequently developed an IEP and issued a Notice of Placement for A.T. to

receive 1 ½ hours of Speech & Language Therapy per week; 1 hour of direct

Occupational Therapy services per week; ½ hour of Occupational consult services per

month and 1 hour of Audiology services per week as a non-attending student.  The

location of services was designated as Anna's neighborhood school, Janney

Elementary School.  DCPS advised the parent that A.T. could receive related services

on the IEP at Janney Elementary, but could not be enrolled to attend school until she was of school age.  A.R. 173 and 184/T. 68-69 and 625.

DCPS advised that her placement would be home (as this is the least restrictive placement according to DCPS) until she reached school age.  A.R. 171.

Neither the parent nor A.T.'s teachers and related service providers agreed with the amount of services being proposed for A.T.  Specifically, A.T. required significantly more Speech & Language services than were being proposed.  In addition to the 1 ½ hours of pull out speech & language services, A.T. requires a significant amount of push in speech & language services (speech & language services in the classroom) in order to address her significant language delays.  A.R. 165 and 171/T. 86-87 and 410-411.

 Additionally, DCPS refused to add Physical Therapy services on her IEP even though the need for P.T. was previously documented on her IFSP.  DCPS finally agreed that they would perform a P.T. evaluation but gave no explanation as to why this evaluation had not been done previously and prior to the convening of the MDT/IEP meeting.  DCPS had been in receipt of the IFSP since September 2006.  66-67.  At no time from the date of the MDT/IEP meeting on February 1, 2007 through the date of the commencement of the Due Process Hearing in May did DCPS provide the A.T.'s parents with a physical therapy evaluation.  T. 66-67   A.T.'s parents did not agree with the IEP or the placement proposed by DCPS and therefore, A.T. remained at the River School where she has been making appropriate educational progress.  A.R. 187.

On February 20, 2007, Petitioners filed a Due Process Complaint Notice alleging, inter alia, (1) a violation of the student's right to a Free Appropriate Public Education

(FAPE) by failing to evaluate her in all areas of suspected disability; (2) failing to determine her eligibility and develop an IEP and determine placement by the time the student turned (3) three years of age; (3) failing to develop an appropriate IEP; and (4) failing to provide an appropriate educational placement.  A.R. 189-197.

Pursuant to the Complaint filed, a Due Process Hearing was scheduled on May 9, 2007.  After the in-person testimony of two witnesses for the Petitioners the hearing was continued to May 24, 2007.  A.R.  205.

Testimony was continued on May 24, 2007, but not completed and a 3rd day of testimony was scheduled for June 20, 2007, on which date all testimony was finally completed.  T. 378 and 272.

Subsequent to the Due Process Hearing Determination the A.T.'s parents went to Janney, E.S. for the purpose of having Janney provide the related services outlined in A.T.'s IEP.  Representing Janney at the meeting were Shellie Woods, Toni Wills and Principal Cartland.  Ms. Woods explained that now Janney is A.T.'s home school, they are her case managers.  That since Janney does not have an audiologist or sensory gym, nor had Janney been asked or notified about their ability to provide services when the IEP was written, they were recommending two full time special education programs, one at Barnard and the other at Key E.S.

## ARGUMENT

### The Court should Grant Summary Judgment and Reverse the HOD, because the Hearing Officer Erred when he concluded DCPS met their obligations under IDEIA and provided a Free Appropriate Education to A.T.

The party seeking summary judgment has the initial responsibility of demonstrating the absence of a genuine dispute of material facts through the pleadings, depositions, answers to interrogatories, admissions on file, and in this case the administrative record. *Celortex Corp v.Catrett*, 477 U.S. 317, 323 (1986); Fed. R. Civ. P. 56.  The nonmoving party must then "go beyond the pleadings and by [its] own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *See Celortex* at 324.  In the instant case, the facts are clear when reviewing the administrative record.

The issues in this case are legal in nature because the underlying factual issues are undisputed.

**The Hearing Officer erred when he concluded DCPS met their obligation under IDEIA with regard to the issue of evaluating A.T. in all areas of suspected disability.**

The Petitioners provided evidence that at the February 1, 2007 IEP meeting, DCPS admitted that a physical therapy evaluation needed to be completed.  However, at no time from that date through the date of the DPH did DCPS take steps to complete said evaluation.  A.R. 169/T. 445.   When DCPS convened the MDT/IEP meeting on February 1, 2007, they had before them A.T.'s IFSP.  As noted previously in the background facts, DCPS failed to have an IEP in place for A.T. by the time she turned three (3) years of age.  A.T. had been found to have a disability in physical therapy; had been found eligible for and was receiving physical therapy services under her IFSP, A.R. 83, based on an evaluation that had been conducted by "Little Hands & Feet". A.R. 72.  DCPS decided A.T. no longer had a disability in the area of physical therapy

8

and removed it from her IEP without first conducting an evaluation. Pursuant to C.F.R. 34 §300.305(e) " Evaluations before a change in eligibility". Evaluations are required before a public agency determines that a child is no longer a child with a disability. In fact, the only evidence in the record at the Due Process Hearing was an evaluation conducted by "Little Hands & Feet" while A.T. was in the Early Intervention Program and had an IFSP. That evaluation recommended A.T. receive physical therapy. A.R. 72. DCPS did not present any witnesses qualified to render an opinion that A.T. was no longer in need of physical therapy at the Due Process Hearing and thus the evidence was uncontroverted. The Hearing Officer erred when he concluded in his determination that an occupational therapy evaluation instead of a physical therapy evaluation was necessary. Additionally, he also erred when he concluded that the student was receiving OT services at the River School, and thus DCPS' obligations to fully evaluate A.T. had been met. A.T. was not receiving either OT or PT services at the River School. T 82. In fact, to this day, DCPS has not conducted and provided a physical therapy evaluation of A.T. Yet, they cavalierly took it off her IFSP without sound justification. At the recent MDT/IEP meeting that took place on February12, 2008, the issue of a P.T. was again raised by A.T.'s parent. Additionally, the Occupational Therapist who began working with A.T. at the start of this school year at Janney recommended a P.T. evaluation. See Exhibit 2. The Hearing Officer erred when he concluded DCPS had met their obligation to evaluate A.T. in all areas of suspected disability.

**The Hearing Officer erred in determining that DCPS fulfilled its obligations under IDEIA when he concluded that, although admittedly (3) months after the student reached age 3, DCPS developed an IEP which could be implemented at Janney ES, the student's home school.**

Pursuant to 20 U.S.C. 1400 et seq. and 5 D.C.M.R. § 3000.1 (2003)  DCPS is required to fully evaluate every child suspected of having a disability within the District of Columbia, ages 3 through 22, determine their eligibility for special education and related services and, if they are found eligible, provide special education and related services through an appropriate IEP and Placement.  Where DCPS is aware of a students' disability, it should be prepared to meet the needs of that student when that student turns (3) three.  *Diatta v District of Columbia, 319 F. Supp. 2d 57, 68 (2004).*

DCPS is required to have procedures and policies in effect to ensure that children receiving services under Part C with an IFSP receive a smooth and effective transition to pre-school programs.  DCPS is required to have an IEP in place for these students by the time the turn three (3) years of age.  34 C.F.R. § 300.124.  DCPS should have policies in place to identify children participating in Part C but in this case, regardless of whether they were meeting their obligation under the law to have the policies and procedures in place, they were on actual notice of A.T. by the individuals in Part C and still failed to provide a smooth transition for A.T.  In fact, DCPS failed to transition her at all when they determined that her least restrictive placement was home instead of an appropriate preschool program.  Additionally, DCPS failed to consider her IFSP and the

10

fact that A.T. was receiving physical therapy services under her IFSP.  A.R.  83   The IEP team is required to consider the IFSP and it's contents in developing the IEP for a child who is turning three (3) years of age.  34 C.F.R. § 300.323 (b).   Moreover, DCPS failed to have an IEP in place for A.T. by the time she turned three (3) years of age. A.T. turned three (3) years of age on 10/17/06.  DCPS did not convene her transition IEP meeting until 2/1/07 despite the fact that they had been on notice of A.T. since 9/01/06.

The Hearing Officer's concluded that the IEP developed which called for only 3.5 hours of related services in the areas of Speech & Language, Occupational Therapy and Audiology and the placement proposed by DCPS of home except for the 3.5  hours of related services that were to be provided at A.T.'s home school, Janney Elementary was appropriate.  The Hearing Officer made this conclusion despite evidence that the goals agreed to by DCPS for the student's IEP required that they be implemented in a "classroom setting" A.R. 177; A.R. 178; A.R. 179; A.R. 180 and the providers included a "classroom staff".  A.R. 175; A.R. 176; A.R. 180; A.R. 181.  DCPS admitted that the student would be a non-attending student, thus would not be placed in a class or receive classroom instruction.  T. 548-551.

The Hearing Officer's conclusion that DCPS had not violated IDEIA was made despite credible evidence, by a recognized expert neuropsychologist with a vast amount of experience in working with hearing impaired/deaf students having additional languages deficits, (T 101-107) that A.T. would need a full time special education placement (Out of General Education) by the time she reached kindergarten at age 5 if she did not now receive the services requested by the parents.  T-125.

The Hearing Officer's conclusion that DCPS had not violated IDEIA was made despite evidence indicating that even if the student suffered from only a simple hearing loss the IEP proposed by DCPS would be inappropriate.  T-116.

The Hearing Officer's conclusion that DCPS had not violated IDEIA was made despite credible evidence from both a recognized expert neuropsychologist and speech and language therapist that completely contradicted the evidence provided by DCPS.

The court must give "due weight" to the Hearing Officer's determination.  The Supreme Court has held that a court reviewing an IEP case should make two inquiries. "First, did the school board procedurally comply with the [IDEA] and its implementing regulations? Second, is the IEP reasonably calculated to provide educational benefits to the child?"  *Spielberg v. Henrico County Public Sch.*, 853 F.2d 256, 258. Procedurally, each qualified child's IEP must be a written document containing

> (A) a statement of the present levels of educational performance of such child, (B) a statement of annual goals, including short-term instructional objectives, (C) a statement of the specific educational services to be provided to such child, and the extent to which such child will be able to participate in regular educational programs, (D) the projected date for initiation and anticipated duration of such services, and (E) appropriate objective criteria and evaluation procedures and schedules for determining, on at least an annual basis, whether instructional objectives are being achieved. [**13]

*Rowley*, 458 U.S. at 182 (citing 20 U.S.C. § 1414(d)). "Failures to meet the Act's procedural requirements are adequate grounds by themselves for holding that the school board failed to provide [the student] with a [free appropriate public education]." *Bd. of Educ. of Cabell County v. Dienelt*, 843 F.2d 813, 815 (4th Cir. 1988).

Here, however, the Hearing Officer's ruling is incorrect under IDEA because it fails to consider the undisputed evidence, including the written IEP itself, that DCPS

failed to evaluate A.T. in all areas of suspected disability; failing to determine her eligibility and develop an IEP and determine placement by the time the student turned (3) three years of age.

**The Hearing Officer erred in accepting the witness DCPS proffered as an expert speech and language pathologist, who admitted she had never treated a single hearing impaired student nor any student with a cochlear implant.**

Under the Federal Rules of Evidence, Rule 702 provides that "if scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." *Fed. R. Evid. 702.*

The witness DCPS proffered as an expert admitted she had never treated a single hearing impaired student, nor any student with a cochlear implant. T. 282. Ms. Thompson had also never performed any trainings with regard to how to provide services to students with hearing impairments or cochlear implants. T. 283. Nor written any publications with regard to students with hearing impairments or cochlear implants. T. 283. Nor did any of Ms. Thompson's continuing education units have anything to do with regard to students with hearing impairments or cochlear implants. T. 283. Finally Ms. Thompson admitted she did not consider herself an expert in students with hearing impairments or cochlear implants. T. 283.

13

When parent's counsel objected to Ms. Thompson as being qualified as an expert the Hearing Officer's response was to say that since she wasn't being offered as a expert with regard to students with hearing impairments or cochlear implants he would accept her as an expert.  T. 284.  His rationalization being that Ms. Thompson,  as a speech and language therapist, could testify as an expert in this case involving a hearing impaired child with a cochlear implant, because Ms. Thompson had expertise in the evaluation and assessment of students who fall into the early childhood age range. T. 284.  Thus accepting her testimony as an expert over the otherwise uncontroverted testimony of Plaintiffs expert amounted to error.

**The Hearing Officer erred in accepting the witness DCPS proffered as an expert in special education because she had no credentials other than a long work experience with DCPS.**

The admissibility of expert witness testimony is governed by FED. R. EVID. 104(a) and , applied under the rubric established in *Daubert v. Merrell Dow Pharms.,* 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993) and *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999). The Rules require that [*3] the Court ensure that any and all expert testimony or evidence "is not only relevant, but reliable." <u>Nelson v. Tenn. Gas Pipeline Co.,</u> 243 F.3d 244, 250 (6th Cir. 2001) (*quoting Daubert,* 509 U.S. at 589). The Court must determine 1 whether the expert:

is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue. This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be <u>applied to</u>

14

the facts in issue.

*Nelson,* 243 F.3d at 251 (*quoting Daubert,* 509 U.S. at 592-93). Testimony is "scientific"

when "an expert, whether basing testimony on professional studies or personal

experience, employs in the courtroom the same level of intellectual rigor that

characterizes the practice in the relevant field." *Kumho Tire,* 526 U.S. at 152. The

proposed testimony must be relevant, in that there must be a "valid . . . connection to

the pertinent inquiry as a precondition to admissibility." *Id.* at 149 [*4] (*quoting Daubert,*

509 U.S. at 592). In other words, there must be a "fit" between the proposed testimony

and the question(s) presented by the case at bar. *Daubert,* 509 U.S. at 591.

Ms. Johnson has only a master degree in psychology and despite 25 years of

work experience is still a 3rd year student in the doctoral program unrelated to

psychology.  A.R. 500.  DCPS against the normally required practice of identifying an

expert witness and providing their curriculum vitae, did not do so with regard to Ms.

Johnson.  A.R. 505.  Again, just as in the case of Ms. Thompson, DCPS did not offer

this witness as an expert in any manner dealing with hearing impaired children or

children with cochlear implants.  A.R. 505.  Yet again, as with Ms. Thompson, the

Hearing Officer admitted Ms. Johnson as an expert because of her generalized

experience with children in early childhood development.  A.R. 505-506.  Thus,

accepting her testimony as an expert over the otherwise uncontroverted testimony of

Plaintiffs experts amounted to error.

**The Hearing Officer displayed a clear bias in favor of DCPS.**

A presumption exists in favor of a Hearing Officer's honesty and integrity, which

must be overcome by showing 'substantial countervailing reasons' indicating bias.

15

*Thomas v District of Columbia, 2006 U.S. Dist. LEXIS 83140, 19 (2006).*   At page 11 of

his Determination the Hearing Officer found the testimony of Sydee Thompson, DCPS

Speech-Language Pathologist (SLP), credible due to her candor, demeanor, and direct

non-adversarial answers to all questions.  A.R. 12.  At page 10 of his Determination the

Hearing Officer found the testimony of Zondra Johnson, DCPS Care Center Supervisor

of the Early Childhood Education Program, credible due to her candor, demeanor, and

direct non-adversarial answers to all questions.  A.R. 12.  The Hearing Officer accepted

these witness without the submission of a curriculum vitae for either nor permitting any

serious voir dire of their credentials. T. 282-283.  In addition, as mentioned earlier, in the

case of Ms. Thompson, her testimony was credited over the testimony of Mary O' Leary

Kane, the River School Speech-Language Pathologist (SLP) who had extensive

experience with students with hearing impairments and cochlear implants.  Yet, in

contrast to his comments concerning Ms. Thompson's testimony, the Hearing Officer at

page 8 of his determination characterized Ms. Kane as a person who has multiple roles

- River School staff member and advocate for AT.  A.R. 9.

