**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **SARA & MICHAEL TILLER,** | : |
| **as parents and next friend of the minor child,** | : |
| **A.T.** | : |
| **and** | : |
| **A.T., individually** | : |
|  | : |
| **Plaintiffs** | : |
|  | : |
| **v.** | : Civil Action No.  07-1736 (JR) |
|  | : |
| **GOVERNMENT OF THE DISTRICT OF COLUMBIA** | : |
| **A Municipal Corporation** | : |
|  | : |
| **Defendant.** | : |

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT**

COMES NOW, the Plaintiffs, by and through undersigned counsel, and oppose the Defendant's Motion for Summary Judgment.  Plaintiffs request that this Honorable Court deny Defendant's Motion for Summary Judgment and grant Plaintiffs a summary judgment pursuant to Federal Rule of Civil Procedure 56 ©.  Plaintiffs are seeking a reversal of the June 29, 2007, Hearing Officer's Decision which determined that A.T. had not been denied access to a free and appropriate education.

Defendant characterized the issues presented and decided at hearing as:

(1) Whether DCPS denied a FAPE to A.T. for the 2006/2007 school year by developing by 02/01/07 Individualized Education Program ("IEP") with an inappropriate disability code?;

(2) Whether DCPS failed to provide A.T. the required amount of ("OT") and Speech and Language ("SL") therapy services?; and

(3) Whether DCPS failed to provide A.T. an appropriate placement?

Defendant's recitation of the issues in this appeal is not accurate. Defendant failed to address two significant issues. Defendant failed to state the issue of DCPS' failure to evaluate A.T. in all areas of suspected disability and the issue of DCPS' failure to determine A.T.'s eligibility, develop an IEP and determine placement by the time A.T. turned (3) years of age.

The issues that were presented at hearing and decided and for which the Plaintiffs seek a reversal are:

1) The Hearing Officer erred in his determination on the issue of whether DCPS failed to evaluate A.T. in all areas of suspected disability.

2) The Hearing Officer erred in his determination on the issue of whether DCPS failed to determine A.T.'s eligibility, develop and IEP and determine placement by the time she turned three (3) years of age.

3) The Hearing Officer erred in his determination on the issue of whether DCPS developed an appropriate IEP for A.T.; and

4) The Hearing Officer erred in his determination on the issue of whether DCPS provided an appropriate placement for A.T.   (Complaint ¶ 17, Count I and Count II specifically address the issues).

**1) The Hearing Officer erred in his determination  on the issue of whether DCPS failed to evaluate A.T. in all areas of suspected disability.**

The Plaintiffs in their Due Process Complaint and throughout the administrative

hearing asserted that the Defendant failed to evaluate A.T. in all areas of suspected disability by failing to evaluate A.T.'s need for P.T. AR-192,193; AR-99,100. The Defendant failed to address this issue and summarily dismissed Plaintiffs argument saying that there was no record evidence that addressed any claims of DCPS' failure to perform a physical therapy evaluation. A.T.'s mother testified that from the time the DCPS was on notice of A.T. to the time of the eligibility meeting on 02/01/07, they never conducted a P.T. evaluation. T-99. She further testified that this was a concern to her because she felt that A.T. needed P.T. AR-100. At the time of the 02/01/07eligibility meeting, DCPS refused to place P.T. services on the IEP. However, DCPS was aware that A.T. had been receiving it under her IFSP and the only evaluation reviewed by the team on 02/01/07 (which was done under Part C) recommended that A.T. receive P.T. AR-162. Even though DCPS had been on notice of A.T.'s need to transition to Part B since 09/01/06 (AR-107); participated in a transition meeting on 09/12/06 (AR-112); and knew that A.T. had been receiving P.T. under Part C on her IFSP (AR-83), DCPS chose to remove that service from A.T. without performing an evaluation. DCPS ultimately agreed at the meeting that they should conduct a P.T. evaluation. AR-164. No explanation was given as to why the evaluation had not been conducted during the period from 9/01/06 to 02/01/07. As of the date of the hearing on May 9, 2007, although DCPS had purportedly sent someone to evaluate A.T. at the River School, the Plaintiffs had never received a report nor had DCPS convened a MDT meeting to review the report. T-94.