     The contrast between Ms. Johnson and Dr. Morere is even more stark.  Dr. Morere

is a practicing clinical neruo-psychologist specializes in deafness with a sub specialty

focusing on the assessment of deaf children with additional disabilities affecting

language development and is also an Associate Professor at Galludet University.  A.R.

102.  In addition to her 70 publications listed in her curriculum vitae, Dr. Morere testified,

that she published yet another paper on the Neuropsychological Assessment of Deaf

Individuals in addition to conducting a workshop for the National Academy of

Neuropsychology.  A.R. 103.  Yet in his description of Dr. Morere the Hearing Officer

states only her name, nothing in any way of a description of her qualifications or testimony. A.R. 10. Her detailed description of why A.T.'s IEP was not appropriate was clearly superior to the testimony of the DCPS witnesses yet was clearly ignored by the Hearing Officer in his quest to rule on behalf of DCPS. The Hearing Officer displayed a clear bias in favor of DCPS in his determination through his findings of fact and conclusions of law, thus his determination should be reversed.

**The Hearing Officer erred when he concluded that DCPS was relieved of its obligations to provide FAPE under the IDEIA because the Plaintiffs refused to sign the proposed IEP.**

In the case of *Alfonso v. Dist. of Columbia*, 2006 U.S. Dist. LEXIS 89745 (D.D.C., Dec. 13, 2006) the parents refused to sign the IEP not once but twice and the Court ruled in their favor. "Failures to meet the Act's procedural requirements are adequate grounds by themselves for holding that the school board failed to provide [the student] with a [free appropriate public education]." *Bd. of Educ. of Cabell County v. Dienelt*, 843 F.2d 813, 815 (4th Cir. 1988). In addressing a claim under IDEA, a court must defer to the administrative fact findings, *S.H. v. State-Operated School District of the City of Newark*, 336 F.3d 260, 270 (3d Cir. 2003), [**15] and give weight "to the expertise of the hearing officer and school officials responsible for the child's education," *Lyons v. Smith*, 829 F. Supp. 414, 418 (D.D.C. 1993). While the Hearing Officer's decision is entitled to deference, the court may grant relief from such a decision based on a preponderance of the evidence. 20 U.S.C.§1415(i)(2)(C)(iii). In this case, the Hearing Officer's decision merits no deference.

The court must give "due weight" to the Hearing Officer's determination, Rowley, 458 U.S. at 206, and accept all justifiable inferences in the defendant's favor, *Anderson*, 477 U.S. at 255. Here, however, the Hearing Officer's ruling is incorrect under IDEA because it fails to consider the undisputed evidence, including the written IEP itself, that the goals and objectives of the IEP had to be implemented in a classroom setting. Because the school district must comply with the specific procedural requirements of IDEA. *Rowley*, 458 U.S. at 206-07, the court should reverse the Hearing Officer's determination. The defendant's awareness that services are needed, however, does not fulfill the procedural requirements of IDEA, which requires measurable goals, including benchmarks or short-term objectives and how the child's progress toward the annual goals will be measured in adherence to the setting (i.e. classroom). *A.I. ex rel. lapalucci v. Dist. of Columbia*, 402 F. Supp. 2d 152, 159; 20 U.S.C. § 1414(d); *see also Diatta v. Dist. of Columbia*, 319 F. Supp. 2d 57, 63 (D.D.C. 2004).  Clearly A.T.'s disabilities required a higher level of services than proposed by DCPS.  Providing 3.5 hours of services outside a classroom setting, does not fulfill the procedural requirements of IDEA, which requires measurable goals, including benchmarks or short-term objectives and how the child's progress toward the annual goals will be measured in the required setting.  *A.I. ex rel. lapalucci v. Dist. of Columbia*, 402 F. Supp. 2d 152, 159; 20 U.S.C. § 1414(d); *see also Diatta v. Dist. of Columbia*, 319 F. Supp. 2d 57, 63 (D.D.C. 2004) (stating that a complete IEP "must" include "measurable goals, including benchmarks or short-term objectives").

**The Hearing Officer erred in concluding that DCPS was relieved of their obligations under IDEIA.**

The Hearing Officer erred in concluding that DCPS was relieved of their obligations under IDEIA with regard to providing an appropriate placement because the Plaintiffs refused to accept DCPS' proposed placement.

**The Hearing Officer erred in concluding that the River School was not the least restrictive appropriate placement.**

The Hearing Officer erred in concluding that the River School was not the least restrictive appropriate placement when he ignored that the proposed DCPS placement of Home was more restrictive than the general education environment of the River School.

**The Hearing Officer erred in concluding that the River School was not an appropriate placement.**

The Hearing Officer erred in concluding that the River School was not an appropriate placement because they did not employ a hearing impaired teacher and instead utilized a model of a regular education teacher assisted by a speech and language pathologist.

**The Hearing Officer erred in showing his bias against the Plaintiffs.**

The Hearing Officer showed his bias against the Plaintiffs when he concluded that their insistence that Janney ES was an inappropriate placement was based on their desire to have their daughter go to school where her mother worked instead of the expert testimony presented that providing A.T. only related services of 3 ½ hours a week at Janney was inappropriate.

19

**The Hearing Officer erred in relying on the testimony of witnesses from DCPS that Janney was an appropriate placement for A.T.**

Given the statements and participation of personnel, including Janney's principal Mr. Cartland, subsequent to the DPH, that Janney had not been consulted when A.T.'s IEP was developed that Janney was not appropriate and that given A.T.'s education needs they would be recommending two full time special education program placements at either Barnard or Key, ES; it was error for the Hearing Officer to rely on the testimony of witnesses from DCPS that Janney was an appropriate placement for A.T.

## CONCLUSION

Based on the arguments above the Plaintiff requests that this Court issue a Summary Judgment for the Plaintiff and against the Defendant and reverse the June 29, 2007, Hearing Officer's Decision.

Respectfully submitted,

_____/s/_____
Ellen Douglass Dalton, Esq
D.C. Bar No.  411612
_____/s/_____
Paul S. Dalton, Esq
D.C. Bar No. 439118
Dalton & Dalton, P.C.
1008 Pendleton Street
Alexandria, Virginia 22314
(703) 739-4300 (ph)
(703) 739-2323 (fax)

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing document with its attachments was filed

electronically on this 14th day of February,  2008.


_____/s/_____
Ellen Douglass Dalton, Esq.

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **SARA & MICHAEL TILLER** | : |
| **as parents and next friend of the** | : |
| **minor child, A.T.,** | : |
| **and** | : |
| **A.T., individually** | : |
|  | : |
| **Plaintiffs** | : |
|  | : |
| **v.** | : |
|  | : **Civil Action No. 07-1736 (JR)** |
|  | : |
| **GOVERNMENT OF THE DISTRICT OF COLUMBIA** | : |
| **A Municipal Corporation** | : |
|  | : |
| **Defendant.** | : |

---

**PLAINTIFF'S STATEMENT OF MATERIAL FACTS**
**AS TO WHICH THERE IS NO GENUINE ISSUE**

Pursuant to Fed .R. Civ. P. Rule 56 and LCvR 7 (h), the Plaintiffs hereby submit

the following Statement of Material Facts to which there is no genuine issue:

1.  A.T. was born in Naples, Italy on 10/17/03, when her father, a physician, was on

    active military duty.  She has an identical twin.  At the age of 2 ½ months, A.T.

    contracted bacterial meningitis and was hospitalized for 6 weeks in intensive care

    in Naples, Italy.  Post meningitis concerns were noted with both language and

    motor development.  A.R. 92.

2.  In March 2004, A.T.'s hearing was reported as normal.  Tubes were placed in her

    ears to closely monitor for post hearing loss due to the meningitis.  When A.T.

    was 15 months of age, she was diagnosed with profound sensorineural hearing

    loss.  A.R. 93.

3.    A.T. received a cochlear implant in the United States in February 2005 which
      was activated in March 2005.  Subsequently, in April 2005, the family relocated
      to the Washington, DC area.  A.T. was enrolled in the River School in April 2005.
      A.R. 108/T. 55-56 and 70.

4.    Mrs. Tiller contacted the Early Intervention Program in D.C. and an IFSP dated
      7/13/06 was developed.  Her transition from an IFSP to an IEP was to occur prior
      to her third birthday on 10/17/06.  On 9/01/06, D.C. Early Intervention sent an
      invitation to DCPS for a transition meeting to be held 9/19/06.  The meeting was
      held at the DCPS CARE CENTER and individual(s) from DCPS were in
      attendance.  DCPS did not develop an IEP for A.T. at that time.  A.R. 76 and
      107/ T. 57-58 and 536-537.

5.    At the 9/19/06 meeting, DCPS would not allow Ms. Tiller to register A.T. with
      DPCS but instead required to call and make another appointment.  T. 58-59.

6.    DCPS did not allow Ms. Tiller to register A.T. until 9/27/06.  On 9/27/06, DCPS
      developed a Student Evaluation Plan that indicated that DCPS  would just review
      all outside evaluations provided by the parent and only perform one evaluation
      (Brigance) to evaluate her educational performance.  A.R. 113/T. 470-471.

7.    DCPS did not convene a MDT/IEP meeting by 10/17/06, when A.T. turned age
      (3) three.  A.R. 159/T, 474.

8.    On December 7, 2006, DCPS notified Ms. Tiller that they were now ready to
      convene a MDT/IEP meeting.  The date suggested was December 18, 2006.
      The meeting could not be held on December 18, 2006 as the River school was
      closed for the holiday and none of A.T.'s teachers were available from December

15  through January 2, 2007.  The Parent offered to have the meeting either before  the 15th or after January 2, 2007.  DCPS advised that they would not be able to meet before the 15th.  A.R. 140-142.

9.    The MDT/IEP meeting was finally convened by DCPS on February 1, 2007.  DCPS classified A.T. as Hearing Impaired and refused to consider an additional classification of Speech & Language Impaired which would result in a classification of Multiple Disabilities.  The Speech & Learning Impairment classification was supported by evaluations.  Neither the parent nor A.T.'s teachers and related service providers agreed with the sole classification of Hearing Impairment given A.T.'s background of post meningitis language delays and previous evaluations diagnosing Apraxia, a Speech & Language Disorder.  A.R. 159-160 and 169.

10.    DCPS subsequently developed an IEP and issued a Notice of Placement for A.T. to receive 1 ½ hours of Speech & Language Therapy per week; 1 hour of direct Occupational Therapy services per week; ½ hour of Occupational consult services per month and 1 hour of Audiology services per week as a non-attending student.  The location of services was designated as Anna's neighborhood school, Janney Elementary School.  DCPS advised the parent that A.T. could receive the related services on the IEP at Janney Elementary, but could not be enrolled to attend school until she was of school age.  A.R. 173 and 184/T. 68-69 and 625.

11.    DCPS advised that her placement would be home (as this is the least restrictive placement according to DCPS) until she reached school age.  A.R. 171.

12.    Neither the parent nor A.T.'s teachers and related service providers agreed with

the amount of services being proposed for A.T.  Specifically, A.T. required

significantly more Speech & Language services than were being proposed.  In

addition to the 1 ½ hours of pull out speech & language services, A.T. requires

push in speech & language services (provided in the classroom)  in order to

address her significant language delays.  A.R. 165 and 171/T. 86-87 and 410-

411.

13.    At the February 1, 2007 MET/IEP meeting, DCPS refused to add Physical

Therapy services on her IEP even though the need for P.T. was   previously

documented on her IFSP.  DCPS finally agreed that they would perform a P.T.

evaluation but gave no explanation as to why this evaluation had not been done

previously and prior to the convening of the MDT/IEP meeting.  DCPS had

been in receipt of the IFSP since September 2006. T. 66-67.

14.     At no time from the date of the MDT/IEP meeting on February 1, 2007 through the

date that the hearing commenced on May 9, 2007, did DCPS provide the Tillers

with a physical therapy evaluation.  T. 66-67.

15.    A.T.'s parents did not agree with the IEP or the placement proposed by DCPS and

therefore, A.T. remained at the River School where she had been making

appropriate educational progress.  A.R. 187.

16.    On February 20, 2007, Petitioners filed a Due Process Complaint Notice alleging,

inter alia, (1) a violation of the student's right to a Free Appropriate Public

Education (FAPE) by failing to evaluate her in all areas of suspected disability; (2)

failing to determine her eligibility and develop an IEP and determine placement by

the time the student turned (3) three years of age; (3) failing to develop an appropriate IEP; and (4) failing to provide an appropriate educational placement. A.R. 189-197.

17.   Pursuant to the Complaint filed, a Due Process Hearing was scheduled on May 9, 2007.  After the in-person testimony of two witnesses for the Petitioners the hearing was continued to May 24, 2007.  A.R.  205.

18.   Testimony was continued to May 24, 2007, but not completed and a 3rd day of testimony was scheduled for June 20, 2007, on which date all testimony was finally completed.  T. 378 and 272.

19.   Subsequent to the Due Process Hearing Determination the parent's of A.T. went to Janney, E.S. for the purpose of having Janney provide the related services outlined in A.T.'s IEP.  Representing Janney at the meeting were Shellie Woods, Toni Wills and Principal Cartland.  Ms. Woods explained that now Janney is A.T.'s home school, they are her case managers.  That since Janney does not have an audiologist or sensory gym, nor had Janney been asked or notified about their ability to provide services when the IEP was written, they were recommending two full time special education programs, one at Barnard and the other at Key E.S.   **See Exhibit 1.  "Email dated September 12, 2007,  from Shelly Woods, Special Education Coordinator at Janney Elementary School."**

20.   Subsequent to the Hearing Determination and during the pendency of this appeal, a MDT/IEP meeting was convened on February 12, 2008 and an new IEP was developed which requires A.T. to receive full time support, ½ of the time by a

speech and language pathologist and ½ the time by a teacher of the deaf in addition to a full time general education teacher in a general education classroom. A total of 28.375 hours of services in a general education classroom and 3.5 hours of related services in a special education setting. **See Exhibit 2.**

**"IEP dated February 12, 2008 and accompanying MDT/IEP meeting notes"**

21.  Subsequent to the date of the Hearing Determination and prior to the development of the February 12, 2008 IEP, DCPS had not conducted any new evaluations. The only evaluation that was conducted was an updated Speech & Language Evaluation by the River School. The evaluation did not reveal that A.T. had declined in her functioning since the last evaluation or that her needs had changed from the evaluations previously conducted. Instead, the evaluation stated that A.T. continued to make educational progress at her placement at the River School. **See Exhibit 3. "Speech & Language Evaluation 10/23/07; 10/24/07; 10/26/07; and 11/01/07."**

22.  At the February 12, 2008, MDT/IEP meeting, the parent was provided for the first time a copy of an Observation conducted by Allison Murtha, a DCPS teacher of the deaf on May 2, 2007, seven (7) days prior to the first day of the Due Process Hearing on May 9, 2007. Ms. Murtha recommended that Anna receive educational services *in an inclusive classroom environment* with small student to teacher ratio that offers opportunities for intensive language instruction in both group and individual situations. (Emphasis added) **See Exhibit 4. " DCPS Auditory/Oral Hearing Impaired Program Eligibility for Services."**

Respectfully submitted,

_____
Ellen Dalton, Esq
D.C. Bar No. 411612
Paul S. Dalton, Esq.
D.C. Bar No. 439118
Dalton & Dalton, P.C.
1008 Pendleton Street
Alexandria, Virginia 22314
(703) 739-4300 (ph)
(703) 739-2323 (fax)

.