**2) The Hearing Officer erred in his determination on the issue of whether DCPS failed to determine A.T.'s eligibility, develop an IEP and determine placement by the time she turned three (3) years of age.**

Defendant cites to <u>Diatta v. District of Columbia</u>, 319 F.Supp 2nd 57,64 (D.D.C. 2004), and states that Plaintiffs have failed to prove by a preponderance of the evidence that the Hearing Officer erred in his determination on the issue of whether DCPS complied with the procedural requirement to have an IEP in place by the time the child turns three (3) years of age. The record demonstrates that the Plaintiffs have proven by a preponderance of the evidence that the Hearing Officer erred in his determination. In <u>Diatta</u>, the Court referred to the two prong test established in <u>Rowley</u>. The first step of that two prong test is a determination of whether the state has complied with the procedural requirements of IDEA.

In A.T.'s case, the state did not comply with the procedural requirements of IDEA. IDEA requires the state to ensure a smooth transition from Part C services to Part B services and that an IEP be in place by the time a child turns three (3) years of age. 34 C.F.R § 300.124. DCPS failed to ensure a smooth transition for A.T. from Part C to Part B and they failed to have an IEP in place for A.T. by the time she turned three (3) years old. This failure on the part of DCPS was especially egregious in the face of the evidence that: 1) A.T. had an IFSP in place prior to age three (3) years and 2) DCPS was on notice by Part C of the need to convene a transition meeting; did convene a transition meeting **prior** to A.T. turning three (3) years old, but failed to determine A.T.'s eligibility or develop an IEP for her until three months **after** she turned three (3) years of age. The Hearing Officer dismissed the three month delay as not

4

relevant because it did not "impede her right to FAPE nor deprive her of educational benefit because *she remains at her current parentally selected "stay put" private placement receiving all of her 02/01/07 IEP called for special education services for the entire 2006/2007 school year* -albeit her parents refused to sign the IEP."  (emphasis added). AR-20 ¶ 35.

The Defendant argues that the Hearing Officer's decision is supported by the record.  The record is abundantly clear that Hearing Officer Woods erred in his conclusion.  A.T. was not receiving either Occupational Therapy ("OT") or Physical Therapy ("PT") services at the River School.  T-82.  These related services were not included in the base tuition rate at the River School and the parent would have had to have paid additional monies beyond the base tuition rate to obtain these services at the River School.  T-204-205.

In fact, during the hearing which was held over multiple days, Hearing Officer Woods agreed to consider ordering interim relief due to the fact that the hearing had to be continued and the date being considered was beyond the 75 day time period. Hearing Officer Woods indicated that if the continuance date was the latter of the two dates proposed, he would consider entering an Order providing interim relief so that A.T could receive both P.T. and O.T. services. T-191-193,  This was clear evidence that he knew that A.T. was not receiving either of these services at the River School.   Yet, in his determination Hearing Officer concludes there was no educational harm or deprivation of educational benefit because *she remains at her current parentally selected "stay put" private placement receiving all of her 02/01/07 IEP called for special education services for the entire 2006/2007 school year*.

5

Hearing Officer Woods determination that there was no denial of FAPE even though DCPS failed to comply with a procedural requirement to determine eligibility and have an IEP in place by the time the child turns three (3) years of age cannot stand because his underlying reasoning for his determination was clearly contradicted by the record.

Defendant's argument that the alleged delays were nominal and did not result in denials of FAPE is not supported by the record.  The Defendant in it's Motion for Summary Judgment cites to the language used by Hearing Officer Wood's in his Determination at (AR-20 ¶ 35) but then adds the language "related services at Janney". The relevant time period to consider is the three month delay of DCPS' determination of eligibility and development of an IEP.  Obviously, if DCPS did not find A.T. eligible or develop an IEP until 02/01/07, then A.T. could not have been receiving her services at Janney, (the placement proposed on 02/01/07 for the related services only), from the period 10/17/06 to 02/01/07.