> To: mmtiller@bethesda.med.navy.mil,
> tiller05@yahoo.com
> Subject: Anna's placement
> Date: Wed, 12 Sep 2007 15:23:43 -0400
> From: woodfam5@aol.com
> CC: Marshall.Cartland@k12.dc.us
>
> I'm attaching the program descriptions Toni gathered
> from the two specialized languaged based HI
> programs.? It appears as though your BEST and most
> intensive and most appropriate program is at
> Barnard.? There they have the intensive language
> based program for PRE-SCHOOL aged HI?children.? At
> Key, she could attend the regular PreK program and
> have access to all the related service specialists.?
> She could also do that at Janney.? The specialized
> language based program for HI children begins at Key
> for Kindergarten aged children.? so she is too young
> for the specialized program located at Key.? So
> Barnard is?where she would get the most
> inteventions, training, etc.? Again, look at the
> info and let us know how you want to move forward.
>
> Nice meeting both of you yesterday
>
> Shellie Wood
>

**Exhibit 1**

Hey guys!

Here is what I gathered in talking to individuals from both schools, as well as speaking with a HI teacher, Allison Murtha, in the office of Audiology and HI and audiologist, Jean Tebinka.

DCPS has an auditory/oral program, which teaches oral language as opposed to sign. An observation done in May at the River School included recommendations for an inclusive program for the deaf and hard of hearing that would offer Anna more opportunities for direct language instruction in addition to time with her hearing peers. These services are available through the preschool auditory/oral hearing-impaired program at Barnard Elementary School.

The services offered at Barnard include:

-small student:teacher ratio.  There are 4 HI students (currently the size, if including Anna, at Barnard) that integrate with their hearing peers throughout different times of the day.  The HI students attend all specials (art, library, music, etc.) with their hearing peers as well as lunch and recess.  In addition to these times, the HI students also go into the regular education setting for academic and social time. The amount of time the HI students go into the general education setting is dependent upon each child's ability to be communicatively and academically successful in this environment.  To keep classroom numbers small, hearing peers from the other preschool classrooms will also join the HI children for language, academic, and social time with the teacher of the hearing-impaired. This class size is kept to about 8 children or less and is a 50/50 split.  FM systems are used throughout the school day to give HI children the best possible access to spoken language in a variety of settings (class time, specials,  etc.).

-direct language instruction is given in addition to direct 1/1 services for speech and auditory development

-directly meets the needs of students who have hearing loss who use hearing aids and cochlear implants.

-Serves Early childhood population

- speech therapist with a background in working with children with hearing loss, and an audiologist on staff

**The HI program continues at Key Elementary for grades K through 5.**

Here is what Key offers for a 4 year old:

-General Ed classroom/mainstreamed with pull-out services with audiologist, speech therapist, and HI teacher.

Direct language instruction not provided in general ed setting.

-HI program not designed for preschool students. Barnard typically serves this population.

Recommendations from the observation in May suggest she would benefit from a is a full-time language based model with a small student:teacher ratio where she can receive direct auditory, speech, and language instruction within her classroom environment as well as one on one. Anna would benefit from small group integrated instruction with her hearing peers because it would give her the  opportunity to practice and utilize her communicative skills with more regularity. With that said, Barnard has openings and welcomes the parents to visit the school and observe the program. I spoke with the sped coordinator and her name is Dr. Reid. The HI teacher is Ms. Wollenzien.

--
Toni Wills

Exhibit 2

## DISTRICT OF COLUMBIA PUBLIC SCHOOLS
## WASHINGTON, D.C.
### INDIVIDUALIZED EDUCATIONAL PROGRAM

DCPS - IEP Page 1 of 4

Additional Comments:

### I. IDENTIFICATION INFORMATION

**Student Name:** Last **Tiller**    First **Anna**    MI

**Student ID** 9226868    **Soc. Sec. No.** 130925213    **Age:** 4    **Grade** 43

**Gender** [ ] M [X] F    **Date of Birth** 10/17/2003    **Ethnic Group** White

**Address** 4515 Garrison St NW    NW
House No.    Street Name    Quadrant    Apartment #
Washington    DC    20016
City    State    Zip Code

[ ] Non-attending

**Attending School** Early Childhood    **Home School**

[X] Elem. [ ] Mid/JHS [ ] SHS [ ] CWS /

**Parent** Mr. and Mrs. Tiller

**Address of (if different from student):** [X] Parent [ ] Guardian [ ] Surrogate
House No.    Street Name    Quad    Apt. No.    City    State    Zip Code
**Telephone: Home** 2022371150    **Work**

### II. CURRENT INFORMATION

**Date of IEP Meeting:** 2/4/2008

**Date of Last IEP Meeting:** 2/1/2007

**Date of Most Recent Eligibility Decision:** 9/26/2007

**Purpose of IEP Conference:**
[ ] Initial IEP    [X] Review of IEP
[ ] Requested Eval.    [ ] 3yr ReEval.

**Indicate Level of Standardized Assessment:**
Level III

**ADDENDA TO BE ATTACHED AS NEEDED**
Check the appropriate box(es)
[ ] BEHAVIOR    [ ] TRANSPORTATION
[ ] ESY    [ ] TRANSITION

### III. LANGUAGE

| | Language | Language Used for Evaluation | Language Used in Conference | Communication Requirements |
|---|---|---|---|---|
| **Student** | English | English | English | Native Language |
| **Parent** | English | English | English | Native Language |
| **Home** | English | English | English | Native Language |

To be completed by Office of Bilingual Education English and Math Proficiency Assessment
Oral
Rdg./ Written
Instrument:
Date:

### IV. SPECIAL EDUCATION AND RELATED SERVICES SUMMARY

| SERVICES | SETTING GenEd | | | SpecEd | | | FREQUENCY | | PROVIDER (by discipline) | BEGINNING DATE mm/dd/yyyy | DURATION # | wks/mos |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Ses. | Time | Total | Ses. | Time | Total | Hr./ Min | D/W/M | | | | |
| Speech-Language | 1 | 14 | 14 | 2 | 1 | 2 | Hrs | Week | Speech and Language Thera | 2/6/2008 | 10 | Month |
| Occupational Therapy | 0 | 0 | 0 | 2 | 30 | 60 | Mins | Week | Occupational Therapist | 2/6/2008 | 10 | Month |
| Specialized Instruction | 1 | 14 | 14 | 0 | 0 | 0 | Hrs | Week | Hearing Teacher | 2/6/2008 | 10 | Month |
| Audiology | 1 | 15 | 15 | 1 | 15 | 15 | Mins | Week | Audiologist | 2/6/2008 | 10 | Month |
| Occupational Therapy | 1 | 30 | 30 | 0 | 0 | 0 | Mins | Month | Occupational Therapist | 2/6/2008 | 10 | Month |
| **TOTAL HOURS:** | | 28.375 | | | 3.25 | | | | Total Combined Hours Per Week: | | | |

### V. Disability(ies) Multiple Disabilities, Hearing Impaired (inc.deaf) SLI

Percent of time in Specialized Instruction and Related Services
[ ] 0-20% [ ] 21-60% [X] 61-100%

[X] (Check if setting in general Ed.)

Percent of time NOT in a General Education Setting    10%

### VI. IEP TEAM (Participants in the development of the IEP)

**Print and sign your name below.**

Mr./Mrs. Tiller
  Parent/Guardian

Shellie Wood, Ph.D.
  Special Ed

Katie Copps
  General Ed Teacher

Shellie Wood
  LEA Representative

Scott Cartland
  Principal or Designee

Allison Myntha, M.ED, CTRS — Auditory/Oral Teacher of the Deaf
  Student

Toni Carroll
  Speech Therapist

Julianne Lull, OTR/L
  OT Therapist

Jennifer Mertes, ASHCC-A
Ellen Douglass Cotton, Counsel for Parent
Kimberly Holt, NACCC-SLP

I AGREE with the contents of this IEP. I have had an opportunity to be involved in the development of this IEP. I have received a copy of this IEP and consent to the implementation of the services in the IEP. I have received a copy of the procedural safeguards and parent rights pertaining to special education.

Parent/Guardian Signature    Date 2/14/08

| Student Name Anna Tiller | Managing School Janney Elementary | DCPS - IEP |
|---|---|---|
| Student ID Number 9226868    DOB 10/17/2003 | Attending School Early Childhood | Page 2 of 4 |

## VII. Present Educational Performance Levels in Areas Affected by the Disability

Additional Comments: ☐

**Academic Areas: (Evaluator)** Katy Copps, Teacher

Math Strengths:

> Has adequate understanding of number concepts

Impact of disability on educational performance in general education curriculum:

> Difficulty with use of language impacts her ability to grasp particular concepts in math

Reading Strengths:

> Has good listening comprehension and understanding of a story

Impact of disability on educational performance in general education curriculum:

> Phonemic awareness and sound recognition/blending impacted by disability

**Score(s) When Available**

Math Cal.   n/a
Math Res.   n/a
See goal page: 3
Date:  2/6/2008

Rdg. Com   n/a
Rdg. Basic   n/a
Written Ex.   n/a
See goal page: 4
Date:  2/6/2008

**Communication (Speech & Language) (Evaluator)** Kim Sak, Speech Therapist

Strengths:

> Emerging language skills -- friendly outgoing demeanor

Impact of disability on educational performance in general education curriculum:

> Decreased coordination, strength and range of motion (apraxia) and difficulty with expressive and receptive language impact ability to access curriculum.

**Score(s) When Available**

Exp. Lang.   n/a
Rec- Lang.   n/a
Artic   n/a
Voice   n/a
Fluency   n/a
Exp. Voc.   n/a
Rec. Voc.   n/a
See goal page:   1
Date:  10/26/2007

**Motor/Health (Evaluator)** Jose Scijas, PT ; Wanda Banks OTR/L

Strengths:

> walks independently on even surfaces; holds one-leg stance with 2 hand support

Impact of disability on educational performance in general education curriculum:

> Decreased dynamic balance, postural control and propulsion/reception skills negatively impact participation in educational activities

**Score(s) /Results When Available**

GM ss 9
FM ss 11

See goal page:   2
Date:  10/11/2006

**Social Emotional Behavioral Areas: (Evaluator)**

Strengths:

Impact of disability on educational performance in general education curriculum:

**Score(s) When Available**

See goal page:
Date:

**Cognitive/Adaptive Behavior: (Evaluator)**

Strengths:

Impact of disability on educational performance in general education curriculum:

**Score(s) When Available**

See goal page:
Date:

**Prevocational Skills: (Evaluator)**

Strengths:

Impact of disability on educational performance in general education curriculum:

**Score(s) When Available**

See goal page:
Date:

| Student Name | Anna | Tiller | | Managing School | Janney Elementary | DCPS - IEP |
|---|---|---|---|---|---|---|
| Student ID Number | 9226868 | | DOB 10/17/2003 | Attending School | Early Childhood | Page 4 of 4 |

**Additional Comments:** ☐

## IX. LEAST RESTRICTIVE ENVIRONMENT (LRE) DETERMINATION
**SERVICE ALTERNATIVES**

Can curricular modification, accommodation and/or supplemental aids and services be used for a LRE setting in general education? ☒ Yes ☐ No

Explanation for removal out of regular education classroom.

## X. Supplementary Aids and Services

| Classroom Needs (Do not name products or companies.) | SETTING GenEd | SpEd | Total | FREQUENCY Hr./Min | D/WM. | PROVIDER (by discipline) | BEGINNING DATE (mm/dd/yyyy) |
|---|---|---|---|---|---|---|---|
| Amplification equipment | 28 | 4 | 32 | Hrs | Week | audiologist | 2/7/2008 |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

Check and list modifications and/or accommodations for testing: ☐ None needed

Timing/Scheduling: Extra breaks during test
Setting: Special seating/proximity to monitor
Presentation:
Response:
Equipment: Amplification equipment

## XI. STATE AND DISTRICT ASSESSMENTS:

☐ Level I  Tested with non-disabled peers under standard conditions without accommodations.

☒ Level III (Describe non-uniform conditions for level III) Tested under non-standard conditions with permissible accommodations

☐ Level V Portfolio: _____

☐ Level II (Describe accommodations for level II) Tested under standard conditions with special accommodations.

☐ Level IV (Describe the alternative assessment)

## XII. Areas Requiring Specialized Instruction and Related Services:

☐ Reading
☐ Mathematics
☐ Written Expression
☒ Other: Academic Readiness
☐ None

☒ Physical/Sensory
☐ Social Emotional
☐ Physical Development

☐ Transition
☐ Vocational
☐ Independent Living
☒ Speech/Language

Apply annual goal(s), objectives and/or modifications to address barriers in each area checked above.

**Modifications:**

☒ Language Arts/English
☐ Social Sciences
☐ Biological & Physical Sciences
☐ Fine Arts

## XIII. PLACEMENT CONSIDERATIONS AND JUSTIFICATION

| DESCRIBE CONSIDERATIONS | ACCEPT/REJECT REASONS | POTENTIAL HARMFUL EFFECTS |
|---|---|---|
| Combination General Education and Resource Classro | Rejected | |
| In General Education Classroom Setting | Accepted | Possibility of missing academic instruction during |
| Out of General Education Classroom | Rejected | |
| | | |
| | | |

Modification(s)/Accommodation(s) to address the harmful effects:

Specific scheduling to accommodate for related service sessions

| Student Name | Anna | Tiller | | Managing School | Janney Elementary | DCPS - IEP |
|---|---|---|---|---|---|---|

Student ID Number 9226868    DOB 10/17/2003    Attending School Early Childhood    Page 3 of 4

**VIII SPECIALIZED SERVICES**    **Additional Comments:** ☐    Goal Number: ☐ 1

**Area addressed by goal:** Motor/Health

**ANNUAL GOAL: (including mastery criteria.)**

Improve sensorimotor skills for greater academic success as evidenced by meeting the following objectives with 80% accuracy.

**Provider(s):** Occupational Therapist

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| Maintain an upright seated position with adaptive equipment as needed during a table top activity for 15 minutes 4/5 trials. | | Monthly |
| Safely access 75% of playground equipment while completing a 3-4 step obstacle course 4/5 trials. | | Monthly |
| Copy basic forms (horizontal line, vertical line, circle, square and cross and eventually diagonal line, X and triangle) with adequate proportion 4/5 trials. | | Monthly |
| Completely color basic shapes with 1/4 inch outlines without deviating from the boundaries more than 1/4 inch 4/5 trials. | | Monthly |
| Cut basic shapes (square, triangle, circle) with 1/4 inch thick outlines without deviating more than 1/2 inch 4/5 trials using proper grip on the scissors and her "helper" hand to manipulate the paper. | | Monthly |
| Utilize a dynamic tripod grasp on a writing tool with intrinsic hand muscle movement to operate the tool 50% of the time during a coloring/ drawing activity 4/5 trials. | | Monthly |

**EVALUATION PROCEDURE(S)**

☐ Portfolio  ☐ Log  ☐ Chart  ☐ Test  ☒ Documented Observation  ☐ Report  ☒ Other work samples

District of Columbia Public Schools    07-02-2001    Division of Special Education    Appendix - A    IEP Page 3 of 4

| Student Name | Anna | Tiller | Managing School | Janney Elementary | DCPS - IEP |
|---|---|---|---|---|---|
| Student ID Number | 9226868 | DOB 10/17/2003 | Attending School | Early Childhood | Page 3 of 4 |

**VIII. SPECIALIZED SERVICES**    Additional Comments: ☐      Goal Number: 2

Area addressed by goal: Motor/Health

**ANNUAL GOAL:** (including mastery criteria.)

Improve sensorimotor skills for greater academic success as evidenced by meeting the following objectives with 80% accuracy.