**3.  The Hearing Officer erred when he determined that DCPS developed an appropriate IEP for A.T.**

DCPS contended in the hearing below that 3 ½ hours of related services (SL, O.T., P.T. and audiology) was all that A.T. required to address her educational needs.  A.T. was born on 10/17/03 and at the age of 2 ½ months, A.T. contracted bacterial meningitis which required her to be hospitalized for six (6) weeks. Post meningitis concerns were noted with both language and motor development.  A.R. 92.  In March 2004, A.T. hearing was reported as normal.  At fifteen (15) months of age, A.T. was diagnosed with profound sensorineural hearing loss.  A.R. 93.  In February

6

2005, A.T. received a cochlear implant which was activated in March 2005.  A.R. 108, T-55, 56, 70.

Two witnesses testified on behalf of DCPS in the hearing below.  Ms. Johnson testified that the IEP related services were all that A.T. required based on her age, disability, IQ and language deficits.   A.R. 520; Defendant's Motion for Summary Judgment Pg 7.  The other witness for DCPS, Ms. Thompson, testified that A.T. did not need more services because A.T.'s test scores fell within the normal range for her cognitive abilities and she was not of school age.  A.R. 298; Defendant's Motion for Summary Judgement Pg 8.  Defendant asserted in it's Motion for Summary Judgment that A.T. was not denied FAPE when DCPS did not include a SLI disability code on her IEP because "the record showed that, even if such an additional classification was warranted, the IEP services would not have changed, and that an SLI classification was based on a River School model not tailored for A.T.   Defendant's Motion for Summary Judgment Pg 10.

The failure on the part of DCPS to appropriately classify A.T. as SLI in addition to the HI classification was not the only error which the Plaintiffs contend caused the IEP to be inappropriate.  In addition to DCPS' failure to recognize the SLI classification, the Plaintiffs contend that the IEP was inappropriate because it did not provide A.T. with all of the services that A.T. needed.  Specifically, A.T. needed to receive specialized instruction from a speech & language pathologist in a general education classroom setting throughout the day.

Defendant argues that Plaintiffs failed to show that an SLI classification was appropriate and even if they had, it would not have changed the services that A.T.

7

received under her IEP. Plaintiffs proved in the hearing below that an SLI classification was warranted. Dr. Morere, a practicing neuro-psychologist who specializes in deafness with a sub specialty focusing on the assessment of children with additional disabilities affecting language development and an Associate Professor at Gallaudet University, testified that A.T. had a number of deficits in the area of language development, both receptive and expressive and that in most areas she was two standard deviations below the mean or more. T-108, 109. Dr. Morere further testified that even for a student with a simple hearing loss, 1 ½ hours of speech and language would not adequately address the needs of the child. T-110. Dr. Morere additionally testified that A.T.'s language development was only two to three word phrases at most and she was not functioning at the sentence level. She testified that the delays were significant and that the amount of services on her IEP would not be adequate to meet her needs. T-110. Additionally, Dr. Morere explained that A.T.'s deficits in language were not confined to expressive and receptive language but A.T. also had a specific difficulty with her ability to manage motor sequencing for her mouth. T-111. Based on the fact that A.T. was reported to have normal hearing at six (6) months; subsequently lost her hearing and then at fifteen (15) months received a cochlear implant she had about (11) eleven months of hearing loss that was not re-mediated. Dr. Morere opined that A.T. should have approached more age appropriate language development. "Kids who have early access to sound and then rapid implantation tend to perceive towards their goals more quickly than A.T. seems to be doing." T-113. Dr. Morere further testified that there was in addition to the oral motor apraxia, which had been diagnosed, a language disorder affecting her ability to function. She went on to explain that

8

children who have contracted bacterial meningitis have a significant negative impact in the area of language development and that one of the most profound affected areas is in language development especially those that develop the bacterial meningitis before the age of (1) one year.  T-115.

It was Dr. Morere's opinion based on her observation of A.T. and her review of the records that A.T.'s classification should be "Multiplied Handicapped and that her primary disability would be speech and language." T 115.  Finally, Dr. Morere testified that the 3 ½ hours related services (1 ½ hours of SL) would not be sufficient for A.T. even if she did not have the additional condition affecting her language development and would not adequately prepare her for entry into Kindergarten.  T-116.