**Provider(s):** Occupational Therapist

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| Maintain crossed leg or kneeling position while participating in a floor based activity 4/5 trials. | | Monthly |
| Navigate around stationary obstacles in the room without bumping into or tripping over them more than 2 times 4/5 trials. | | Monthly |
| Utilze both hands (one as a stabilizer and one to mainpulate tool/ object) during a fine motor/ drawing/ coloring activity 4/5 trials. | | Monthly |
| Utilize good motor planning/ bilateral coordination/ crossing midline in order to complete a functional task in the classroom 8/10 trials. | | Monthly |
| Copy capital letters L,F,E,H,T,I with adequate formation, size, spacing and line orientation 4/5 trials. | | Monthly |
| Maintain focus and attention to a classroom activity until completion with minimal verbal and/or visual cues 8/10 trials. | | Monthly |

**EVALUATION PROCEDURE(S)**

☐ Portfolio   ☐ Log   ☐ Chart   ☐ Test   ☒ Documented Observation   ☐ Report   ☒ Other work samples

| Student Name | Anna | Tiller | | Managing School | Janney Elementary | | DCPS - IEP |
|---|---|---|---|---|---|---|---|
| Student ID Number | 9226868 | | DOB 10/17/2003 | Attending School | Early Childhood | | Page 3 of 4 |

| VIII. SPECIALIZED SERVICES | Additional Comments: ☐ | | Goal Number: 3 |
|---|---|---|---|

Area addressed by goal:  Communication

**ANNUAL GOAL: (including mastery criteria.)**

Anna will develop receptive and expressive language skills to 80% accuracy using appropriate modalities over 4 consecutive sessions with verbal and visual cuing as needed.

Provider(s): Speech and Language Therapist, Audiologist, Hearing Teacher, Home Based Teacher

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| Anna will comprehend the quantitative concepts of one, some, and all in 3/4 trials | | Monthly |
| Anna will answer "what where, and who" questions in 3/4 trials | | Monthly |
| Anna will spontaneously use 5 new theme-related vocabulary words per week | | Monthly |
| Anna will follow 2-3 step directions in 3/4 trials w/ minimal visual cues | | Monthly |
| Anna will identify common objects based on attribute or function in 3/4 trials | | Monthly |
| Anna will use progressive verb tense to describe actions 3/4 trials. | | Monthly |

| **EVALUATION PROCEDURE(S)** |
|---|
| ☐ Portfolio  ☒ Log  ☐ Chart  ☐ Test  ☒ Documented Observation  ☐ Report  ☐ Other _____ |

| Student Name | Anna | Tiller | Managing School | Janney Elementary | DCPS - IEP |
|---|---|---|---|---|---|
| Student ID Number | 9226868 | DOB 10/17/2003 | Attending School | Early Childhood | Page 3 of 4 |

| VIII. SPECIALIZED SERVICES | Additional Comments: ☒ | Goal Number: 4 |
|---|---|---|

Area addressed by goal: Communication

**ANNUAL GOAL:** (Including mastery criteria.)

Anna will develop receptive and expressive language skills to 80% accuracy using appropriate modalities over 4 consecutive sessions with verbal and visual cuing as needed.

Provider(s): Speech and Language Therapist, Audiologist, Hearing Teacher, Home Based Teacher

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| Anna will use 3-4 words per utterance to communicate requests and questions 3/4 trials | | Monthly |
| Anna will use pronouns (he, she, her, him) w/ 80% acc | | Monthly |
| Anna will increase jaw and tongue strength and stability w/ 80% acc | | Monthly |
| Anna will differentiate her tongue from her jaw 3/4 trials | | Monthly |
| Anna will increase tongue elevation and mobility w/ 80% acc | | Monthly |
| Anna will repeat syllable patterns and words of increasing length w/ 80% acc | | Monthly |

**EVALUATION PROCEDURE(S)**

☐ Portfolio  ☒ Log  ☐ Chart  ☐ Test  ☒ Documented Observation  ☐ Report  ☐ Other _____

| Student Name | Anna | Tiller | | Managing School | Janney Elementary | DCPS - IEP |
|---|---|---|---|---|---|---|
| Student ID Number | 9226868 | | DOB 10/17/2003 | Attending School | Early Childhood | Page 3 of 4 |

| VIII. SPECIALIZED SERVICES | Additional Comments: ☒ | | Goal Number: 5 |
|---|---|---|---|

Area addressed by goal: Academic Areas: Reading

**ANNUAL GOAL:** (including mastery criteria.)

Will improve phonemic awareness to develop literacy skills as measured by mastering the following objectives using 80% mastery criteria unless otherwise indicated.

**Provider(s):** Hearing Teacher, Special Education Teacher/Resourc, Speech and Language Therapist

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| Will identify letters and sounds through symbol system (90%) | | Quarterly |
| Will blend 3-4 sounds | | Quarterly |
| WIll correctly match sound to letter and letter to sound (50%) | | Quarterly |
| Will Identify pictures of common objects and theme-related vocabulary 3 out of 4 trials | | Quarterly |
| Will Retell a story during classroom activities providing beginning, middle and end (50 %) | | Quarterly |
| Will answer comprehension questions with visual cues in 3 out of 4 opportunities | | Quarterly |

| **EVALUATION PROCEDURE(S)** |
|---|
| ☒ Portfolio ☐ Log ☐ Chart ☐ Test ☐ Documented Observation ☐ Report ☐ Other _____ |

District of Columbia Public Schools      07-02-2001      Division of Special Education      Appendix - A      IEP Page 3 of 4

District of Columbia Public Schools
Division of Special Education
Washington, D.C.

## IEP CONTINUATION PAGE

Student Name  Anna                    Tiller                        DOB  10/17/2003  DATE _____

Student ID Number  9226868            **Managing School**    Janney Elementary

                                      **Attending School**   Early Childhood

INSTRUCTIONS: Use this addendum when additional space is needed on an IEP section or part. Enter the *section/part, page number or addendum to identify each item being continued. Attach this addendum to the form.

Page  3  of  4    or **Addendum** _____

| | |
|---|---|
| Will identify and generate rhyme pairs | quarterly |
| Will identify first, middle, and last sound in words | quarterly |

| Student Name | Anna | Tiller | | Managing School | Janney Elementary | | DCPS - IEP |
|---|---|---|---|---|---|---|---|
| Student ID Number | 9226868 | | DOB 10/17/2003 | Attending School | Early Childhood | | Page 3 of 4 |

| **VIII. SPECIALIZED SERVICES** | **Additional Comments:** ☐ | **Goal Number:** 6 |
|---|---|---|

**Area addressed by goal:** Academic readinesss

**ANNUAL GOAL: (Including mastery criteria.)**

Will develop academic readiness skills to participate in classroom activities as demonstrated by completing the following objectives using 80% criteria for mastery unless otherwise indicated

**Provider(s):** Hearing Teacher, Special Education Teacher/Resourc, Speech and Language Therapist

**Consider audience, behavior, condition, degree and evaluation.**

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| Will correctly identify temporal concepts during group discussion | | Quarterly |
| Will rote count 1 - 10 during classroom activities | | Quarterly |
| Will demonstrate one to one correspondence by correctly match numeral to a set of objects from 1 to 15 | | Quarterly |
| Will write letters to create meaningful text e.g., names, messages, story descriptions (3 out of 5) | | Quarterly |
| Will identify and name simple shapes while engaged in classroom activities | | Quarterly |
| Will identify and name alphabet letters while engaged in classroom activities (3 out of 5 opportunities) | | Quarterly |

**EVALUATION PROCEDURE(S)**

☒ Portfolio  ☐ Log  ☐ Chart  ☐ Test  ☒ Documented Observation  ☐ Report  ☐ Other _____

| Student Name | Anna | | Tiller | | Managing School Janney Elementary | DCPS - IEP |
|---|---|---|---|---|---|---|
| Student ID Number 9226868 | | | DOB 10/17/2003 | | Attending School Early Childhood | Page 3 of 4 |

**VIII. SPECIALIZED SERVICES**    Additional Comments: ☒    Goal Number: ☐ 7

Area addressed by goal:  Communication

**ANNUAL GOAL: (including mastery criteria.)**

Will improve auditory listening skills as demonstrated by completing the following objectives using 80% accuracy as criteria for mastery unless otherwise indicated

Provider(s):  Audiologist, Hearing Teacher, Speech and Language

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| WIll verbally reproduce alternating syllable strings of 4 syllables | | Quarterly |
| Will identify and repeat the Ling 6 sounds from 6 ft in a quiet setting (100%) | | Quarterly |
| Will label the quality of a sound using descriptor words when listening to environmental sounds (75%) | | Quarterly |
| Will verbalize when implant isn't working during daily activities (75%) | | Quarterly |
| WIll identify quiet, medium and loud speech sounds when listening to words/phrases/sentences (100%) | | Quarterly |
| Will produce words with quiet, medium, and loud voice upon command with 75% accuracy | | Quarterly |

**EVALUATION PROCEDURE(S)**

☒ Portfolio    ☐ Log    ☒ Chart    ☐ Test    ☒ Documented Observation    ☐ Report    ☐ Other _____

District of Columbia Public Schools
Division of Special Education
Washington, D.C.

## IEP CONTINUATION PAGE

Student Name  Anna                    Tiller                    DOB  10/17/2003  DATE _____

Student ID Number  9226868    **Managing School**    Janney Elementary

**Attending School**    Early Childhood

INSTRUCTIONS: Use this addendum when additional space is needed on an IEP section or part. Enter the
*section/part, page number or addendum to identify each item being continued. Attach this addendum to the form.

**Page**  3  **of**  4    **or Addendum** _____

| | |
|---|---|
| Will alert to her name when called by teachrs or peers in a noisy classroom | quarterly |
| Will discriminate between minimal pairs by pointing to pictures/objects (75%) | quarterly |
| Will demonstrate auditory memory of 3-4 words by repeating strings of letters/numbers/words (75%) | quarterly |
| Will identify if implant is on or off during 1:1 listening check with 100% accuracy | quarterly |

| Student Name | Anna | Tiller | | Managing School | Janney Elementary | DCPS - IEP |
| Student ID Number 9226868 | | | DOB 10/17/2003 | Attending School | Early Childhood | Page 3 of 4 |

**VIII. SPECIALIZED SERVICES**  Additional Comments: ☒

Goal Number: 8

Area addressed by goal: Communication

**ANNUAL GOAL:** (including mastery criteria.)

Will improve pragmatic language/behaviors as demonstrated by mastery of the following objectives using 80% criteria for mastery unless otherwise indicated

**Provider(s):** Speech and Language Therapist, Hearing Teacher, Sp

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| Will spontaneously use "it is my turn" and/or "Your turn . Two minutes" to negotiate turn taking with typically developing peers (75%) | | Quarterly |
| Will initiate play with peers and/or teachrs in dramatic-theme related play and on the playground (75%) | | Quarterly |
| Will verbally direct peers/teachers to follow her play plan in 2/4 opportunities | | Quarterly |
| Will ask peers/teachers novel questions or requests during conversational opportunities (75%) | | Quarterly |
| Will protest opportunities/objects by using phrase "no, thank you" . | | Quarterly |
| Will stay on topic by adding relevant comments to ongoing discussions | | Quarterly |

**EVALUATION PROCEDURE(S)**

☐ Portfolio  ☐ Log  ☐ Chart  ☐ Test  ☒ Documented Observation  ☐ Report  ☐ Other _____

District of Columbia Public Schools
Division of Special Education
Washington, D.C.

## IEP CONTINUATION PAGE

Student Name  Anna                    Tiller                        DOB  10/17/2003  DATE

Student ID Number  9226868      **Managing School**    Janney Elementary

                                **Attending School**    Early Childhood

INSTRUCTIONS: Use this addendum when additional space is needed on an IEP section or part. Enter the
*section/part, page number or addendum to identify each item being continued. Attach this addendum to the form.

**Page  3   of  4    or Addendum**

| | |
|---|---|
| WIll attend to speaker/group in structured classroom activities with no more than 2 prompts/redirections | quarterly |
| Will use conventional greetings with teachers and peers | quarterly |

| Student Name | Anna | Tiller | | Managing School | Janney Elementary | | DCPS - IEP |
|---|---|---|---|---|---|---|---|
| Student ID Number | 9226868 | | DOB 10/17/2003 | Attending School | Early Childhood | | Page 3 of 4 |

**VIII. SPECIALIZED SERVICES**    Additional Comments: ☒

Goal Number: 9

Area addressed by goal:  Communication

**ANNUAL GOAL: (including mastery criteria.)**

Will demonstrate improved language comprehension and use by completing the following objectives using 80% criteria for mastery unless otherwise indicated

**Provider(s):** Speech and Language Therapist, Hearing Teacher, Sp

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| Will use correct prepositions (75%) | | Quarterly |
| Will demonstrate understanding of comparative concepts (hot cold, wet dry) while making classroom observations (75%) | | Quarterly |
| Will demonstrate comprehension of quantitative concepts (one, some, all) while making classroom observations (75%) | | Quarterly |
| Will use quantitative concepts (one some all) while making classroom observations (75%) | | Quarterly |
| Will retell/share home experiences in response to WH questions (50%) | | Quarterly |
| Will use 5 new theme-related vocabulary words per week while engaged in both structured and unstructured classroom activities | | Quarterly |

**EVALUATION PROCEDURE(S)**

☒ Portfolio  ☐ Log  ☐ Chart  ☐ Test  ☒ Documented Observation  ☐ Report  ☐ Other _____

District of Columbia Public Schools
Division of Special Education
Washington, D.C.

## IEP CONTINUATION PAGE

Student Name  Anna                          Tiller                          DOB  10/17/2003  DATE _____

Student ID Number  9226868    **Managing School**   Jamney Elementary

                              **Attending School**   Early Childhood

INSTRUCTIONS: Use this addendum when additional space is needed on an IEP section or part. Enter the
*section/part, page number or addendum to identify each item being continued. Attach this addendum to the form.

Page  3  of  4   **or Addendum** _____

| | |
|---|---|
| Will follow 2-3 step directions with minimal visual cues while engaged in classroom activity (75%) | quarterly |
| Will follow 1-2 step directions with 2 critical elements while engaged in classroom activity (75%) | quarterly |
| Will identify common object based on attribute or function (75%) | quarterly |
| Will correctly use modifiers (small, big, long, short) (75%) | quarterly |
| Will correctly use present progressive verb tense with copular "to be" to describe actions (75%) | quarterly |
| Will correctly use regular past tense verbs | quarterly |
| Will correctly use sequential terms (first middle then last) to sequence events of stories, daily schedules, or steps to complete a task (75%) | quarterly |
| WIll use an average of 4-5 words per utterance to communicate requests and formulate comments | quarterly |
| Will demonstrate understanding of 8-10 vocab words related to current theme | quarterly |

| Student Name | Anna | Tiller | | Managing School | Janney Elementary | | DCPS - IEP Page 3 of 4 |
|---|---|---|---|---|---|---|---|
| Student ID Number | 9226868 | | DOB | 10/17/2003 | Attending School | Early Childhood | |

| **VIII. SPECIALIZED SERVICES** | **Additional Comments:** ☐ | **Goal Number:** 10 |
|---|---|---|

**Area addressed by goal:** Communication

**ANNUAL GOAL: (including mastery criteria.)**

Will improve articulation skills as demonstrated by completing the following objectives

**Provider(s):** Speech and Language Therapist, Hearing Teacher, Special Education Teacher/Resource Roo

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| WIll differentiate tonge from jaw (75%) | | Quarterly |
| WIll disassociate lips from tongue during OM activity (75%) | | Quarterly |
| Will repeat syllable patterns and words of increasing length (75%) | | Quarterly |
| Will produce age appropriate phonemes while engaged in classroom activities at single word level (75%) | | Quarterly |
| Will perform DDK exercises with increased rate (75%) | | Quarterly |
| | | |

| **EVALUATION PROCEDURE(S)** |
|---|
| ☒ Portfolio   ☐ Log   ☐ Chart   ☒ Test   ☒ Documented Observation   ☐ Report   ☐ Other _____ |

DRAFT

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, D.C.