In contrast, Zondra Johnson, one of the two DCPS witnesses who testified, stated, "With hearing-impairment the questions is, if the child was not hearing impaired, how would we know that he would be speech and language impaired?  We see that as an associated disorder with hearing impairment.  Of course if a child is hearing impaired he will have some speech and language delays.  It is not a stand alone handicapping condition".  T-517.  Ms. Johnson further testified that "in A.T.'s case and in every case that I have ever been involved with.  I've never seen a child with a disability with a hearing impairment as their primary disability also have a speech and language disability, not as their disability code.  T-546.  When Ms. Johnson was asked what she understood was the definition of speech & language impairment, she deferred to the DCPS speech and language pathologist as the qualified examiner.  T-547.

The only other witness for DCPS that testified was Sydney Thompson, a speech and language pathologist.   Ms. Thompson testified that she had never provided

treatment to hearing impaired students or students with cochlear implants.  T-282.  Ms. Thompson also testified that she had never performed any trainings or published any articles regarding students with hearing impairments or cochlear implants.  T-283.  The opinion rendered by Ms. Thompson was that if A.T. was not hearing impaired, then she would not have any speech and language needs.  T-300.  This opinion was rendered and accepted by the Hearing Officer as true despite the fact that Ms. Thompson had never provided treatment, performed any trainings or published any article regarding students with hearing impairment or cochlear implants.  Additionally, Ms. Thompson opined that students with a disability classification of Speech & Language Impaired are those students where the classification stands alone.  T-307.  Moreover, Ms. Thompson testified that the disability classification has nothing to do with the related services that the student receives; or the total package of services that the student receives; or the placement.  T-306.  She testified that the purpose of the disability classification is "so you can know what type of child you are dealing with".  Specifically, with regard to A.T., Ms. Thompson testified that in many areas, A.T. was in the severe range with regard to her language abilities (T-315), reported her low percentile ranks (T-317) and testified that in some areas A.T. was more than two standard deviations from the norm in speech & language.  T-319.  Moreover, Ms. Thompson admitted that she stated during the MDT/IEP meeting that A.T. needed to be in an oral language based classroom. T-314.

Based on all of the testimony, both from the witnesses for the Plaintiffs and the witnesses who testified on behalf of DCPS, it is clear that there was no basis for denying A.T. be classified as Multiplied Handicapped with disability classifications in

10

both HI and SLI.  Additionally, it is clear that there was no basis for denying and in fact un-refuted evidence of A.T.'s need for significantly more services than her 02/02/07 IEP prescribed.  Lastly, the evidence was clear that simply providing A.T. 3 ½ hours of related services and then leaving her to remain at home the rest of the time did not address her significant disabilities or adequately address her educational needs.

**4) The Hearing Officer erred in his determination on the issue of whether the Defendant provided an appropriate placement for A.T.    (Complaint ¶ 17, Count I and Count II specifically address the issues).**

The Plaintiffs proved by a preponderance of the evidence that the IEP developed for A.T. on 02/01/07 was not appropriate.  The evidence supported A.T.'s need to receive significantly more support and to be placed in a classroom.  DCPS' own witness, Ms. Thompson, admitted that she stated at the MDT/IEP meeting that A.T. need to be in an oral language based classroom.  T-314.  Lastly, a review of the IEP developed for A.T. clearly supports the argument that placement proposed for A.T. was not appropriate.  Many of her IEP goals were to be provided by a classroom teacher and were to be addressed and measured in a classroom setting.  AR-173, T-117-119.

## CONCLUSION

Based on the arguments above the Plaintiff requests that this Court deny the Defendant's Motion for Summary Judgment and issue a Summary Judgment for the Plaintiff reversing the June 29, 2007, Hearing Officer's Decision.

Respectfully submitted,

_____/s/_____
Ellen Douglass Dalton, Esq
D.C. Bar No.  411612
_____/s/_____
Paul S. Dalton, Esq
D.C. Bar No. 439118
Dalton & Dalton, P.C.
1008 Pendleton Street
Alexandria, Virginia 22314
(703) 739-4300 (ph)
(703) 739-2323 (fax)

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document with its attachments was filed

electronically on this 29th day of February, 2008.