## Multidisciplinary Team
## (MDT)
## MEETING NOTES

### Annual IEP Review Meeting Notes

STUDENT: Anna          Tiller                    SCHOOL: Janney Elementary          DATE: 2/4/2008

| PARTICIPANTS: (Print Name) | PARTICIPANTS: (Sign Name) | POSITION |
|---|---|---|
| Mr./Mrs. Tiller | | Parent/Guardian |
| Shellie Wood, Ph.D. | | Special Ed |
| Katie Copps | | General Ed Teacher |
| Shellie Wood | | LEA Representative |
| Scott Cartland | Scott Cartland | Principal or Designee |
| Jean Tebinka | Jean Tebinka | Audiory/Oral Teacher of H.H. |
| Toni Carroll | Allison Murtha | Speech Therapist |
| Julianne Lull | Julian Lull, OTR/L | OT Therapist |

Jean Tabinka          Audiologist, DCPS
Jen Mertes          Aud-RS
Ellen Dalton          Attorney; Kim Sak          Speech Pathologist, River School; Mary O'Leary
Cane          River School; Amy Muldoon          River School; Michael Smith
                    OT, River School; Jen Mertes,          Audiologist, River School

The purpose of the meeting is to review Anna's progress and develop an IEP for the coming year. Delivery of related and therapeutic services will be discussed along with intensity of program and location of placement. The Parents Procedural Handbook was offered and signed for. Anna has attended River School this year and received related services from Janney. See attached for IEP discussion. Placement will be considered and a prior notice will be issued within the next 2 weeks. Dr. Wood will consult with school personnel re placement options to fulfill the components of the IEP in a setting that is conducive to hearing impaired children with proper acoustics and appropriate staffing ratio.

See attached.

The Parent ☑ is present ☐ is not present at the meeting.

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, D.C.

**MULTIDISCIPLINARY TEAM**
**(MDT)**
**MEETING NOTES (continuation)**

STUDENT: Anna Tiller    SCHOOL: Early Childhood    DATE: 2/12/2008

The MDT is meeting today to revise Anna's IEP for the coming 10 month period and once again determine the least restrictive environment for service delivery as well as recommend a placement for the location of those program services. Introductions were made. Anna's current teacher described her current classroom and progress this year. She is currently in a class with 13 students, one other child with HI. The Speech therapist is in the class f/t to provide integration of language development with academic skills. Her language is dependent on cueing but she can participate in classroom social and academic activities with prompting. RE: level and intensity of programming for the coming school year. Audiologist from River brought in current report. Noise impacts. Functions as mild hearing loss with new implant. The MDT agrees to recommend full time classroom placement with support in hearing/speech and current related services Ms. Tiller pleased with Anna's progress from beginning of the year where she was unable to be conversant to now where she can make her mind known. However it is still a major effort for her to complete 2 sentences together. Low muscle tone ot needs—uses bumper seats and movement breaks. "Sensory gym" activities have been incorporated into therapy using a variety of environments and equipment. Ms. Lull recommends PT eval and new OT eval. Ms. Tiller agrees to new evals and says she had one from Jose Serjas but report was not given to Tillers and is not in record. Authorization papers for evals will be prepared. Page 2 data gathered from therapists and teacher. River School has not done formal academic assessments thus no scores are entered. Ms. Wills reviewed progress of goals and new drafts with Ms. Sac and will incorporate goals from River School to the current IEP removing any duplication from the DCPS goal sheet. Ms. Tobinka reviewed audiology drafted goals with River School audiologist and removed duplicated goals from DCPS document. Ms. Lull reviewed drafted goals for movement and OT collaborating with current teacher. Anna's disability classification is changed to reflect the impact of apraxia to that of multiple disabilities (MD) with hearing impaired (HI) and Speech/language impairment (SLI). River staff feel strongly that a full time sli therapist co teach in general ed setting. Others questioned whether that function can be served through co-teaching model with multiple providers i.e., teacher of deaf and less than f/t sli therapist. Suggestion made that the SLI therapist should be training others to properly prompt and cue so that the methods can be more universal and generalized to other environemnts. Reference on page one to specialized instructional services and SLI services should be interpreted as conjoint efforts of speech therapist and teacher of deaf in conjunction with general ed teacher to provide full time support along with teacher in classroom setting. Placement discussion included recommendation for placement in a general education classroom with non-disabled peers to facilitate language modeling and development. Dr. Wood will consult with DCPS authorities to determine a placement site and issue a prior notice when determined. Meeting adjourned at 5:00 p.m.

Anna Tiller MDT/IEP notes 2/6/2008

1

Notes recorded by A. Muldoon

## I.    Introduction/Background information:

Team members were introduced.  Those present were:

Shelley Wood (SW) – Janney Case Manager
Scott Cartland (SC) – Janney Principal (He left around 3 pm)
Toni Carroll-Wills (TCW)  - DCPS SLP
Julie Lull (JL)– DCPS OT
Jean Tabinka (JT) – DCPS Audiologist
Allison Murtha (AMu) – DCPS D/HOH Teacher
Sarah Tiller (Mom) – Anna's Mom
Ellen Dalton (ED) – Parent Attorney
Amy Muldoon (AM) – River School Case Manager
Kim Sak (KS) – River School Classroom SLP
Katie Copps (KC) – River School Classroom Teacher
Jen Mertes (JM) – River School Audiologist

Team members were introduced.  The purpose of this meeting is to create a current IEP for Anna Tiller (AT). Anna was placed at Janney to receive related services in the form of 1 hour a week of OT (plus 30 minute consultation with the teachers per month), 1 hour a week of SLP and 1 hour a week of audiological services.  AT was assigned to Janney per an HOD for related services only; the HOD stated AT did not require an educational placement. AT currently attends The River School in Northwest Washington, DC. AT is in a preschool classroom with 11 typical peers and another D/HOH student to total 13 students. KS (SLP) and KC (Teacher) are with AT the entire week, except for when she is pulled out for related services at Janney or River School. AT also receives one hour of pull out speech and language services at the River School.

SW began the meeting stating that we are here to address the needs of AT.  She expressed that the purpose of the meeting is to address AT's needs at this time and create a current IEP.  She also relayed that there were new members of the team, that were not at her previous meetings and asked that we keep the discussions current in regards to AT.  The team as a whole agreed.  SW asked KC to report on AT's performance in the classroom.

### II. Review of Anna Tiller at present time:

KC: academics, literacy and comprehension are what AT continues to work on.  She is within the range of her typical peers, sometimes she is above them, sometimes she is below them, and sometimes she falls in the middle depending upon the topic.  AT is currently working on predicting, sequencing the beginning, middle and end of stories, and AT is working on skills to express understanding of the story being read to her.  Her phonological awareness is also a huge component of her learning - identify segmenting, syllables and beginning and ending sounds.  She is starting to identify letters in the classroom but working on attaching the sounds to the letters.  She is also working on taking those letters and writing them through meaningful text.  She still is working on identifying and writing simple shapes as a precursor for writing as well as coloring within

Anna Tiller MDT/IEP notes 2/6/2008
Notes recorded by A. Muldoon                                                    2

the lines. She still has significant difficulty managing her body and sitting still for more
than 15 minutes at not only table top activities but also during non-tabletop activities,
such as dramatic choice, or book time. KC also spoke to math and science and how
language is also a critical component. Without the language and support she cannot
attain and retain skills at hand (i.e.; more, less). She continues to work on temporal
concepts and geometry skills (through blocks and in play) how play schemes are setting
her up for academics with her peers and how language helps her gain those social skills
with her peers to aid her later in her academics.

SW asked what AT's functional language is in the classroom. KS reported she has a
significant language delay (expressive and receptive) and verbal apraxia. KS helps her
with her apraxia through modeling and getting her point across to her typical peers so
they can develop a play scheme and she can interact with her non disabled peers
appropriately. KS reported that AT has a difficult time expressing herself (i.e., this is
heavy or light), and helps her with prompting and cueing to successfully communicate
her responses, but also specific skills and strategies to address her apraxia. The SLP is
with her throughout the day to address her apraxia, and allow AT to maintain at the level
of her typical peers. There are certain skills where she keeps up with her peers, others
where she needs assistance. She fits in well with the class as a whole and the levels of
learning within the classroom.

JM asked about audiological services and wanted to know of DCPS' goals and if an
audiologist has seen AT from DCPS. DCPS could not answer that question. JM
reviewed the last audiogram (10/2007). At that time she was using a sprint processor she
had a mild hearing loss for all test frequencies. NU-CHIPS she achieved 92% correct.
She then had open set testing and had 48% correct. Multi-syllabic she got 52%. AT was
also tested with sentences in background noise. In quiet and when a small amount of
background noise is present she scores 100%. When the noise is equal to the teacher she
scored 60%, when background noise was louder than the speaker she got 40%. She was
referred to Pamela Cain, her audiologist at Bethesda Naval and who reset her processor
and mapping. In 11/07 she was retested. Her open set understanding went from 48% to
96%. JM stated she hears very well with her CI and does better hearing in noise since
being remapped. She has a sound field system in her classroom and in special classes.
She has an acoustically sound setting and a small classroom size where she functions well
in a general education setting with typical peers.

### III. Creating an appropriate IEP for AT and team discussion:
SW reviewed that AT's home school is Janney and she attends River School, but gets IEP
services at Janney as a non attending student. Her IEP is a DCPS document and services
are held twice a week at Janney (occupational therapy (OT) and speech and language
(SL)). DCPS at the last IEP decided because of her age and capabilities that she only
required related services from DCPS, not specialized instruction. Team feels AT does
require specialized instruction.

SW reviewed the types of IEPs that could be created for AT. The options were an IEP
for full time special education, or an IEP for just related services.

Anna Tiller MDT/IEP notes 2/6/2008
Notes recorded by A. Muldoon

3

KS, a River School Speech and Language Pathologist, spoke that in order to meet AT needs she requires a general education setting with a full time support of specialized instruction in speech and language. This is where she thrives and is making progress. The combined support of using typical peers as models within the classroom, and a small class size, allows for more repetition and more turns due to the small class size, which greatly facilitates working with her apraxia. KS is also in specials with AT so she can grasp the concepts and be educated with peers in all areas of academics, such as music, art and science.

KC, a River School Deaf and Hard of Hearing Teacher (D/HOH) spoke that the SLP helps with the pre-teaching, vocabulary, ling check, production of speech with typical peers and assisting with specialized instruction in speech and language with AT.

Mom asked SW whether there were other options and asked SW to clarify. SW spoke to the fact that we are looking at the least restrictive environment (LRE). She outlined the options - A general education setting with related services, (full time support within the classroom), a general education classroom with part time special education/part time general education, or full time placement in special education for HI (Hearing Impaired) students.

Team discussed the setting considered - a special education setting or general education setting. It was stated that right now AT is in a full time general education with a SLP in the classroom and a few hours of pull out in speech and language, audiology and OT. KS spoke to her verbal apraxia again and stated that her listening is solid when her equipment is working, her speech and language and apraxia are the major issues.

JT asked about when AT does not understand the lessons do you stop the lesson? KC stated that it depends on the lesson and issue. KC gave an example of how they are able to work with AT without having to stop the lesson.

AMu: How much pre teaching and post teaching? KS and KC reviewed the amount of time they spend working with AT and addressing pre teaching and post teaching. It is considerable. KS reviewed AT's services - KS does listening checks, Kauffman cards, pre-teaching every morning and she gets pull out for an hour a week with another River School SLP. This pull out is done during rest time as not to interfere with her academics. KS works on AT's pragmatics every opportunity during the day, from academics to playground as well as aiding during structured academic times. KS spoke to class size at table areas and how with AT she can be in as small a group as 3:1. This allows for even more repetition and turn taking. The pull out SLP at the River School works with the teachers in order to coincide with goals during 1:1 sessions. Also during "down time" (i.e.; before nap) KS is able to work with her 1:1. Also when they wake up from nap this can occur again. A lot of pre teaching, review and/or post teaching are done during this time.

Anna Tiller MDT/IEP notes 2/6/2008                                      4
Notes recorded by A. Muldoon

Mom spoke to her concerns. Mom speaks with teachers at both River School and Janney a lot. From what Mom sees AT is progressing in most areas, but continues to need a lot of assistance in speech and language. It is very difficult for AT to say 3 intelligible sentences together, but Mom is pleased with the work KS and everyone working with AT has done. But AT needs support, and speaking intelligibility is important. She can hear fine when equipment is working, so she is getting the input, but it is what she is producing after hearing that is a concern with Mom due to the speech impairment. Mom spoke about AT's bacterial meningitis and explained she has low muscle tone and for a while could not move or walk. Mom sees a lot of balance issues and that she slumps over because it is difficult for her to maintain upright posture. This is a concern because it will be more challenging for her to sit for longer periods, as she gets higher in academics.

KC spoke to using a bumpy seat during circle time, sometimes at the table, but mostly using a chair the correct size (where her feet touch the floor). KC spoke to fine and gross motor issues and how they integrate it into the academics with movement breaks. JL – suggested a wedge seat to help AT. She stated that it looks like the teachers already integrate a lot of modifications and accommodations with movement so she can participate with her non-disabled peers, giving her the opportunity to move.

TCW, a DCPS SLP, spoke to issues AT has with apraxia and discrimination of sounds. She has been making considerable progress in the last 2 weeks with her letters. She watches a cartoon program with TCW to learn letter sounds and this seems to be holding her attention.

SC asked if we are in agreement that she continues to need support in her education. Team is in agreement with this.

Mom asked about the sensory gym and suspension equipment that is listed on the IEP. Would this help? JL stated that there is nothing in a sensory gym that she could not do using playground equipment. She stated Sensory Integration is a frame of reference that you use when you treat an individual. Mom asked about Physical Therapy (PT). JL recommends that a PT evaluation be completed. At the 2/1/07 IEP PT services were taken off her IEP when she left Part C. Mom was not in agreement to this. At the 2/1/07 IEP DCPS agreed to complete a PT evaluation. A DCPS PT evaluator came to the River School and tested AT but a report has not been produced to date. Team agrees that AT should be evaluated for PT. SW will submit the paperwork to DCPS. The OT also asked for a new OT evaluation, so current motor assessments (PT and OT) can be reviewed to develop an appropriate treatment plan. Team agrees that a new OT evaluation is warranted. This could be done at Janney because it is AT's placement.

Mom asked what placement means. SW spoke that her placement is Janney but just for related services, not academic services on her 2/1/07 IEP. The goals and issues addressed in the new IEP will determine the placement required for AT. It will begin now, but go into next year (08-09).

Anna Tiller MDT/IEP notes 2/6/2008
Notes recorded by A. Muldoon

5

**IV. Page 2 of the IEP (Current levels of functioning).** *At this time SW asked the team to return to page 2 of the IEP. It was missed and needed completion. Team halted current discussion and returned to address items on page 2.*

KS began to report on her current Speech and Language evaluation from October 2007. It was asked that she report on AT's strengths and deficits. KS reported that overall a strength for AT is developing receptive language. She has emerging expressive language, and pragmatics are also emerging and developing. A weakness is verbal apraxia and a decrease in expressive and receptive language, which are affecting her ability to access the curriculum.

JL reported that OT should remain the same until a new evaluation is done.

KC reported on academics. AT's strengths are her ability to look and use numbers in conversation and in direct classroom activities. Her weaknesses are using language to express broad range of temporal concepts. AT's strength in reading is listening comprehension. She recognizes her name as a sight word. Her weakness is blending, phonological awareness and listening comprehension.

**V. Goal discussion, hours of service and disability for AT's IEP:**
TCW – SLP spoke to goals and decided that not all goals could be addressed/reviewed based on the amount of time.