_____/s/_____
Ellen Douglass Dalton, Esq.

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| SARA & MICHAEL TILLER | : |
| as parents and next friend of the | : |
| minor child, A.T., | : |
| and | : |
| A.T., individually | : |
|  | : |
| **Plaintiffs** | : |
|  | : |
| v. | : |
|  | : Civil Action No. 07-1736 (JR) |
|  | : |
| GOVERNMENT OF THE DISTRICT OF COLUMBIA | : |
| A Municipal Corporation | : |
|  | : |
| **Defendant.** | : |
|  | : |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S**
**STATEMENT OF MATERIAL FACTS**
**AS TO WHICH THERE IS NO GENUINE ISSUE**

Pursuant to Fed .R. Civ. P. Rule 56 and LCvR 7 (h), the Plaintiffs hereby submit

their reply to Defendant's Statement of Material Facts Not In Dispute:

The following numbered paragraphs are paragraphs that the Plaintiffs contend

are in dispute and therefore Plaintiffs do not accept the statements made in these

paragraphs as facts not in dispute.

5.  Defendant's have stated that the River School is not a special education school.

While the River School is a not a "full time special education day school", it can and

does provide, as appropriate, specially designed instruction through either a special

education teacher and/or speech & language pathologist.  T- 423, 424, 431,457.

7.  Defendant's have stated that the team addressed any need for special education

or related services for A.T. as a result of her hearing loss.  The Defendant was adamant at the MDT meeting that A.T. would not be provided an FM system until she reached school age and enters a school age program.  The Defendant further stated that in a pre-school setting it is the ability to access age appropriate skills and not academics. The Defendant further stated that A.T. had no need for special education because she had **no cognitive deficits**.  AR- 170, 171.   In discussing even the disability classification, the Defendant through the statements of one person, Zondra Johnson, took the position that they were the LEA and so what they said was controlling.  The Plaintiffs cannot agree that the team addressed A.T.'s need for special education or related services because the tone of the meeting was not one of a free exchange of ideas but rather one of a dictatorship.

12.  The Defendant has asserted that the River School and A.T.'s mother asked that A.T.'s classification also include a Speech & Language Impairment in addition to the Hearing Impairment.  The Plaintiffs agree with that part of the statement.  However, what Plaintiffs do not agree with is the assertion that this additional classification should result in a full time placement at the River School.  The Defendant has cited to A.R. 160 as support for this statement.  However, no where on document A.R. 160 is there any statement or suggestion that the Plaintiffs were suggesting that this additional classification should result in a full time placement at the River School.  A.R. 160   The Plaintiffs pleaded with the Defendant to consider all of A.T.'s disabilities and not limit her classification to one.  Additionally, the Plaintiffs requested that the Defendant propose a classroom placement to address A.T's significant needs both in the area of hearing and speech, but the defendant refused.  T- 67, 68, 69, 70, 78, 79.  The Defendant confirmed

2

that A.T. would not be provided a placement for the current school year except for her related services (3 ½ hours per week).  T- 417, 418, 419, 542.  The Defendant did not deny that the parent requested a public placement but instead responded that the IEP drives the placement and that the rest of the time beyond the 3 ½ hours per week that the Defendant was willing to provide, the Defendant assumed that A.T. would remain at the River School. T- 551.

14.  A.T.'s mother refused to sign the IEP not only because of the dispute over A.T.'s correct classification but also because the Plaintiffs were worried that the IEP did not offer everything that A.T. needed.  T-67.

16.  Plaintiff's do not agree with this statement and will submit a Declaration.

17.  The Plaintiffs do not agree with the Defendant's recitation of the issues raised in the Complaint.  The Complaint raised four issues:

(1)  Whether DCPS violated A.T.'s rights to a Free Appropriate Public Education (FAPE) by failing to evaluate her in all areas of suspected disability?

(2) Whether DCPS violated A.T.'s rights to a FAPE by failing to determine her eligibility, developing her IEP and determining placement by the time A.T. turned (3) years of age?

(3) Whether DCPS violated A.T.'s rights to a FAPE by failing to develop an appropriate IEP including but not limited to A.T's disability classification as well as the type and amount of services?

(4) Whether DCPS violated A.T.'s rights to a FAPE by failing to provide an appropriate educational placement?  A.R. 194.