Mom asked that we review goals and state what is mastered and put any goal AT requires regardless of length of IEP or amount of time, because it is very important that we have an accurate IEP. KC and KS presented goals being worked on at the River School. SW stated that we can attach the goals created by the River School and that DCPS is not denying goals from her teachers. Team reviewed goals and TCW went through the level of mastery in regards to AT's goals and added or carried over goals in collaboration with KS – AT's full time classroom SLP. TCW stated she master comparison (long, short), KS has not seen this mastered. TCW stated she would defer to KS's goals and observations because she has more insight due to the amount of time KS is with AT compared to SW's twice a week for a total of one hour. Some examples of goals reviewed are: AT is emergent in pronoun use. In oral motor, tongue strength is still weak and all goals in oral motor and will be carried over. KS spoke to additions such as a phonological awareness symbol program for literacy and discriminating sounds. Team agrees to accept River School goals as is and add them to the IEP. TCW will include River School goals document. TCW will delete the DCPS IEP Speech and Language goals that are duplicated and keep River School goals as is. Team agrees to goals.

Audiologist's goals were reviewed. JT reviewed River School goals and asked about self- help with implant. JT will keep the River School goals and they will delete DCPS goals that are duplicated. They will add verbal syllable strings to goals. Team agrees with goals.

Anna Tiller MDT/IEP notes 2/6/2008
Notes recorded by A. Muldoon                                                    6

OT goals were reviewed. JL reviewed progress and then devised goals based on AT's
needs. Spoke to her playground skills at school and being functional at school in order to
access opportunities throughout her school day. The OT spoke to the restrictiveness of
having sensory gym/suspended equipment on the IEP. JL spoke to AT's vestibular
system and how to motivate her vestibular system. JL stated she could use a swing or
jungle gym to address the goal that incorporated the use of "suspended equipment." She
said to address vestibular input she uses a ball or sit and spin. There is no suspension
equipment gym at Janney. JL will keep lines and shape goals. AT will continue to work
on her grip. She will work on maintaining various stances (to aid with W-sit), and also
being able to complete an obstacle course in order to aid in body awareness. Using both
hands to work on stabilizing objects while working. JL asked about attentional goals that
spoke to the classroom. Was it attentional or due to hearing? Teachers feel that it is her
attention and body, not just her hearing. JL asked about crossing the midline. JL created
a goal with motor planning/bilateral skills to complete functional classroom goals. JL
also spoke to handwriting goals and gave Mom a copy of the preschool Handwriting
Without Tears book. River School teachers stated that they are beginning writing skills
and exploring these skills with AT and will begin to use this preschool book before the
end of the year. JL will add a goal about capital straight-line letters. Team agrees with
goals.

Hours of service were reviewed for SL, OT and Audiology. JL feels that one hour (2-30
minute sessions) of OT a week is sufficient in a special education setting. Also 30
minutes of consultative services with AT's classroom teachers per month in a general
education setting.

Speech and Language service hours were discussed. TCW reviewed what she gets now
(1 hour per week). JM and AMu asked about all speech and language pull out, not just at
Janney. AT receives a total of 2 hours a week of pull out speech and language services
(one at Janney and one at River School). TCW said that she needs to have the SLP in
class but she also needs SLP pull out. TCW feels that she needs pull out in a special
education setting for 2 hours per week, to maintain skills. In a general education setting
AT requires specialized instruction in speech and language services. Team discussed that
the speech and language services be delivered 5 times a week for 4.7 hours a week
delivered by a SLP. Team agreed to this. Discussion began to arise about whether a
D/HOH teacher could take the place of an SLP.

KC spoke to being a teacher of the deaf and speaking about AT specifically with her
language delay and apraxia. KC feels AT needs a SLP and it surpasses KC's knowledge
in areas as a D/HOH teacher. KC relies on the SLP greatly in order to service AT
especially in areas of apraxia.

AMu spoke to her role as a D/HOH teacher, disagreeing with KC. KS spoke to the
Apraxia and that a D/HOH teacher cannot work on that. AMu agreed. AT can keep up
with her peers with the help of the SLP. KS spoke to the severity of her apraxia and the
issues that arise consistently throughout the day, which is why she is required for AT.

Anna Tiller MDT/IEP notes 2/6/2008
Notes recorded by A. Muldoon                                                                          7

AMu asked if others could work with AT and be trained in how to approach apraxia. KS
stated due to the nature of apraxia it needs to be addressed by an SLP.

JT spoke to hours of services with audiologists, 30 minutes a week in combination with
consult and 1:1 issues.

AM asked about her disability and that she has a primary disability is HI, why is there not
a secondary disability as SLI. The IEP keeps going back to her apraxia and her issues
maintaining with her non-disabled peers due to not only her hearing loss, but also her
language delays and apraxia. Team agrees to change AT's category of disability from HI
to MD (HI/SLI).

Conversation returned to setting and requirements for AT. KS spoke that the typical
peers and the small class size are just as important as the full time SLP.
SW asked about the Key program and what they have there. SW stated she just wants to
hear what other schools are doing.

JL asked again if a D/HOH teacher working with AT could be trained by an SLP. AM
asked for KS to speak to that. AMu began discussing issues about splitting the provider
and having an SLP/D-HOH teacher work on the hours of service AT requires. AM asked
again for the KS – SLP to address this. KS stated that treatment of apraxia does not work
that way and that people at the table may not understand the nature of what apraxia is.
KS further spoke that we are all here for AT and having a full time SLP in the classroom
with her, as well as the modeling of typical peers and allowing for a small class size to
have repetition of skills is necessary for AT.

AMu described her observations of AT at the River School on 5/2/07. AMu presented a
hard copy of her report to the team on 2/6/07. This was the first time Mom had seen the
report, although AMu stated she did submit it to the CARE Center. AMu's impressions
are that AT is successful in a small group, structured setting when assisted by an adult.
(See report done by AMu from observation 5/2/07). With such a significant language
delay she requires support to be successful in a general education setting. AMu is
concerned if an adult is always mediating her language. Mom said that very little is done
at home with family mediating her language. KC spoke to the mediation in the classroom
being a precursor to her success in the outside environment. Mom agreed to this. Mom
spoke to AT, stating she needs someone trained to address the apraxia. She requires
more support than just a teacher in the classroom. Team agrees to this.

It was asked if AT could be in a full time general setting with less support. AMu stated
no, she needs the support – a full time inclusion setting with a D/HOH teacher "popping
in" would not be enough. AT also needs to be with her hearing peers. She needs her
apraxia worked on as well. She is improving with her pull out and with the classroom
SLP supporting her the remainder of the time. She can be in a general education setting
with a SLP qualified to work with students with hearing loss. It was stated that her
current SLP at Janney has never worked with a student with a CI before. The apraxia
plays a major role in AT's issues as well.

Anna Tiller MDT/IEP notes 2/6/2008                                                    8
Notes recorded by A. Muldoon

It was then discussed whether AT was in a general education setting, with a small class and with a SLP qualified with HI/apraxia for half the day and half the day a D/HOH teacher in the classroom as well as an educator - always having 2 people in the classroom. Would this be appropriate? AMu spoke that you would have to educate the general education teacher to work with AT. The SLP and D/HOH teacher can be assisting the general education teacher and working with AT. The SLP would also have to work with the team on how to assist in working with AT and apraxia, because this is something an SLP is trained in.

After a lengthy discussion, team agreed AT requires:
14.25 hours (2.85 per day) – SLP with background in Apraxia and HI in a general education setting per week.
14.25 hours (2.85 per day) – D/HOH with background with auditory/oral spoken language in a general education setting per week.
30 minutes of audiological services per week in a combination of pull out and in class.
1 hour (2 – 30 minute sessions) of pull out OT in special education setting
2 hours of pull out of speech and language in a special education setting
30 minutes a month of OT consultation with the classroom educators (SLP, D/HOH and general educator).

## VI.    Placement Discussion

An MDT meeting was never held this school year (07-08) prior to today. Mom said she was waiting for a full team meeting to discuss these issues and asked for one. Mom expressed that the only place to discuss IEP/placement options is at a formal MDT meeting, which was not scheduled until today. Mom visited Key and was told that there was no placement at that time due to AT's age. Mom would have to look at Barnard for AT. AMu confirmed this regarding the placement at Key. Key may have made an exception and except AT early, but it was not confirmed with anyone at the table including Mom. Mom has been waiting for this meeting to discuss placement, because she realizes that formal meetings are where these discussions should be held. Mom looked at two school DCPS offered. Key could not place AT.

AMu confirmed at this time Key cannot meet her needs based on what the team determined her needs were but, DCPS would like to see if services could be put in place at Key or other DCPS programs to meet AT's needs. Specifically, Key does not have an SLP that is currently presiding in a regular education classroom the amount of services AT requires.

AMu described Key based on her recollection:
The classroom at Key that the team is considering has 18 students, a Full Time teacher, and an aide. AMu said size does play a role, but also an acoustically sound setting, the structure the educator brings to the classroom as well as the educator's experience. The setting that may be proposed at Key is acoustically sound, the teacher has control over the classroom, the layout is sufficient, so 18 students would be considered a small setting if all the above requirements are met. If these requirements were not met, than 18 students

Anna Tiller MDT/IEP notes 2/6/2008
Notes recorded by A. Muldoon

9

would not be considered a small setting by the team and a classroom of 12 or smaller would be appropriate setting size.

Placement has not been determined at this time, team will reconvene to discuss placement options for AT.

### VII. Modifications/accommodations

Currently, AT is not pulled out of general education setting except for her related services. AT has specialized instruction in Speech and Language in a general education setting. Currently, AT's setting is general education.

Team discussed accommodations: the parent provides CI. A personal FM system is provided by DCPS. Suspended equipment (which was never provided by DCPS) was taken off her IEP. A sound field FM system is recommended. AT requires a small class size, specialized instruction in speech and language as well as related services in speech and language to address goals, occupational therapy and audiology.

### VIII. Conclusion

Team agrees to sign participation of meeting papers. However since the complete IEP could not be generated at that time due to the lateness of the hour, the IEP as well as meeting notes will be provided to Mom to review before she signs to approve the IEP in its entirety. Meeting was adjourned.





### THE
# RIVER
## SCHOOL

**Name:** Anna Tiller
**Date of Birth:** 10/17/03
**Chronological Age:** 4 years; 0 months
**Cochlear Implantation:** 02/02/05
**Date of Activation:** 03/05
**Hearing Age:** 2 years; 7 months
**Examiner:** Kimberly Sak, MA CCC-SLP

**Speech and Language Evaluation**
**Dates of Evaluation:** 10/23/07; 10/24/07; 10/26/07; 11/01/07

## PERTINENT BACKGROUND INFORMATION

Anna Tiller, a four-year-old girl, currently attends a full-day preschool program, five days per week at the River School. Her class consists of 12 other children; one other child has a hearing aid and the other children are typically developing peers. The classroom is staffed by one speech-language pathologist, as well as an early childhood deaf education teacher. The classroom speech-language pathologist and educator support Anna's auditory, language, and pragmatic development by scaffolding play and facilitating communication interactions with typical peers. Anna receives one additional hour of individual, pullout speech therapy each week at the River School. As per her Individualized Education Plan (IEP), Anna also receives 1:1 speech and occupational therapy services at Janney Elementary D.C. Public School twice a week (30 minutes per session each). It is important to note that although OT is recommended in her IEP, Anna has only received 14 out of a possible 21 sessions. In addition, Anna has not received any audiological services as stated in her IEP (i.e.1 hour a week). Anna continues to see her audiologist, Pamela Caine, at Bethesda Naval Hospital for mapping sessions. Anna lives at home with her mother, father, four sisters, and one brother. She was evaluated at the River School in order to collect information regarding her speech and language development and to determine appropriate goals for her IEP.

Anna was born at 37 weeks gestation, weighing 6 ½ pounds. Anna's twin sister was born via vaginal delivery. Due to a prolapsed cord, Anna was delivered via cesarean section. Anna contracted bacterial meningitis at 2 ½ months of age. As a result, Anna

4880 MACARTHUR BLVD. NW • WASHINGTON, DC 20007
TEL: 202-337-3554 • FAX: 202-337-3554 • WWW.RIVERSCHOOL.NET

experienced global motor and language delays. Anna began receiving physical and speech therapy at age eleven months. At fifteen months, Anna was diagnosed with a profound bilateral sensorineural hearing loss. She was surgically implanted with a Cochlear Corporation implant in February 2005 and activated in March 2005 with a SPrint Sound Processor. Anna was diagnosed with childhood verbal apraxia in July 2006.

Anna participated in this evaluation with familiar examiners over the course of four sessions. Each session lasted 60-75 minutes. All tests were administered in a quiet testing room, free of distractions and background noise. While Anna attended well during most testing sessions, she benefited from the use of movement breaks and external reinforcements to remain motivated.


## STANDARDIZED TESTS ADMINISTERED

*Goldman-Fristoe Test of Articulation -2 (GFTA-2)*
*Reynell Developmental Language Scales (RDLS)*
*Comprehensive Assessment of Spoken Language (CASL)*
*The Token Test for Children*


### Goldman-Fristoe Test of Articulation-2 (GFTA-2)

The *Goldman-Fristoe Test of Articulation-2 (GFTA-2)* was administered to assess articulation of consonant sounds in words. Anna was shown single colored drawings and asked to label the object(s) presented. She spontaneously labeled approximately half of the words and the clinician had to use the cueing hierarchy, which included direct imitation, to complete the rest of the test. The results were as follows:

| Raw Score | Standard Score | Percentile Rank | Age Equivalent |
|-----------|----------------|-----------------|----------------|
| 36        | 77             | 12              | 2-4            |

Anna's productions of speech sounds at the word level are as follows:

| Sound | Initial | Medial | Final |
|-------|---------|--------|-------|
| /p/ as in **pencil** |  |  | (-) |
| /n/ as in **knife** |  | /m/ |  |
| /w/ as in **window** |  | ----- | ----- |
| /h/ as in **house** |  | ----- | ----- |
| /f/ as in **fish** | /b/ |  |  |
| /ŋ/ as in **ring** | ----- |  |  |
| /j/ as in **yellow** | /l/ | ----- | ----- |
| /l/ as in **ball** |  | /bl/ | (-) |
| /r/ as in **rabbit** | /w/ | /w/ |  |
| /dʊ/ as in **jump** | /t/ |  | /ts/ |
| /θ/ as in **bathtub** | /b/ | /f/ | (-) |

| /v/ as in five | /n/ | /b/ | |
|---|---|---|---|
| /s/ as in house | 2 | 2 | (-) |
| /z/ as in zipper | /s/ | (-) | /s/ |
| /ð/ as in this | /d/ | /b/ | ----- |
| bl as in **blue** | /bʌl/ | | |
| br as in **brush** | /bw/ | | |
| dr as in **drum** | /d□/ | | |
| fl as in **flowers** | /fw/ | | |
| fr as in **frog** | /f/ | | |
| gl as in **glasses** | /gw/ | | |
| kl as in **clown** | /gw/ | | |
| kr as in **crying** | /kw/ | | |
| pl as in **plane** | /pw/ | | |
| sl as in **slide** | /fw/ | | |
| sp as in **spoon** | /b/ | | |
| sw as in **swimming** | /fw/ | | |

## Key

(-) indicates the sound was omitted

/ / indicates a sound substitution

----- indicates that the sound does not exist in that position

2 indicates mild distortion of the sound

blank box – indicates correct production

Anna received a raw score of 36, which corresponds to a standard score of 77. Therefore, her score fell more than almost 2 standard deviations below the mean. Her percentile rank of 12 indicates that more than 88% of her typically developing peers earned higher scores on this assessment. These scores are well below average. During the assessment, Anna's errors included final consonant deletion and weak syllable deletion, sound substitutions in all positions of words, consonant cluster substitution with glides (e.g., **pw**ane for **pl**ane), stopping of sounds (e.g., **b**ishing for **f**ishing), and gliding (e.g., **w**abbit for **r**abbit).