22.    Plaintiffs do not agree to this statement. Defendant's reference to the particular part of the record that would purportedly substantiate the statement does not. Dr. Morere, a clinical neuropsychologist, who was accepted as an expert witness did testify that the 3 ½ hours of services was not an appropriate level of intervention even if A.T. was only deaf and did not have the additional handicapping condition of speech & language impairment.  T-115, 116, 117.

24.    Plaintiffs did not sign the IEP because they did not agree that the IEP reflected both of her disabilities and also because they did not agree that it provided all of the services that A.T. required.  T-67

26.  Plaintiffs do not agree that the full time speech & language pathologist provides services to all twelve (12) students in the class.  Ten of the students are typically developing students without IEP's.  T-84,85.  The speech & language pathologist works within the classroom along side a graduate level teacher with those children who have hearing loss to help them access the developmentally appropriate curriculum.

27.  Plaintiffs do not agree that the speech & language pathologists role is a regular education teacher and speech & language pathologist.  The role of the speech & language pathologist is to provide individualized, specialized instruction to the two hearing impaired students in the classroom.  T-455, 456,457,463,465,466.

29.  Plaintiffs do not agree to this statement. Defendant's reference to the particular part of the record that would purportedly substantiate the statement does not. The River School does have a model of inclusion teaching with a graduate level general education teacher as well as a full time speech & language pathologist in the classroom,

4

with the speech & language pathologist providing individualized specially designed instruction for the two hearing impaired students in the classroom.  However, the model is tailored to the individual needs of the students.  T-456, 457

34.  Whether A.T. needs specially designed instruction (speech language pathologist providing specially designed instruction within the classroom) is a central issue in this case and the reason why the Plaintiffs did not accept the proposed IEP or placement. Since this is a central issue in the case and one which is disputed, it is not appropriate as a Statement of Material Fact Not In Dispute.

35.  Whether Hearing Impairment is A.T's primary disability is a central disputed issue in this case and therefore not appropriate as a Statement of Material Facts Not in Dispute.  Both of Plaintiffs' experts opined that A.T.'s language deficits are separate from her hearing loss and require a separate classification.  Both expert further opined that A.T. primary disability is Speech & Language Impairment. T-110,112,113,115, 408. Defendant further states that even if she were classified as having both Hearing Impairment and Speech & Language Impairment, it would not change her IEP goals and objectives.  Plaintiffs have never asserted that it would change her IEP goals or objectives.  The purpose of developing appropriate classifications is so that a student's needs are adequately defined and addressed.  The type and amount of services are the key issues.  Goals and objectives are the statements of achievement that you intend for the student to make during a period of time.  The way that the goals and objectives are achieved are through the type and amount of services that are provided.

36.  Plaintiffs do not dispute Defendant's statement that "a student" can receive speech and language therapy in his or her IEP to achieve their IEP goals without being

5

coded SLI.  However, Plaintiffs again would state that the Defendant's reference to this being true with regard to A.T. is a central issue in dispute in this case and therefore is not an appropriate statement of material fact not in dispute.  T-110,112,113,115, 408.

37.  Defendant's statement is a statement of material fact that is in dispute.  The River School policy is not that all HI students are SLI nor does it program for all of it's students with the same or similar IEP's.  The River School has an inclusion model that provides for a Speech & Language Pathologist in the classroom full time.  However, each student has an individualized plan depending on that student's individual needs determined on a one on one basis.  T-423, 424, 431, 457.

38.  Defendant's reference to the particular part of the record T- 565, 566 that would purportedly substantiate the statement does not. Plaintiffs disagree with Defendant's statement that A.T. did not actually receive 20 hours of push in speech & language therapy or that the River School uses the speech & language pathologist as the classroom teacher.  A.T. did receive 20 hrs. of push in speech & language therapy in the classroom and possibly more.  T-83.  In addition to the full time speech & language pathologist, the River School has a masters level teacher in the classroom. T-455

39.  Defendant's reference to the particular part of the record T-565, 566 that would purportedly substantiate the statement does not.   Plaintiffs dispute this statement for the reasons cited previously.