### *Reynell Developmental Language Scales (RDLS)*

The *Reynell Developmental Language Scales (RDLS)* was administered to evaluate Anna's verbal comprehension and expressive language development. During this assessment, Anna was shown a variety of manipulatives, such as small figurines, pictures, and scenes, and asked to identify, label, or describe them in various subtests. She also used these items to follow directions of increasing complexity. Results were as follows:

**Mode of Administration: Orally**

| | Verbal Comprehension | Expressive Language |
|---|---|---|
| Raw Score | 38 | 37 |
| Standard Score | <63 | <63 |
| Percentile Rank | <1 | <1 |
| Chronological Level | 4;0 | 4;0 |
| Developmental Level | 2;7 | 2;8 |
| Lag or Advance | Lag (-) 17 months | Lag (-) 12 months |

Receptively, Anna's results indicate a standard score of <63, which falls more than 2 standard deviations below the mean. A percentile rank of <1 indicates that more than 99% of children her age would achieve higher scores on this test. Her score placed her developmentally 17 months behind her chronological age level, which indicates a significant delay in her receptive language development. Important to note is that this score does match her hearing age of two years, seven months. Receptively, Anna was able to identify objects when asked (e.g., *"Where is the spoon? Car? Sock?"*). Anna was able to identify a *ball, spoon, brush, doll, car, cup, sock, block, chair, bathtub, table, bed, knife, dog, baby, man,* and *mommy.* Anna was able to follow four one-step directions (*"Put the spoon in the cup"*), and identify all five objects by function (*"Which one do we sleep in?"*, *"Which one do we sweep the floor with?"*). She had difficulty identifying objects by characteristics or traits (*"Which one barks?"*, *"Which one is carrying something?"*). Anna displayed difficulty following one-step directions containing multiple modifiers (*"Give me the longest red pencil"*, *"Put the three short pencils in the box"*), and manipulating objects by following directions containing multiple elements (*"Put one of the small pigs beside the black pig"*, *"Put all of the pink pigs around the outside of the field"*).

Expressively, Anna earned a standard score of <63, with a percentile rank of <1, indicating more than 99% of children her age would achieve higher scores on this test. Her standard score placed her at a developmental level equal to two years and eight months, indicating a significant delay in her expressive language development. Again, this score does closely match her hearing age (2;7 months). Anna verbally labeled, with approximation, items such as a *ball, spoon, car, doll, brush, sock,* and *cup.* Anna verbally identified pictures (*chair, flower, window, raining*). Although Anna's responses for the other pictures were incorrect, they were appropriate responses and semantically related to the pictures (e.g., In response to a picture of men, Anna replied *fathers.* In response to a picture of letters, Anna replied *cards.*) In a task requiring Anna to provide definitions of a given word, she had difficulty describing objects and at times, imitated the examiner's words (e.g., When asked, "What is an apple?", Anna replied *in a tree, apple*).

### Comprehensive Assessment of Spoken Language (CASL)

Anna was given the *CASL* to assess her oral language skills. This assessment battery provides an in-depth evaluation of a child's oral language processing systems of auditory comprehension, oral expression and word retrieval, the knowledge and use of words and

grammatical structures of language and the ability to use language for specific tasks, requiring higher-level cognitive functions and the use of language in communicative contexts. The *CASL* measures comprehension, expression and retrieval in the lexical/semantic, syntactic, supralinguistic and pragmatic language domains.

## SCORE SUMMARY

| CASL Tests | Lexical/Semantic | | | Syntactic | | Pragmatic |
|---|---|---|---|---|---|---|
| | Basic Concepts | Antonyms | Sentence Completion | Syntax Construction | Paragraph Comprehension | Pragmatic Judgment |
| Standard Score | 87 | | 81 | 81 | 110 | 77 |
| Percentile | 19 | | 10 | 10 | 75 | 6 |
| Test-Age Equivalent | 3-3 | | 2-7 | 2-7 | 5-0 | 2-7 |

## CORE SUBTESTS:

Based on Anna's age level (3-4 years age range), the core subtests administered were Basic Concepts, Syntax Construction and Pragmatic Judgment.

The Basic Concepts subtest measures a child's auditory comprehension of words that refer to basic perceptual and conceptual relations, Anna was asked to point to a picture in a field of four that corresponds to what was said. She received a standard score of 87, placing her in the low average score range, one deviation below the mean. She ranked in the 19th percentile, meaning 81% of children the same age scored at or above her level. Her age equivalent on this subtest was 3 years, 3 months old.

The Syntax Construction subtest measures a child's oral expression of words, phrases and sentences using a variety of morphosyntantactic rules. This subtest emphasized the use of rules to formulate and express sentences. Anna was asked to complete sentences using phrases (often using prepositional phrases); to answer questions that elicit specific syntactic forms; to formulate sentences when telling a story; and to use a modeled sentence to generate a similar one. Anna's standard score was 81, placing her in the moderate low score range. Her percentile rank of 10 means that 90% of children the same age scored equal to or above her in this subtest. Her age equivalent on this test was 2 years, 7 months old. Anna had difficulty accurately finishing a sentence (Here the dog is barking. Here *he sleeping*) and answering a question with a word/phrase or sentence (Here we see a girl running. Here we see *the girl*).

The Pragmatic Judgment subtest measures a child's knowledge and use of pragmatic language rules and judgment of their appropriate application. The subtest required Anna to judge the appropriateness of language used in specific environmental situations or actually use language appropriate to specific environmental conditions. Pragmatic competence in language production is assessed by asking the child to express a specific communicative intent, to recognize appropriate topics for conversations, to select relevant information for directions or requests, to initiate conversation or turn taking, to adjust the communication level to situational factors such as age or relationships, to use language for expressing gratitude, sorrow and other feelings, and to judge the pragmatic appropriateness of the language behavior of others who are engaged in the above activities. The examiner reads a story aloud and asks the child to judge the appropriateness of the actors or supply the appropriate language for the situation.

Anna's standard score of 77 places her in the 6th percentile for this subtest, or the moderately low score range (more than 1 standard deviation below the mean). Ninety-four percent of her age matched peers scored higher than her in this subtest. Anna had difficulty giving names for characters in the story (What name would you give the other dog?- Anna was unable to formulate any response), providing farewells, requesting items, or providing polite responses to posed questions. She also demonstrated difficulty providing requests (i.e. asking for help or to join an activity). She could provide responses of gratitude (i.e. thank you, you're welcome).

**Core Composite**

| Sum of Core Standard Scores | Standard Score* | Percentile Rank** | |
|---|---|---|---|
| 245 | 80 | 9 | |

*The mean standard score is 100, with one standard deviation equal to +/- 15*

* *A standard score between 85 to 115 is within normal limits for children in Anna's age group*

** *Percentile Rank indicates the number of children in Anna's age group who she performed as well or better than*

Overall, Anna scored in the moderate- low score range. The core subtest she scored the lowest in was Pragmatic Judgment. While she did perform high in one of the supplemental subtests (Paragraph Comprehension), it was not computed in the core composite sum and therefore, did not affect her overall composite score.

**Supplemental Tests:**

Anna was given two supplemental subtests to obtain further information about her skills.

The Sentence Completion subtest measures word knowledge, retrieval and oral expression in linguistic context. Anna had to retrieve and express one of the few appropriate words to fit in the meaning of a spoken stimulus sentences. Anna also needed to comprehend the vocabulary and syntactic structure of the stimulus sentences as well as

have sufficient word knowledge to use its content and grammatical structure to generate an acceptable completion using a single word.

Anna received a standard score of 81 on this subtest, placing her in the moderately-low score range. Her percentile rank of 10 indicates that 90% of her age matched peers scored at or above her score. Anna had difficulty finding the exact word to finish the sentence, often providing a phrase or description instead of filling in the blank (The story that Dad told was so funny it made everybody *eating chicken*).

The second supplemental subtest administered was the Paragraph Comprehension subtest. This subtest measures a child's auditory comprehension of syntax in spoken narratives. Each narrative begins with a sentence that has a designated level of syntactic difficulty. Each subsequent sentence in the narrative adds to the syntactical complexity of the previous sentence. The syntactic complexity contained in each narrative is greater than in the previous narrative. The child listens to each paragraph and subsequent questions about the paragraph read by the examiner. The child then responds to each question by pointing to one of four pictures that represent the correct answer. Anna performed the best in this subtest, achieving a standard score of 110. She scored in the 75th percentile (only 25% of her age matched peers earned higher scores). These scores correlate to a test age equivalent of 5 years; 0 months. Her age equivalency on this subtest was 1 year above her chronological age and over 2 years above her hearing age. It is the examiner's impression that Anna's performance was significantly better on this subtest because each paragraph was read twice. She clearly benefits from maximum exposure to test materials and the style of story narrative is highly motivating and engaging for Anna. Listening to stories read aloud is a preferred activity at school and at home.

### The Token Test for Children

The Token Test for Children was administered to detect subtle receptive language deficits while following directives. Anna was shown different tokens (of varying color, shape and size) and asked to perform different actions with them based on commands presented auditorily.

**Results:**

SCALED SCORES

| Subtests | Raw Score | Age* | Grade* |
|---|---|---|---|
| Part I | 9 | 498 | 496 |
| Part II | 2 | 490 | 488 |
| Part III | 0 | - | - |
| Part IV | 0 | - | - |
| Part V | 0 | - | - |
| Overall Score | 11 | 490 | 488 |

*Mean score is 500

*Standard deviation = 5, with an average range = 495-505*

Anna performed the best on Part I, achieving a scaled score by age of 498, and by grade of 496. These scores were within average range. During this subtest, Anna was asked to follow a 1-step directives involving one modifier ("Touch the red circle", "Touch the white square").

On Part II, Anna demonstrated significant difficulty following 1-step directives with multiple modifiers ( "Touch the large white square"). Anna achieved a scaled score of 490/488, placing her in the moderately-low range, two standard deviations below the mean.

On Parts III, IV and V, Anna was unable to answer.any questions correctly. She had significant difficulty following two-step directives involving multiple modifiers ("Touch the yellow circle and the red square"), often stating "I don't know!". When asked to manipulate the objects, she could perform one of the two steps (For ex. When asked to "Touch the blue circle with the red square", she could point to the blue circle, but did not know what to do next).

Overall, Anna's score of 490/488 places her in the moderately- low score range, 2 standard deviations below the mean. Approximately 75% of her age matched peers scored at or above her score on this test. It is important to note that testing accommodations were modified in an effort to assess stimulability. For example, this examiner attempted to sit across from Anna and repeat the stimulus, to ascertain if, with these modifications, increased accuracy could be attained. With this access to the speaker's face, Anna did show some improvement, suggestive that auditory attention and access to the speaker's face is important to establish prior to Anna processing auditory information.

## ORAL MOTOR AND FEEDING EVALUATION

An oral peripheral exam was performed to assess the structure and function of Anna's oral mechanism (i.e., jaw, lips, teeth, and tongue) for speech tasks and feeding. Anna is able to eat a variety of foods, and is self feeding independently. Anna demonstrates adequate oral mastication and manipulation of foods, using her tongue efficiently to remove food from buccal cavity. No evidence of oral, pharyngeal or esophageal dysphagia noted.

Anna has normal symmetry, tone and sensitivity of her face. No drooling noted at rest, with speech, or during eating. Her lip musculature was noted to be normal. Labial protrusion and retraction, as well as strength, were all judged to be normal. In addition, Anna has normal dentition, void of any notable missing teeth or over/underbite. Upon examination of the hard palate, Anna demonstrated normal height, width and structure. Her soft palate was also noted to be symmetrical. While resonance did appear to be mildly hyponasal, it is important to note that this may have been due to seasonal cold/allergies. Anna demonstrated normal mobility of her jaw during extension and retraction exercises. Lingual structure also noted to be normal, without any noted atrophy, growths or fasciculation's. Lingual mobility was within normal limits for

protrusion and retraction, elevation and depression. Lateralization and disassociation noted to be decreased, with Anna demonstrating significant difficulty disassociating her tongue from her lips during lateralization exercises ( using a lollipop). Lingual strength was tested during a resistance exercise and noted to be within normal limits.

Anna was able to imitate some labial/lingual movements without difficultly. For example, she could pop her lips, open wide and imitate facial expressions. She was unable to click her tongue ("I can't do it"), clear her throat upon her command, or swallow upon command ( both observed adequately during normal feeding tasks). When asked to cough and given a model, Anna imitated a /k/ sound. These behaviors are consistent with childhood apraxia of speech, as she is not able to move/coordinate her articulators upon command.

Diadochokinetic rate was examined by asking Anna to quickly repeat "puhtuhkuh". The purpose of this task was to determine if Anna could coordinate the oral musculature to quickly produce sounds in different areas of her mouth ("puh" is produced in the front of the mouth, "tuh" is produced in the middle, and "kuh" is produced in the back). Anna was able to produce these phonemes in isolation. She was able to repeat "puhtuhkuh" on the first attempt at a slow rate when she was provided with a model at a reduced rate. Anna, however, was unable to produce these alternating movements in rapid succession or without a visual model. Children with apraxia of speech are often able to complete tasks in a slow or imitative format, but breakdown when tasks are quick or spontaneous. The difficulties that Anna exhibited are consistent with a child with verbal apraxia. The motor planning involved to complete the task is disordered. Frequent repetition of accurate targets is necessary for Anna to make progress.

## CLINICAL IMPRESSIONS

Anna is an energetic 4-year-old girl, who loves school and is an active participant in the classroom. While she continues to make gains in standardized testing as well as in everyday interactions in the classroom, she does continue to demonstrate significant areas of weakness. Furthermore, many of Anna's areas of difficulty in the classroom correspond to her areas of weakness found in the testing. For example, Anna's articulatory precision continues to impact her speech intelligibilty. As noted in the *Goldman Fristoe*, her score fell almost 2 standard deviations below the mean. Her percentile rank of 12 indicated that more than 88% of her typically developing peers earned higher scores on this assessment. In the classroom, Anna's speech intelligibility improves in known context, but in unknown contexts, continues to limit her communicative ability. With the diagnosis of verbal apraxia, communicating her comments/requests/responses continues to be a challenge for Anna. Anna's phonemic awareness skills are developing, as she blends and rhymes sounds during daily classroom activities ("Anna/banana"). An ongoing goal for Anna will be the daily repetition of famliar phrases and questions, paired with preteaching of classroom/functional vocabulary to aid her apraxia and speech intelligibility. Routine phrases such as "in two minutes", "no thank you", and "I need help" are becoming increasingly clear as Anna practices and repeats these phrases every day. With models from her teachers as well as

the typically developing peers in her class, Anna demonstrates more appropriate placement of her articulators with an increasing amount of exposure to the repetitious classroom language. This support in the classroom allows Anna to practice and improve her speech intelligibility throughout the school day.

Anna's receptive language skills are significantly impaired. As noted in the *Reynell Developmental Language Scale*, Anna scored in the 1st percentile, with 99% of her age matched peers scoring at or above her. She had difficulty identifying objects by characteristics (*"Which one barks?)*, following one-step directions containing multiple modifiers (*"Give me the longest red pencil")* and manipulating objects by following directions containing multiple elements (*"Put one of the small pigs beside the black pig")*. In the *Token Test*, Anna demonstrated similar difficulties, with errors in following 1-step directives with multiple modifiers ( "Touch the large white square"). While in the classroom, Anna is able to follow multistep directives of familiar routines ( "Put your book on the bookshelf and sit on the X in front of your cubby"), Anna demonstrates difficulty following novel classroom directives ("Put the wooden spoon in the blue bowl"- during a cooking task). However, as noted in the *Token Test*, when Anna uses access to the speaker's face, Anna shows improvements in processing and retention of auditory information, suggestive that auditory attention is important to establish prior to Anna processing auditory information. Daily auditory processing and receptive language support in the classroom is crucial to aiding Anna in achieving her receptive language goals.