40.  What A.T. needed at the time that the IEP was developed is clearly an issue in dispute (see Complaint) and Defendant's assertion that this is a material fact not in dispute borders on blatant misrepresentations.

46.  Defendant's statement that the described model is set up for all River School

6

students and was not tailored for A.T. is again a fact in dispute.  T- 423, 424, 431,457.

47.  Defendant's statement that A.T. does not need specialized instruction based on her test scores is also a fact in dispute.  AR-171, T-109,110, 116 through119.

48.  Defendant's statement that A.T.'s primary disability that triggers her IDEIA disability code is HI not SLI is also a fact in dispute for the reasons cited previously.


Respectfully submitted,

_____
Ellen Dalton, Esq
D.C. Bar No. 411612
Paul S. Dalton, Esq.
D.C. Bar No. 439118
Dalton & Dalton, P.C.
1008 Pendleton Street
Alexandria, Virginia 22314
(703) 739-4300 (ph)
(703) 739-2323 (fax)

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **SARA & MICHAEL TILLER**<br>**as parents and next friend of the**<br>**minor child, A.T.,**<br>**and**<br>**A.T., individually** | : <br> : <br> : <br> : <br> : |
| **Plaintiffs** | : <br> : |
| **v.** | : <br> : **Civil Action No. 07-1736 (JR)** |
| **GOVERNMENT OF THE DISTRICT OF COLUMBIA** <br> **A Municipal Corporation** | : <br> : <br> : |
| **Defendant.** | : <br> : |

## DECLARATION OF SARAH TILLER

I, Sara Tiller, do hereby declare under penalty of perjury that the foregoing is true and accurate:

1. I am a citizen of the United States of America, over the age of eighteen (18), and I have personal knowledge of the facts contained herein.

2. I am the mother of A.T.

3. I am familiar with the related services that were proposed by DCPS to be provided at Janney Elementary School (our neighborhood school) and recorded on her 02/01/07 IEP.

4. Shortly after the beginning of the 2006/2007 school year, I met with several individuals from Janney and they advised that they were never consulted about A.T. being placed at Janney and they suggested that I should look at other placements for

A.T., including Key Elementary School.

5. In January, 2008, during a visit to Key Elementary School, Jean Tebinka, a DCPS audiologist and Allison Murtha, a deaf and hard of hearing teacher discussed audiological services that A.T. was to be receiving through DCPS but which had not been happening.

6. Ms. Tebinka suggested that since A.T. was receiving audiological services at the River School maybe she did not need to receive them from DCPS.

7. I replied that I did not want to change any of the services that DCPS was to provide on A.T.'s IEP without a MDT/IEP meeting.

8. They replied that they would document that they spoke to me and I replied that I would document that I spoke with them as well.

9. I disagree with Ms. Woods Declaration that my daughter has received **11/2 hours** of speech and language services a week from a DCPS speech & language pathologist at Janney. She has **never received 11/2 hours** a week at Janney. She has **received 1 hour** a week. She is seen twice a week for 30 minutes each time.

10. In addition to the related services that she has received at Janney, she has continued in a small general education classroom with a teacher and full time speech & language pathologist who provides direct support to A.T. and one other child who is hearing impaired which has significantly contributed to the progress that A.T. has made.

Sarah Tiller, Mother of A.T.

<u>2/27/08</u>
Date

2

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **SARA & MICHAEL TILLER,** | : |
| **as parents and next friend of the minor child,** | : |
| **A.T.** | : |
| **and** | : |
| **A.T., individually** | : |
| | : |
| **Plaintiffs** | : |
| | : |
| **v.** | : **Civil Action No.  07-1736 (JR)** |
| | : |
| **GOVERNMENT OF THE DISTRICT OF COLUMBIA** | : |
| **A Municipal Corporation** | : |
| | : |
| **Defendant.** | : |

## <u>ORDER</u>

Upon consideration of the Plaintiff's Motion for Summary Judgment, and any

opposition thereto, it is hereby

ORDERED: that Plaintiff's Motion for Summary Judgment is GRANTED and

Defendant's Motion for Summary Judgment is denied;

FURTHER ORDERED:  The June 29, 2007, Hearing Officer's Determination is

reversed.

_____                    _____
Date                                               James Robertson
                                                       United States District Judge