Anna's strongest performance was the Paragraph Comprehension subtest of the *CASL*. On this subtest, where she was asked to listen to increasingly lengthy narratives and point to pictures corresponding to questions about these narratives, Anna scored an age equivalency of 5 years;0 months. This strength can also be seen in the classroom, as Anna loves reading and being read to. During Book Time, and/or daily 1:1 reading with her teachers, Anna demonstrates increased awareness of syntactical complexity. Books are often used as a vehicle for supplementing theme vocabulary, with Anna's 1:1 pullout speech sessions preteaching and/or reviewing books with the weekly theme. Anna benefits from this repetition and demonstrates strengths in using her listening skills to decipher narratives for plot development ("What will happen next."). Similar to her receptive language, Anna's expressive language skills are also impaired. While daily she continues to demonstrate improvements, Anna demonstrates significant impairments in sentence completion, syntax construction, pragmatic judgment, object description, and connecting ideas. As noted in the *RDLS*, Anna had difficulty providing definitions of a given word, and even imitated the examiner's words (e.g., When asked, "What is an apple?", Anna replied *in a tree, apple*). In the CASL, Anna had difficulty accurately finishing a sentence (*he sleeping*) and answering a question with a phrase or sentence (*the girl*).

One critical difference noted between these results of the standardized testing and classroom performance is motivation. As testing went on, both during the individual tests as well as throughout the week, Anna's motivation for the procedure decreased, impacting her performance. However, in the classroom, Anna demonstrates exceptional motivation everyday. Anna's best performance on all the tests was on the Paragraph

Comprehensions subtest of the *CASL*. This correlates again to motivation, as one of Anna's favorite activities, both at home and in the classroom is reading. Anna truly benefits from a classroom that stimulates and motivates her, as can be seen by her performance difference in structured 1:1 testing or "simulated" situations and that of natural, classroom experiences. Even thought the *RDLS* used functional objects and manipulatives, the unnatural environment did not stimulate Anna to elicit her optimal receptive/expressive language. Another weakness noted in testing which correlates to Anna's daily performance is in the area of pragmatics. Anna scored poorly on the Pragmatic Judgment section of the *CASL* (6th percentile). In order to facilitate pragmatic skills and minimize this area of weakness, Anna will benefit from daily interactions with typical peers, in which she can practice, with repetition and modeling from her teachers, turn taking, commenting, requesting and protesting. The specialized support by the master's level educator and speech language pathologist combine skills to challenge Anna cognitively, while supporting speech and language development. Anna's diagnosed apraxia of speech is a neuromotor-based disability that impacts her ability to sequence oral-motor movements. This significantly impacts her intelligibility and requires an intensive, systematic approach. The classroom SLP works daily with Anna to improve her oral-motor abilities and targets speech production.

It is important to note that due to Anna's speech and occupational therapy services at Janney Elementary School, Anna arrives late to school twice a week, missing Choice Time and Circle Time; the times of day where crucial speech/language and pragmatic exchanges occur. When Anna returns to the classroom after these therapy sessions, she is frequently tearful and fatigued and demonstrates significant difficulty transitioning into the ongoing school day. In order for Anna's performance to thrive, she must be able to experience the entire school day with her typical peers, actively exploring and communicating with teachers and peers while facilitating her speech/language and pragmatic skills.

See River School Narrative Summary dated November 7, 2007 in student's file.

## SPEECH AND LANGUAGE DIAGNOSIS

Anna presents with a profound, bilateral sensorineural hearing loss, and a significant receptive and expressive language delay, accompanied by reduced speech intelligibility secondary to a diagnosis of childhood apraxia of speech. Anna's pragmatic skills are moderate-severely delayed.

## PROGNOSIS

Anna continues to make progress, participating in an inclusion classroom of typical peers, who serve as language, speech, and social models for her. Anna benefits from the full-time collaboration of a speech-language pathologist and a master's level deaf educator in

the classroom setting and individual speech therapy one hour per week. Her auditory, receptive and expressive language skills continue to develop at school. With support and consistent therapy, Anna will continue to develop improved auditory, and receptive and expressive language skills.

## RECOMMENDATIONS

Based on results from this evaluation and observations, the following recommendations are made:

- Anna needs an intensive, oral language based learning environment with an emphasis on auditory-linguistic skill building and interactive opportunities for learning.
- A low student-to-teacher ratio is imperative for Anna to learn new information and have ample opportunities to participate.
- Integration in an oral setting with a small group of typical developmentally-matched peers will provide appropriate linguistic models for Anna.
- Anna's auditory status must be closely monitored daily to ensure she is gaining maximum benefit from her cochlear implant. The equipment must be checked daily, programs set appropriately, and the batteries replaced as needed.
- Anna requires a room that is acoustically modified (carpet, treated windows, limited background noise, acoustic ceiling tiles, FM systems worn by teachers)
- Auditory goals must be addressed daily for Anna to discriminate and process environmental sounds, speech sounds, instructional language, and social exchanges.
- Anna should participate in a Ling 6 sound check every morning when she arrives at school.
- Continued participation in a phonemic awareness program will allow Anna the opportunity to engage in daily oral motor exercises and learn symbolic representations of speech sounds to target early literacy goals.
- Full time speech and language therapy is necessary. Anna's speech and language therapy goals should focus on the following:
    a. Increasing listening skills within the context of a classroom setting
    b. Improving receptive and expressive vocabulary and language skills
    c. Improving pragmatic skills with typically developing peers
    d. Strengthening and heightening awareness of her oral musculature to improve speech sound development
- Anna should be provided with pre-teaching materials such as new vocabulary and concepts prior to the start of new classroom based themes, as well as additional repetitions, prompts, and visual supports for key vocabulary during structured classroom activities.
- Systematic and intensive apraxia intervention, which includes daily repetition of accurate targets of increasing lengths, in order to increase intelligibility.

If you have any questions regarding information in this report, please contact me at the
River School at (202) 337-3554.

Sincerely,

Kimberly Sak, MA CCC-SLP
Speech-Language Pathologist

cc: Parents
    Student's File

## Exhibit 4

# DCPS AUDITORY/ORAL HEARING IMPAIRED PROGRAM
# ELIGIBILITY FOR SERVICES

**Name:** Anna Tiller
**Date of birth:** 10/17/03
**Chronological age:** 3 years 6 months
**Hearing age:** 2 years 1 month
**Age of diagnosis:** 15 months
**Degree of hearing loss:** Bilateral profound sensorineural hearing loss
**Amplification:** Nucleus 24 Cochlear Implant, right side

**Date of Evaluation:** 5/2/07
**Duration of observation:** 2.5 hours
**Evaluator:** Allison Murtha, M.E.D., CTRS

## A. BACKGROUND INFORMATION

All information in this report was obtained through review of medical and educational records and discussions, in person, with Anna's teacher, classroom speech-language pathologist (SLP), and director of speech and language services at the River School.

Anna is a 3 year 6 month old identical twin and one of six siblings in the Tiller family. She was born in Naples, Italy via cesarean section following complications in her delivery due to a prolapsed cord. Anna's birth history is also significant for jaundice at one week old. Her hearing was screened at birth and results revealed responses within normal limits. At 2½ months Anna contracted bacterial meningitis. Following recovery, her hearing was screened at 6 months to rule out hearing loss from ototoxic drugs used to treat this condition. The screening yielded results within normal limits. Medical and educational reports indicate that Anna presented with developmental delays in her language and motor skills following her diagnosis and treatment of bacterial meningitis, and she was referred to the US Naval Hospital's Educational and Developmental Intervention Services for further evaluation. Anna's hearing was tested for a third time following concerns in her language development, and she was diagnosed with bilateral middle ear effusion at 11 months. She began receiving speech and language and physical therapy services at this time. At 14 months, Anna's hearing was re-evaluated and results were consistent with her previous evaluation. She received ventilation tubes at this time, but reports indicate further concerns regarding the status of her hearing following this surgery. She was referred to Walter Reed Army Hospital upon moving back to the United States. Her hearing was re-evaluated for a fifth time and was results revealed a bilateral profound sensorineural hearing loss. Anna qualified as a cochlear implant candidate, and received a Nucleus 24 cochlear implant from Walter Reed Army Hospital in Washington, DC in February of 2005 and was activated a month later at 17 months old. She is followed by clinical audiologist, Pamela Cain, at Bethesda Naval Hospital.

Anna currently attends the River School in Washington, DC. She is in a preschool class with 12 other peers and is one of two children with hearing loss in her class. The children are instructed by an early childhood educator and an SLP, and follow a thematic curriculum. Spoken language is the primary language used in the classroom. Anna receives speech and language therapy for one hour per week outside of the classroom from another SLP at the River School. She does not use an FM system during school. Per discussion with the director of speech and language services at the school, the staff prefers to wait until a child is able to convey whether or not their amplification is working before introducing FM systems. In July of 2006, Anna was diagnosed with verbal apraxia secondary to her hearing loss. She does not receive occupational therapy services at this time.

## B. OBSERVATION

Observation of Anna and her class routine took place within the first two and half hours of school (8:30 a.m. – 11:00 a.m.).  The following observation checklists were used to assess Anna's environment and performance in her school routine:

- *District of Columbia Hearing-Impaired Department Mainstream Observation Form*
- *Checklist for Observing Classroom Participation of Hearing-Impaired Student (Cochlear Implant Center at Manhattan Eye, Ear, and Throat Hospital)*
- *Children's Auditory Performance Scale (C.H.A.P.S.)*

Anna is a vivacious and social young girl.  She arrived to school with her mother and twin sister, and immediately joined peers at the sensory table in the classroom.  She was taken to a small, closed off hallway area for a listening check with the SLP.  Anna was attentive during the task and verbally discriminated all 6 Ling sounds, but did need a second auditory prompt to properly discriminate /m/ from /oo/.  She then returned to the classroom to join her peers in activity time.

The physical classroom is average in size.  It is acoustically treated with carpeting and has low ceilings.  The walls facing the hallway and the outside of school are primarily comprised of windows.  The activity area was set up in one half of the classroom, and included 4 centers for the children to move about freely.  The theme in the classroom this month was pizza, and all activities corresponded with this theme.  Environmental/external noise was minimal in the classroom, but linguistic noise was loud at times due to the location and type of the activities taking place in the room.  The teacher and SLP moved about the activity area to participate with the children in their play.  They each took turns interacting with Anna, often clarifying or mediating language between her and her peers.  Anna appeared to have most difficulty in properly responding to questions.  The adult interacting with her often had to rephrase or provide more contextual information for Anna to properly respond.  When not interacting with an adult, Anna's use of spoken language was minimal as she played with peers, but she was able to convey her wants through simple phrases and natural gestures (e.g. "No, my turn." *pointing to self*).

After a half hour of activity time, the children transitioned into circle time for a brief meeting.  Anna sat to right of the teacher, and the SLP sat behind her at circle.  Her teacher and SLP report that Anna has difficulty attending to circle time, and uses a sensory cushion, which seems to improve her attention to the task at hand.  The recommendation for use of the cushion came from an occupational therapist at the school.  The teacher discussed the day's schedule and reviewed the circle time story from yesterday.  The SLP often repeated or rephrased the message for Anna.  When asked an open-ended question regarding what happened in the story that they had read the previous day, Anna had difficulty in appropriately responding.  She needed verbal prompts and modeled language from the SLP as well as pictures of from the book to assist her in organizing and verbally conveying the events from the story.  Anna was very eager to share her thoughts with others, but did need adult intervention in order to do so.

The class participated in "mouth time" which is a combination of oral motor activities and visual phonics.  The children took turns working with the teacher and the SLP on lip popping for stimulation and bilabial sounds, raising the tongue to the alveolar ridge in the mouth to produce /l/, and bubble blowing for lip-rounding and breath control.  Anna needed tactile input and support from the SLP to

reproduce an /l/ sound five times in isolation. She uses short, abrupt breaths to blow bubbles, but with practice was able to elongate her breath to blow bubbles successfully.

Anna and her peers transitioned to physical education. Physical education is held in a large gym with one adult to instruct the class. The children engaged in a scooter board activity with partners that relied heavily on following the directions of the gym teacher to stop, switch positions, line up, etc. Anna appeared to enjoy physical education, but relied heavily on watching her peers for information. The teacher did not stay within close proximity to Anna during this activity, making it difficult for her to hear spoken directions. Following physical education, Anna's class took a bathroom break before proceeding outside for playground time. On the playground, Anna engaged in pretend play with her peers, teacher, and SLP. While she actively and happily played with her peers, Anna's verbal communication with them was minimal and it appeared that it was often difficult for her to understand them. Her teacher and SLP often mediated the language when present during such play activities. Anna and her peers returned to the classroom for snack time, completing the observation.

## C. SUMMARY & IMPRESSIONS

Anna is a sweet and outgoing preschooler who loves interacting with her peers, teacher, and SLP. Anna's cochlear implant has been activated and in use for over two years, and while she has been making progress her SLP and teacher report "significant lag" in her spoken language in comparison to her hearing peers. Observation of Anna in her classroom revealed that she often omits articles, copulas and syllables from words and sentences, substitutes and omits medial and final consonants in words, and gives inappropriate or one-word responses to questions less familiar and out of context. She relies heavily on the adults in her classroom environment to mediate language in both structured and unstructured times in her daily routine. These behaviors and language errors are typical of individuals with a significant hearing loss. Anna did show that she is able to follow stereotypic directions in her daily routine, retain concepts learned in school as evidenced through her play, and is a very willing participant in all her school routines.

Although Anna's behavior is socially appropriate at this time, her ability to effectively use spoken language is significantly impacted by her access to consistent auditory information and her ability to properly reproduce speech as she perceives it. Even with amplification Anna must work harder than her hearing peers to hear and understand everyday spoken language, particularly in environments that do not provide good acoustics. Access to good auditory input from amplification, strong language models, and appropriate educational staff who are knowledgeable regarding the educational needs of children with hearing loss are essential in helping Anna become a successful spoken language user as she continues to be exposed to more complex language in increasingly challenging environments.

## D. RECOMMENDATIONS

The following recommendations have been made to help Anna receive the most appropriate services to meet her auditory, language, speech and cognitive needs.

1. Anna should receive educational services in an inclusive classroom environment with small student to teacher ratio that offers opportunities for intensive language instruction in both group and individual situations.
2. Anna should have access to a teacher of the deaf and hard of hearing specifically trained in auditory/oral education to monitor her educational progress and address auditory, language, and speech concerns specific to children with hearing loss in an auditory/oral environment, particularly in pre-teaching and post-teaching academic content.

3. Anna should have access to an FM system while in school to provide her with the best possible access to speech, particularly in situations that do not offer the best signal to noise ratio.

4. Anna should continue to receive speech and language services outside of the classroom with a speech-language pathologist to address her oral motor issues in addition to her speech and language needs related to hearing loss. It is recommended that these services be spread over the course of her school week to encourage consistency and regular practice of therapy targets.

ALLISON M. MURTHA, M.E.D., CTRS

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **SARA & MICHAEL TILLER,** | : |
| **as parents and next friend of the minor child,** | : |
| **A.T.** | : |
| **and** | : |
| **A.T., individually** | : |
|  | : |
| **Plaintiffs** | : |
|  | : |
| **v.** | : **Civil Action No.  07-1736 (JR)** |
|  | : |
| **GOVERNMENT OF THE DISTRICT OF COLUMBIA** | : |
| **A Municipal Corporation** | : |
|  | : |
| **Defendant.** | : |

**ORDER**

Upon consideration of the Plaintiffs' Motion for Summary Judgment, and any

opposition thereto, it is hereby

ORDERED: that Plaintiffs' Motion for Summary Judgment is GRANTED;

FURTHER ORDERED:  The June 29,  2007, Hearing Officer's Determination is

reversed.

_____          _____
Date                                    James Robertson
                                          United States District Judge