**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| **SARA & MICHAEL TILLER,** | : | |
| **as parents and next friend of the minor child,** | : | |
| **A.T.** | : | |
| **and** | : | |
| **A.T., individually** | : | |
| | : | |
| **Plaintiffs** | : | |
| | : | |
| **v.** | : | **Civil Action No.  07-1736 (JR)** |
| | : | |
| **GOVERNMENT OF THE DISTRICT OF COLUMBIA** | : | |
| **A Municipal Corporation** | : | |
| | : | |
| **Defendant.** | : | |

**PLAINTIFFS' REPLY TO
DEFENDANT'S OPPOSITION**

COMES NOW, the Plaintiffs, by and through undersigned counsel, and reply to Defendant's Opposition to Plaintiffs' Motion for Summary Judgment.  Plaintiffs request that this Honorable Court deny Defendant's Motion for Summary Judgment and grant Plaintiffs a summary judgment pursuant to Federal Rule of Civil Procedure 56 (c). Plaintiffs are seeking a reversal of the June 29, 2007 Hearing Officer's Decision which determined that A.T. had not been denied access to a free and appropriate public education.

Plaintiffs have proven by a preponderance of the evidence that the HOD was not supported by the evidence in the record below.  Plaintiffs also respectfully request this Court to consider additional evidence which was in the Defendant's possession at the time of the underlying Due Process Hearing, but not made available or provided to the Plaintiffs.

1) Report by Alison Murtha, DCPS Teacher of the Deaf, dated May 2, 2007.  See Attached Exhibit 4, previously attached to Plaintiffs Statement of Material Facts.

2) Report by Jose Seijas, DCPS Physical Therapist dated February 23, 2007.

This report was previously produced by the Defendant and attached as Exhibit 1 to their Opposition to Plaintiffs' Motion for Summary for Judgment. See Attached Defendant's Exhibit 1.

Plaintiffs also respectfully request this Court to consider additional evidence that came into existence after the Due Process Hearing, but remains relevant to the issues at the time of the hearing.

The IEP and accompanying MDT meeting notes that were developed on 2/07/08. See Attached Exhibit 2, previously attached to Plaintiffs Statement of Material Facts.

<div align="center">ARGUMENT</div>

1.    <u>Standard of Review</u>

Defendant has correctly cited the standard of review of a Hearing Officer's Determination.  Although the burden of persuasion is on the Plaintiffs in this case, the Court must still review the record as a whole and determine if the Hearing Officer's reasoning and decision was supported by the record.  In this case, it is not. Additionally, this Court has held, that the district courts' authority to hear additional evidence at the request of a party and base its decision on the preponderance of the evidence clearly denotes less deference to a hearing officer's determination is due in IDEIA administrative due process hearings than is normally required in administrative hearings.  <u>Hawkins vs. District of Columbia</u>, 2008 U.S. Dist. Lexis 17537.  Plaintiffs request the Court to consider new evidence that has been submitted by both the

<div align="center">2</div>

Defendant and the Plaintiffs.  The Defendant previously submitted a Physical Therapy Initial Evaluation Report dated February 23, 2007, attached to their Opposition to Plaintiffs' Motion for Summary Judgment.  See Attached Defendant's Exhibit 1.  This report was not part of the record below and was not previously produced to the Plaintiffs as attested to by Sarah Tiller in the attached Declaration.  See Attached Exhibit 5.  The Plaintiffs have no objection to the Court considering this report and receiving it as part of the record.   The Plaintiffs were also recently provided with a report dated May 2, 2007 from a District of Columbia Public Schools (DCPS), Deaf & Hard of Hearing Teacher as attested to by Sarah Tiller in the attached Declaration.  This report was in existence at the time of the Due Process Hearing but was never provided to the Plaintiffs until a recent MDT/IEP meeting on May 7, 2008.  This report documents an observation of A.T. at the River School performed by Allison Murtha, M.E.D., CTRS, a Deaf & Hard of Hearing Teacher employed by DCPS.  Ms. Murtha recommended A.T. be placed in an "inclusive classroom environment with small student to teacher ratio that offers opportunities for intensive language instruction in both group and individual situations." See Page 3 of the report attached as Exhibit 4, previously attached to Plaintiffs Statement of Material Facts.   Had the Plaintiffs been provided with a copy of this report, they would have relied on these recommendations in their case in chief in the Due Process Hearing that began on May 9, 2008 and spanned over a period of three days, ending on June 20, 2007.  Clearly, the Defendant's withholding of this crucial recommendation by their own employee which supported the Plaintiffs position at the Due Process Hearing, was not only improper but borders on malfeasance. This report was prepared by a qualified DCPS teacher of the deaf and hard of hearing, an individual

3

with expertise in the educational planning and programing for students with hearing

loss.  Ms. Murtha's recommendation regarding placement for A.T. supported Plaintiffs

position at the Due Process Hearing and completely contradicted the placement

proposed by DCPS and defended by DCPS at the Due Process Hearing.  DCPS

proposed during A.T.'s IEP that she only receive "related services", [occupational

therapy, speech & language therapy and audiology] for a total of 3.5 hours per week.

DCPS proposed for the rest of the time, A.T. be "at home".  DCPS continued to defend

this position at the Due Process Hearing, relying on witnesses who were clearly not

qualified to be experts in the educational programing and placement of students with

hearing loss.  Withholding this valuable information not only deprived A,T.'s parents of

information they were entitled to have but also ultimately deprived A.T. of the benefit of

an appropriate educational placement.  While placement is a team decision and one

person's opinion regarding educational placement does not control, clearly DCPS

should have considered the opinions of their own specialist with regard to the

educational programing and placement of A.T.

The Plaintiffs are requesting the Court to consider the "DCPS Auditory/Oral

Hearing Impaired Program Eligibility for Services" report dated May 2, 2007 attached as

Exhibit 4, previously attached to Plaintiffs Statement of Material Facts, as new and

additional evidence to be considered in this case.  Plaintiffs have met the two prong test

set forth in Board of Edu. Of Hendrick Hudson Central Sch. Dist. V. Rowley, 458 U.S.

176, 206 (1982).  Plaintiffs have proven by a preponderance of the evidence that the

Defendant did not comply with the procedural requirements of IDEIA.  The Defendant

failed to evaluate and determine A.T.'s eligibility by the time she turned three (3) years

4

of age.  Plaintiffs have also proven by a preponderance of the evidence that the IEP

developed by the Defendant and the placement of  "home" proposed by the Defendant

was not reasonably calculated to enable A.T. to receive educational benefit.

2.    <u>The Hearing Officer Erred When He Determined That DCPS Met It's Obligation
      under IDEIA With Regard to the Issue of Evaluating A.T. in all areas of
      Suspected Disability.</u>

       Defendant claims that although there was a current P.T. evaluation in existence

for A.T. , DCPS agreed to perform a new evaluation and did so 23 days following the

MDT/IEP meeting on February 1, 2007.  However, as is evident from the record below,

this P.T. evaluation attached as Exhibit 1 to Defendant's Opposition to Plaintiffs' Motion

for Summary Judgment, was never in the record.  The Defendant further asserts that

A.T.' s mother testified at the Due Process Hearing, that a P.T. evaluation was in

existence.   The record below is clear that A.T.'s mother was referring to the evaluation

conducted by Little Hands & Feet.  T-66, 67.   At the MDT/IEP eligibility meeting

convened on February 1, 2007, the only P.T. evaluation that the team considered was

one that had been performed by Little Hands and Feet, when A.T. was receiving

services under Part C based on her IFSP.  T-66,67; A.R. 162.  The Defendant would not

agree to accept the recommendations of the only P.T. evaluation before the team to

consider at the MDT/IEP eligibility, even though the Defendant had not performed a P.T.

evaluation/ re-evaluation prior to convening her eligibility meeting.  T-66,67. The

Defendant refused to provide P.T. related services on A.T.'s IEP even though A.T. had

been receiving P.T. under her  IFSP.  A.R. 76,83,164.   Instead, the Defendant agreed

to perform their own P.T. evaluation. A.R. 164.  Although, the Defendant now seeks to

introduce a Report dated February 23, 2007, it does not change the fact that the

5

Defendant failed to evaluate A.T. in all areas of suspected disability prior to convening her eligibility meeting on February 1, 2007, even though they were clearly on notice that A.T. had been receiving physical therapy services under her IFSP.  What is even more disconcerting is the fact that although the Report dated February 23, 2007, substantiates A.T.'s need for P.T. services, the Defendant never provided a copy of this report to the Plaintiffs.  In fact, as sworn to in the attached Delaration by Sarah Tiller, See Attached Exhibit 5,  the first time that the Plaintiffs ever saw a copy of the Report was when the Plaintiffs were provided with a copy of Defendant's Opposition with Exhibit 1.  Defendant has not produced any evidence that this Report was ever provided to the Plaintiffs or that Defendant ever made any attempts to convene a MDT/IEP meeting to review this Report and consider the results of the P.T. evaluation.  More glaring is the fact that a subsequent MDT/IEP team convened at Janney Elementary noted that a P.T. evaluation needed to be completed.  See Attached Exhibit 2 MDT meeting notes page 2,   Still to this day, the Defendant has never reviewed the P.T. evaluation with the Plaintiffs at a MDT/IEP meeting and considered whether P.T. services should be added to A.T.'s IEP.  A.T. has gone an entire year without these services and from the Defendant's own report, A.T.'s "Gross Motor Quotient (GMQ) of 74 represents Poor performance."  The Defendant's own report further describes A.T. in this way, "Generally, A.T. presents with reduced ability at utilizing the large muscles to move from place to place, assume a stable posture when not moving, react automatically to environmental changes, and catch or throw objects.  **This information will be shared during A.T's Multidisciplinary Team Meeting, and recommendations for any services she may require will be made at that time."**

See Defendant's Exhibit 1 attached to their Opposition.  Not only did the Defendant fail to provide this important evaluation and report to the Plaintiffs, they further compounded their error by failing to ever convene a MDT meeting to review this evaluation/report.

Defendant cites to one place in the record where A.T's mother stated that she was satisfied with the amount of O.T. and P.T. that the student was receiving.  This was clearly either a typographical mistake or A.T.'s mother mis-spoke.  There is ample evidence in the record below that A.T. was not receiving P.T. services at the River School where she was attending.  T-82.   Janney Elementary School, DCPS' proposed placement for related services only, never provided P.T. services as they were not placed on her IEP.

Lastly, the Defendant argues Plaintiffs contention that the Hearing Officer erred in finding that the Defendant evaluated A.T. in all areas of suspected disability was not raised in the Due Process Hearing below and therefore should not be considered.  There are multiple places throughout the record which support the fact that the Plaintiffs raised and argued this issue in the hearing below.  Defendant cites AR Supplement 66-67 for the proposition that the only mention at the hearing about a  P.T. evaluation not being performed came from Mrs. Tiller in response to *questions raised by the Defendant*.  Defendant's citation to the record does not support their contention.  In fact, at AR Supplement 66-67, Mrs. Tiller is responding to *questions from her own counsel*, *counsel for Plaintiffs*.  Moreover, there are multiple other locations throughout the record, where the Plaintiffs raised their issue of the Defendant's failure to perform a P.T. evaluation on A.T. prior to determining her eligibility.   T- 94,95; T-99,100 and T-445-451.  In addition to the references in the record, the issue of the Defendants failure to

evaluate A.T. in the area of P.T. was also raised in both the opening and closing arguments of counsel.  T-18; T-22,23; T-350; T-358.  The Defendant has by their own admission confirmed that the Defendant failed to evaluate A.T. in all areas of suspected disability when they admit that subsequent to the eligibility determination they evaluated A.T.'s need for physical therapy.  A.T. turned three years old, October 17, 2007.  The Defendant during this Appeal process produced a P.T. evaluation that was performed on February 23, 2007. (Exhibit 1 attached to their Opposition).   The Defendant was required to have determined A.T.'s eligibility for services under Part B and have an IEP in place by the time A.T. turned three (3) years old.  20 U.S.C. 1412 (a) (9).  The Defendant cannot contend that the IFSP served as the IEP as the statute is clear that the only way an IFSP can serve as an IEP beyond the time that the child turns three is for their to have been informed consent obtained from the parents.  There was not informed consent obtained as the Plaintiffs were requesting an IEP.  Although, A.T. was receiving P.T. services under her IFSP, [A.R. 83] and the Defendant was on notice of this fact since at least September 1, 2006, [AR-107], and therefore should have suspected that A.T. may have a disability in the area of P.T., the defendant failed to evaluate A.T. in this area prior to convening her eligibility meeting.   The Defendant refused to accept the recommendations of the only P.T. evaluation in existence at the time of the eligibility meeting [A.R. 164] but made not attempts prior to the eligibility meeting to evaluate A.T.' s need for P.T.  Plaintiffs now learn that even once the Defendant did evaluate A.T's need four (4) months later, they never sent an invitation to convene a MDT meeting to review the results of the P.T. evaluation.  To this day, the Defendant has failed to review the report with the Plaintiffs' or consider in an

appropriately convened Multi-Disciplinary Team meeting, A.T.'s need for P.T. as part of her IEP. Defendant's negligence and violations of A.T.'s right to FAPE are especially egregious given that it is clear from the Defendant's evaluation done in February 2007, that A.T. has gross motor deficits that clearly impact her in an educational setting.

3.    The Hearing Officer Erred when he Found that a Three Month Delay in Creating A.T's IEP did not Result in a Denial of FAPE.

The Defendant argues that although there was a three month delay, there was no educational loss suffered by A.T. For support of this proposition, the Defendant relies on the Hearing Officer's reasoning and conclusion that "the student has been attending the parents' selected 'stay put' private school placement both before and after her 02/01/07 IEP was developed and PWNOP was issued." A.R. 21    The Hearing Officer's conclusion and Defendant's subsequent reliance was faulty as it presumed that since A.T. was attending the "parents' selected 'stay put' private school placement, she was receiving all of the services that she required. The record below was clear that A.T. was not receiving either O.T. or P.T. services at the time of the due process hearing. T-82. For the Defendant to argue that there was no loss of educational opportunity due to the delay in convening her eligibility meeting is not true. A.T. had been without either O.T. or P.T. services.

Additionally, the Defendant claims that the Plaintiffs' own delays contributed to the late IEP meeting and refer to the Defendant's one attempt to convene on December 18, 2008. (Two months after the time when an IEP should have already been in place for A.T.). The Defendant fails to reveal that the Plaintiffs responded to the Defendant's offer of one single day to meet and explained that on that particular date A.T.'s school

was closed and therefore the teachers and other providers necessary for the meeting would not be available. The Plaintiffs' offered to meet the week before the school would be closed, prior to December 18, 2008. T-63. Subsequent to the Defendant's attempt to schedule the meeting for December 18, 2008, the Defendant scheduled a meeting in the month of January but then an hour before the meeting was to be held, Defendant cancelled the meeting. T-65. The Defendant cannot in good conscience argue that the Plaintiffs' contributed to the delay in determining A.T's eligibility. The record below demonstrates the convoluted and difficult process the Defendant put the Plaintiffs' through in order to even register A.T. with the Defendant. T-57-62. This difficult and drawn out process continued through the convening of the eligibility meeting.

The record below and the evidence that the Defendant seeks now to introduce, the Physical Therapy evaluation performed on February 23, 2007 makes clear that A.T. did not receive all of the services that she required and this failure to receive the services was due not only to the Defendant's inaction but also the failure of the Defendant to provide the Plaintiffs' with information for which they had an affirmative duty to provide, the physical therapy evaluation performed on February 23, 2007. The Plaintiffs' have demonstrated by a preponderance of the evidence that the Defendant violated A.T.'s right to FAPE.

4.    The Hearing Officer Erred in Finding that A.T.'s Least Restrictive Educational Placement is "At-Home".

Defendant mis-characterized Plaintiffs' argument when it alleged that, "Plaintiffs' argue that because A.T. allegedly needs 20 hours a week of push-in-speech and language therapy services, DCPS failed to transition A.T. to an appropriate preschool

program by placing her at-home instead of at the River School- the parents' suggested

placement."  Defendant refers to page 10 of the Plaintiffs' Motion for Summary

Judgment to substantiate this statement.  Plaintiffs' Motion for Summary Judgment page

10 does not state what Defendant has alleged.  Plaintiffs' Motion for Summary

Judgment doe not allege that DCPS failed to appropriately transition A.T. because they

failed to place her <u>at the River School</u>.  The Plaintiffs' allege that DCPS failed to

appropriately transition A.T. because they failed to offer her an <u>appropriate public</u>

<u>placement</u>.  Page 10 of the Plaintiffs' Motion for Summary Judgment states, "In fact,

DCPS failed to transition her at all when they determined that her least restrictive

placement was home instead of an <u>appropriate preschool program</u>."

     The Hearing Officer erred when he relied on the testimony of Ms. Johnson,

Supervisor for the Early Childhood Special Education for DCPS and Ms. Thompson,

DCPS' Speech & Language Pathologist.  The testimony provided by Ms. Johnson and

Ms. Thompson relied upon the Defendant is simply not credible nor does it even meet

the standard of competent testimony.  The Defendant contends that both DCPS

witnesses testified that A.T. does not require a full time placement based on her age

and IQ score.  It is elementary knowledge that a decision about eligibility cannot be

determined based on one test.  It is undisputed that many highly intelligent individuals

have disabilities and the degree of those disabilities does not depend on their IQ score.

Educational and adaptive measures of functioning are necessary in order to determine

whether a child is a child with a disability.  Just as elementary is the knowledge that

IDEA applies to children age 3 to 21, and a child cannot be denied services or the

intensity of services required based on their age or IQ.  More insightful is Defendant's

11

reliance on the statement that, "Typically developing children are not in school until 4 years of age. For this age the least restrictive environment could be home." Page 7 of Defendant's Opposition to Plaintiffs' Motion for Summary Judgment. A.T. is far from a typically developing child. A.T. was born premature and contracted bacterial meningitis at two and ½ months of age. T-52. She subsequently was diagnosed as profoundly deaf and later received a cochlear implant. T-54, 55. Her speech & language evaluations have repeatedly revealed her to be significantly delayed T-406 and to be at the 1st percentile in all of the speech & language tests. T-411.

Defendant highlights the testimony by both Ms. Thompson and Ms. Johnson that the River School, where A.T. was attending did not have a plan narrowly tailored to address A.T.'s needs and that all children attending there had similar IEP's and receive 20 hours of push-in Speech & Language services, whether appropriate or not. However, this testimony was rebutted by Mary O'Leary Kane, the Director of Speech & Language services at the River School. Ms. O'Leary Kane has a Masters in Speech & Language Pathology and has expertise within Speech & Language Pathology of working with Deaf and Hard of Hearing students. She has published a number of papers through research grants and has presented at local, national and international conferences. Her entire professional career has centered on the treatment of students with deafness and cochlear implants. T-383-395. Defendant's counsel questioned Ms. O'Leary-Kane about the number of students who were receiving 20 hours of Speech & Language push in services. Ms. O'Leary Kane responded, "There are 35 kids in the building that have either deaf or hard of hearing, but it depends on their IEP, the amount of services that each child gets, it's determined on a one-one basis. T-423, 428.

12

5.    The Hearing Officer erred when he found Ms. Thompson Qualified to Review A.T.' Speech & Language assessment, and to Render Opinions on the appropriate services and placement for A.T.

Ms. Thompson, witness for DCPS,  had neither the qualifications nor the experience with children like A.T. to provide valid and useful expert opinions.  The Hearing Officer further erred when he concluded Ms. Thompson to be an expert since she had expertise in the area of speech & language despite the fact that she had no expertise in the area of deafness or children with cochlear implants.  The Hearing Officer contradicted himself when he ruled that Ms. Thompson was qualified as an expert witness on the basis that the issue in the case was not about the treatment of children with cochlear implants.  T- 284-285.  Earlier, during the voir dire and determination of qualifications of Ms. O'Leary Kane to testify as an expert witness, the Hearing Officer concluded that she was qualified due to her expertise in treating children with cochlear implants and that the treatment of children with cochlear implants was the key issue in this case.  T- 395.  The Hearing Officer's subsequent contradiction of his earlier ruling clearly shows his bias and preferential treatment of the DCPS witnesses.  Moreover, a review of the questions that the Hearing Officer asked of the witness, Ms. O'Leary-Kane regarding whether or not she considered herself an advocate for the student or an expert witness T-391-395, in contrast to his lack of similar treatment of the DCPS witnesses T-284-285, reveals his bias and thus his findings on the credibility of the witnesses is not valid and little if any deference should be given to his determination.  K.S. by P.S. and M.S. vs. Fremont Unified Sch. Dist., 49 IDELR 182 (N.D. Cal. 2008).  The very fact that Ms. Thompson did not believe that a

13

Hearing Impaired Student can have a separate disability of Speech & Language Impairment, is proof that she is not qualified to render opinions as an expert in this case. T-300.  Additionally, she testified that at the time of the hearing she had only been evaluating and assessing students who were of the early childhood ages of 3-5 for 2 ½ years.  T-279.  She also testified that most of her work with individuals that have apraxia had been with adults.  T-314.  Moreover, Ms. Thompson admitted that the IEP developed by DCPS, listed goals within the IEP that were to be provided by a classroom teacher, yet DCPS proposed no class placement.  T-305; T-313.  At the hearing, Ms. Thompson further admitted that at the MDT/IEP meeting she expressed the view that A.T. needed to be in an oral language based classroom.  T-313; 314.

Defendant also argue that the Plaintiffs' case is based on the parents desire to have the best opportunities for their child and their desire to have A.T. attend the school where Mrs. Tiller works as a science teacher and has three other children enrolled. However, what that Defendant does not disclose is that the Mrs. Tiller only began working at the River School in order to receive some financial assistance.  T-71.  Mrs. Tiller further testified that she was planning on enrolling her daughter, Katherine in Janney Elementary School, their neighborhood school next year and the reason why her other children had been attending the River school was because A.T. needed to be there since DCPS had not proposed a placement for A.T. T-74.  It is clear from the record in the hearing below, that A.T.'s parents were open to an appropriate public placement and on multiple occasions requested DCPS to provide one.  DCPS chose not to offer an appropriate public placement and therefore cannot now argue that Plaintiffs only wanted A.T. to attend the River School.

While IDEIA does not require education judgments to be designed according to the parent's desires, IDEIA does require that a child be provided with a free appropriate public education.  The services that DCPS proposed of 3 ½ hours of related services with the rest of the time A.T. being at home cannot be considered an appropriate education for A.T. based on A.T.'s documented disabilities.

CONCLUSION

Plaintiffs have demonstrated that the Hearing Officer erred in finding that DCPS met its obligations under IDEIA to provide A.T. with a free appropriate public education. Therefore, Plaintiffs request that this Court grant their Motion for Summary Judgment, reverse the June 29, 2007 Hearing Officer's decision and Order DCPS to place and fund A.T.'s attendance at the River School retroactively from October 17, 2006.

Respectfully submitted,

_____/s/_____
Ellen Douglass Dalton, Esq
D.C. Bar No.411612
Paul S. Dalton, Esq.
D.C. Bar No. 439118
Dalton & Dalton, P.C.
1008 Pendleton Street
Alexandria, Virginia 22314
(703) 739-4300 (ph)
(703) 739-2323 (fax)

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document with its attachments was filed electronically on this 30th day of April,  2008.

_____/s/_____
Ellen Douglass Dalton, Esq.

15



### Central Assessment Referral and Evaluations (C.A.R.E.) CENTER

Office of Special Education
(Located at Shaw Junior High School)
925 Rhode Island Avenue, NW
Washington, DC 20001
(202) 671-0882



## PHYSICAL THERAPY INITIAL EVALUATION REPORT

### SECTION I. IDENTIFYING INFORMATION

**Patient/Client:** A▆▆ T▆▆
**Chronological Age:** 3 years 4 months (40 months)
**Parents:** Sarah and Michael Tiller
**Date of PT Evaluation:** 02/23/2007
**Evaluator:** Jose F. Seijas, PT

**Date of Birth:** ▆▆/2003
**ID#**
**Date of Report:** 02/23/2007

### SECTION II. GENERAL INFORMATION, MEDICAL HISTORY (INCLUDE BIRTH HISTORY AND SURGICAL PROCEDURES) AND REASON FOR REFERRAL:

A▆▆ is a 3-year-4-motnh old female who was referred for a Physical Therapy evaluation by the Multidisciplinary Team to determine her current gross motor skills status as part of the process for establishing eligibility for Shool-Based Physical Therapy services in the DC Public Schools System.

She is the product of a 37-weeks gestation, and was born via c-section secondary to a prolapsed umbilical cord. She has a twin sister who was born vaginally. She presented with mild jaundice at birth, and experienced bacterial meningitis at 2 ½ months of age. She was diagnosed with sensorineural hearing loss by the 15th month of age. She received a cochlear implant in February 2005, with activation in March of the same year.

She currently receives speech and language and Occupational Therapy services at River School. She was evaluated by Pamela D. Brown-White (Physical Therapist) on 07/13/06, who recommended direct physical therapy treatment. A▆▆ was seen by the physical therapist twice, however services ceased secondary to her achieving the age of three, according to information provided by Amy Moldoon.

Defendant's Exhibit 1

Physical Therapy Initial Evaluation Report                    2

Anna Tiller
D.O.B.. 10/17/2003    Age: 3 years 4 months (40 months)


## SECTION III. ASSESSMENTS USED/RESULTS:

- Peabody Developmental Motor Scales-2 Gross Motor Subtests.
- Clinical Observations
- Record Review
  - Comprehensive Developmental Assessment, performed by Pamela D. Brown-White, PT on 07/13/06.
  - IFSP (Individualized Family Service Plan) dated 07/13/06.


**Clinical Observations:**
A▬ was evaluated at her school. She accompanied the evaluator to the evaluation area willingly and smiling. She participated in all the evaluations items she was engaged in. She was observed to walk with a fairly accurate heel to toe pattern, with good balance/speed.

**Interactive/Social Skills:**
*Tracking/Focusing/Eye Contact:*
She was attentive and alert to the examiner, and was able to establish and effectively maintain eye contact with him.

*Attention/Alertness/Reaction to Stimulation:*
A▬ did not appear to demonstrate any difficulties tolerating handling when placed into different positions.


**Neuromotor/Musculoskeletal** (having to do with the brain, nerves, muscles and bones):
A▬ Muscle Tone (*the resistance felt to movement or the tension in the muscles at rest*) is slightly decreased throughout her arms, trunk and legs.
Her Passive Range of Motion (*PROM – the amount of movement reached at a joint with help*) is within functional limits in all her joints.
Muscle Strength: *The ability of a muscle to produce force, which may result in the production or prevention of movement.* Formal muscle testing of A▬ was not performed due to her not yet totally developed ability to follow specific instructions required to complete a muscle strength test, however it could be said that her overall muscle power is within the functional limits.


**Description of the PDMS-2:** The Peabody Developmental Motor Scales-Second Edition (PDMS-2) is composed of six subtests that measure interrelated abilities in early motor development. It was designed to assess gross and fine motor skills in children from birth through five years of age.

*Gross Motor Skills (Gross motor skills are the bigger movements — such as running, jumping and throwing and catching a ball — that use the large muscles in the arms, legs, torso, and feet. They require balance and coordination)*

*Reflexes (Re): This subtest measures aspects of a child's ability to automatically react to environmental events. Because reflexes typically become integrated by the time a child is 12 months old, this subtest is given only to children ages 2 weeks through 11 months.*

Physical Therapy Initial Evaluation Report                                    3



D.O.B. ___/___/2003   Age: 3 years 4 months (40 months)

*Stationary (St): This subtest measures a child's ability to sustain control of the body within its center of gravity and retain equilibrium.*

*Locomotion (Lo): This subtest measures behaviors that children use to transport themselves from one place to another, such as crawling, walking, running, hopping, and jumping forward.*

*Object Manipulation (Ob): This subtest measures a child's movements needed to catch and throw objects. Because these skills do not become apparent until a child reaches 11 months of age, this subtest is only given to children ages 12 months and older.*

*Grasping (Gr): This subtest measures a child's ability to use his or her hands. It begins with the ability to hold an object with one hand and progresses up to actions involving the controlled use of the fingers of both hands to button and unbutton garments.*

*Visual-Motor Integration (Vi): This subtest measures a child's ability to use his or her visual perceptual skills to perform complex eye-hand coordination tasks such as reaching and grasping for an object, building with blocks, and copying designs.*

**Note**: Only the first four (4) subtests will be considered for the purpose of this evaluation, as they relate to his gross motor functioning, therefore a Total Motor Quotient (TMQ) will not be obtained.

***Gross Motor Quotient (GMQ):*** *This quotient measures the ability to utilize the large muscle systems to move from place to place, assume a stable posture when not moving, react automatically to environmental changes, and catch/throw objects. Children with well-developed gross motor abilities make high scores on this composite. These children would have above average movement and balance skills. They are likely to be children who could be described as agile, well coordinated, and graceful in their movements. Low scores are made by children those who have weak movement and balance skills. These children may have difficulty in learning to crawl, walk, and run. A deficit in gross motor abilities can be mild and the child's movements may be described as clumsy and uncoordinated. More severe gross motor problems may limit a child's use of their legs to such a degree that they will need assistance to move from place to place.*

## SECTION IV. RECORD OF PDMS-2 SUBTEST SCORES, AND RECORD OF GROSS MOTOR QUOTIENT SCORE

| Subtest | Raw Score | Std. Score | Percentile Rank | Age Eq. Months | Rating |
|---------|-----------|------------|-----------------|----------------|--------|
| Reflexes (Re) | - | - | - | - | - |
| Stationary (St | 39 | 6 | 9 | 21 | Below Average |
| Locomotion (Lo) | 108 | 5 | 5 | 24 | Poor |
| Object Manipulation (Ob) | 25 | 7 | 16 | 29 | Below Average |

02/21/2008 12:28 FAX                                                                      ☑006/008

Physical Therapy Initial Evaluation Report                                4

A___ T___
D.O.B.: ___/2003    Age: 3 years 4 months (40 months)

| Subtest | Ability Measured |
|---|---|
| Reflexes (Re) | Reaction to environmental events |
| Stationary (St) | Center of gravity and equilibrium |
| Locomotion (Lo) | Transfer from one base of support to another |
| Object Manipulation | Throwing, catching, and kicking of objects |

*Raw Score*: Total points a child receives on each subtest. The significance of this score is limited to research purposes.
*Age equivalent*: This is the "motor age" of the child that corresponds to a raw score obtained on a subtest. The significance of this result is controversial and is used with some caution.
*Percentile*: This is the percentage of children that the child being tested performed better than or performed at the same level (e.g. if the percentile is 67 the child performed at the same level or better than 67% of the standardized sample).
*Standard Scores:* Subtest standard scores are converted from raw scores. Standard scores are used in the PDMS-2 that were computed from the raw scores of the children tested in the standardization sample.

**Gross Motor Quotient:** This is derived from the standard scores of the subtests. This value is a measure of a child's gross motor development.

| Quotient | Sum of Std. Scores | Quotient Score | Percentile Rank | 95% Interval | Rating |
|---|---|---|---|---|---|
| Gross Motor (GMQ) | 18 | **74** | 4 | 66-82 | Poor |

*Percentiles, Standard Scores, Gross and Fine Motor Quotients are the results mainly used to interpret a child's' ability, and to measure any progress made from one test to the other.*

## SECTION V. IMPRESSIONS AND RECOMMENDATIONS:

A___ was able to:
- Maintain balance for five seconds while kneeling and rotating head.
- Walk up 4 steps placing one foot on each step using the rail for support.
- Walk down four steps using only the examiner's finger for support.
- Run 30 ft. in approximately 9 seconds, stiffly.
- Kick a stationary playground-sized ball forward 8-9 feet without deviating more than 20 degrees to either side of midline. She performed this task with her right lower extremity, and emerging knee flexion/hip extension.
- Throw a ball overhand so that it travels seven feet forward in the air.
- Bring her arms toward chest in effort to catch after a playground-sized ball contacts her arms and hands. The ball was tossed from 5 feet away.

Physical Therapy Initial Evaluation Report                                    5

A▬ T▬▬
D.O.B.: ▬▬▬/003    Age: 3 years 4 months (40 months)

A▬▬ was not able to:

- Stand on one foot with hands on hips for three seconds.
- Jump down from a 12-21 inches height.
- Underhand throw a tennis ball, and hit a target located 5 feet away, 2 of 3 trials.
- Throw a ball overhand so that it travels seven feet forward in the air.

## Summary

A▬▬ is a student that ambulates independently on even surfaces while carrying small objects, and needs close supervision while ascending/descending the stairs of her school. Her muscle tone, overall strength and range of motion are within the functional limits. A▬▬ Gross Motor Quotient (GMQ) of 74 represents Poor performance. Strictly speaking, the GMQ is a numeric representation of A▬▬'s overall performance on three subtests for children 1 through 5 years old (i.e., Stationary, Locomotion, and Object Manipulation).

Generally, A▬▬ presents with reduced ability at utilizing the large muscle systems to move from place to place, assume a stable posture when not moving, react automatically to environmental changes, and catch or throw objects.

This information will be shared during A▬▬ Multidisciplinary Team Meeting, and recommendations for any services she may require will be made at that time.

## *School-based Physical Therapy:*

*In medical clinics, physical therapists (PTs) typically assess their clients' impairments, which might influence movement behavior, such as pain, muscle strength, endurance, etc. Treatment objectives focus on reducing impairments and improving function. In schools, physical therapists identify impairments and functional limitations, which interfere with students' ability to participate fully in the educational program.*

*School-Based Physical Therapy as an educational support service focuses on removing barriers from the students' ability to learn. It helps students develop skills, which increase their independence in the school environment, and improves students' performance in school classrooms, hallways, playground, physical education and other areas that may be part of their educational program. The physical therapist works to help students function better in classrooms, the lunchroom, or restrooms and may work with school personnel on adapting or modifying their seating and other equipment/materials. Therapists work in a supportive role, working closely with teachers, to promote the highest level of function possible for students pursuing educational goals. The Physical Therapist plans and implements programs that will help students meet their educational goals and objectives and benefit from special education services. The therapist is concerned with facilitating the child's overall performance in the classroom, considering the student's developmental level and physical disability. Services are provided to enhance independent functioning and may include positioning, strengthening, modifications and adaptations to the environment. Although medical concerns are significant, rehabilitation is not the focus of school-based physical therapy. School PTs assess students' functional performance during the school day, rather than conduct "impairment specific" examinations. School therapy intends to help students and teachers compensate for and accommodate students' impairments so that students can*

Physical Therapy Initial Evaluation Report                              6

A T
D.O.B.: 2003    Age: 3 years 4 months (40 months)

*participate in school as much as possible. Also the school-based physical therapist instructs parents, students and teachers about precautions that students with disabilities need to take at school, and advises parents about what they can do at home to maintain or promote educational performance of their children, including incorporating equipment, positioning, and exercise into family routines and activities. Other scope of school-based physical therapy is to establish a line of communication with therapists and physicians who are seeing the student in a medical clinic.*

Thank you for the opportunity to work with A       Please do not hesitate to contact me in case you had any questions regarding to this report.

Jose F. Seijas, PT
School-based Physical Therapist

**Exhibit 2**

DRAFT

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, D.C.
INDIVIDUALIZED EDUCATIONAL PROGRAM

| DCPS - IEP  Page 1 of 4 |
| --- |
| Additional Comments: ☐ |

## I. IDENTIFICATION INFORMATION

### II. CURRENT INFORMATION

Date of IEP Meeting: 2/4/2008

Date of Last IEP Meeting: 2/1/2007

Date of Most Recent Eligibility Decision: 9/26/2007

Student Name: Last **Tiller**   First **Anna**   MI

Student ID **9226868**   Soc. Sec. No. **130925213**   Age: **4**   Grade **43**

Gender ☐ M ☒ F   Date of Birth **10/17/2003**   Ethnic Group **White**

Address **4515**   Garrison St NW   NW

House No.   Street Name   Quadrant   Apartment #

Washington   DC   20016

City   State   Zip Code

☐ Non-attending

Attending School **Early Childhood**   Home School

☒ Elem. ☐ Mid/JHS ☐ SHS ☐ CWS /

Parent   **Mr. and Mrs. Tiller**

Address of (if different from student):   ☒ Parent ☐ Guardian ☐ Surrogate

House No.   Street Name   Quad   Apt. No.   City   State   Zip Code
Telephone: Home **2022371150**   Work

Purpose of IEP Conference:
☐ Initial IEP   ☒ Review of IEP
☐ Requested Eval.   ☐ 3yr ReEval.

Indicate Level of Standardized Assessment:
Level III

ADDENDA TO BE ATTACHED AS NEEDED
Check the appropriate box(es)

| ☐ | BEHAVIOR | ☐ | TRANSPORTATION |
| --- | --- | --- | --- |
| ☐ | ESY | ☐ | TRANSITION |

## III. LANGUAGE

| | Language | Language Used for Evaluation | Language Used in Conference | Communication Requirements | To be completed by Office of Bilingual Education English and Math Proficiency Assessment |
| --- | --- | --- | --- | --- | --- |
| Student | English | English | English | Native Language | Oral |
| Parent | English | English | English | Native Language | Rdg./ Written |
| Home | English | English | English | Native Language | Instrument: |
| | | | | | Date: |

## IV. SPECIAL EDUCATION AND RELATED SERVICES SUMMARY

| SERVICES | SETTING GenEd | | | SpecEd | | | FREQUENCY | | PROVIDER (by discipline) | BEGINNING DATE mm/dd/yyyy | DURATION # | wks/mos |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | Ses. | Time | Total | Ses. | Time | Total | Hr./ Min | D/W/M | | | | |
| Speech-Language | 1 | 14 | 14 | 2 | 1 | 2 | Hrs | Week | Speech and Language Thera | 2/6/2008 | 10 | Month |
| Occupational Therapy | 0 | 0 | 0 | 2 | 30 | 60 | Mins | Week | Occupational Therapist | 2/6/2008 | 10 | Month |
| Specialized Instruction | 1 | 14 | 14 | 0 | 0 | 0 | Hrs | Week | Hearing Teacher | 2/6/2008 | 10 | Month |
| Audiology | 1 | 15 | 15 | 1 | 15 | 15 | Mins | Week | Audiologist | 2/6/2008 | 10 | Month |
| Occupational Therapy | 1 | 30 | 30 | 0 | 0 | 0 | Mins | Month | Occupational Therapist | 2/6/2008 | 10 | Month |

TOTAL HOURS: **28.375**   **3.25**   Total Combined Hours Per Week:

## V. Disability(ies) Multiple Disabilities, Hearing Impaired (inc.deaf) SLI

Percent of time in Specialized Instruction and Related Services
☐ 0-20% ☐ 21-80% ☒ 81-100%

☑ (Check if setting is general Ed.)

Percent of time NOT in a General Education Setting   10%

## VI. IEP TEAM (Participants in the development of the IEP)

Print and sign your name below.

Mr./Mrs. Tiller
Parent/Guardian

Allison Mustha, MFD, CTRS   Auditory/oral teacher of the Deaf
Student

Shellie Wood, Ph.D.
Special Ed

Toni Carroll
Speech Therapist

Katie Copps
General Ed Teacher

Julianne Lull   OTR/L
OT Therapist

Shellie Wood
LEA Representative

Jennifer Mertes   Counsel for Parent

Scott Cartland
Principal or Designee

Kimberly Aak   NACC-SLP

☑ I AGREE with the contents of this IEP. I have had an opportunity to be involved in the development of this IEP. I have received a copy of this IEP and consent to the implementation of the services in this IEP. I have received a copy of the procedural safeguards and parent rights pertaining to special education.

Parent/Guardian Signature   Date 2/12/08

Plaintiffs Exhibit 2

| | | | | DCPS - IEP |
|---|---|---|---|---|
| Student Name | Anna | Tiller | Managing School Janney Elementary | Page 2 of 4 |
| Student ID Number 9226868 | | DOB 10/17/2003 | Attending School Early Childhood | |

## VII. Present Educational Performance Levels in Areas Affected by the Disability

Additional Comments: ☐

**Academic Areas: (Evaluator)** Katy Copps, Teacher

Math Strengths:

Has adequate understanding of number concepts

Impact of disability on educational performance in general education curriculum:

Difficulty with use of language impacts her ability to grasp particular concepts in math

Reading Strengths:

Has good listening comprehension and understanding of a story

Impact of disability on educational performance in general education curriculum:

Phonemic awareness and sound recognition/blending impacted by disability

Score(s) When Available

| | |
|---|---|
| Math Cal. | n/a |
| Math Rea. | n/a |
| See goal page: | 3 |
| Date: | 2/6/2008 |
| Rdg. Com | n/a |
| Rdg. Basic | n/a |
| Written Ex. | n/a |
| See goal page: | 4 |
| Date: | 2/6/2008 |

**Communication (Speech & Language) (Evaluator)** Kim Sak, Speech Therapist

Strengths:

Emerging language skills -- friendly outgoing demeanor

Impact of disability on educational performance in general education curriculum:

Decreased coordination, strength and range of motion (apraxia) and difficulty with expressive and receptive language impact ability to access curriculum.

Score(s) When Available

| | |
|---|---|
| Exp. Lang. | n/a |
| Rec. Lang. | n/a |
| Artic | n/a |
| Voice | n/a |
| Fluency | n/a |
| Exp. Voc. | n/a |
| Rec. Voc. | n/a |
| See goal page: | 1 |
| Date: | 10/26/2007 |

**Motor/Health (Evaluator)** Jose Seijas, PT ; Wanda Banks OTR/L

Strengths:

walks independently on even surfaces; holds one-leg stance with 2 hand support

Impact of disability on educational performance in general education curriculum:

Decreased dynamic balance, postural control and propulsion/reception skills negatively impact participation in educational activities

Score(s) /Results When Available

GM ss 9

FM ss 11

| | |
|---|---|
| See goal page: | 2 |
| Date: | 10/11/2006 |

**Social Emotional Behavioral Areas: (Evaluator)**

Strengths:

Impact of disability on educational performance in general education curriculum:

Score(s) When Available

See goal page:

Date:

**Cognitive/Adaptive Behavior: (Evaluator)**

Strengths:

Impact of disability on educational performance in general education curriculum:

Score(s) When Available

See goal page:

Date:

**Prevocational Skills: (Evaluator)**

Strengths:

Impact of disability on educational performance in general education curriculum:

Score(s) When Available

See goal page:

Date:

| Student Name    Anna        Tilier | Managing School  Janney Elementary | DCPS - IEP |
|---|---|---|
| Student ID Number 9226868     DOB  10/17/2003 | Attending School  Early Childhood | Page 4 of 4 |

Additional Comments: ☐

## IX. LEAST RESTRICTIVE ENVIRONMENT (LRE) DETERMINATION
### SERVICE ALTERNATIVES

Can curricular modification, accommodation and/or supplemental aids and services be used for a LRE setting in general education? ☒ Yes ☐ No

Explanation for removal out of regular education classroom.

## X. Supplementary Aids and Services

| Classroom Needs (Do not name products or companies.) | SETTING GenEd | SETTING SpEd | Total | FREQUENCY Hr./Min | FREQUENCY D/W/M | PROVIDER (by discipline) | BEGINNING DATE (mm/dd/yyyy) |
|---|---|---|---|---|---|---|---|
| Amplification equipment | 28 | 4 | 32 | Hrs | Week | audiologist | 2/7/2008 |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

Check and list modifications and/or accommodations for testing:    ☐ None needed

Timing/Scheduling: Extra breaks during test
Setting: Special seating/proximity to monitor
Presentation:
Response:
Equipment: Amplification equipment

## XI. STATE AND DISTRICT ASSESSMENTS:

☐ Level I   Tested with non-disabled peers under standard conditions without accommodations.

☒ Level III  (Describe non-uniform conditions for level III) Tested under non-standard conditions with permissible accommodations

☐ Level V   Portfolio:

☐ Level II  (Describe accommodations for level II) Tested under standard conditions with special accommodations.

☐ Level IV  (Describe the alternative assessment!)

## XII. Areas Requiring Specialized Instruction and Related Services:

☐ Reading
☐ Mathematics
☐ Written Expression
☒ Other:  Academic Readiness
☐ None

☒ Physical/Sensory
☐ Social Emotional
☐ Physical Development
☒ Speech/Language

☐ Transition
☐ Vocational
☐ Independent Living

### Modifications:
☒ Language Arts/English
☐ Social Sciences
☐ Biological & Physical Sciences
☐ Fine Arts

Apply annual goal(s), objectives and/or modifications to address barriers in each area checked above.

## XIII. PLACEMENT CONSIDERATIONS AND JUSTIFICATION

| DESCRIBE CONSIDERATIONS | ACCEPT/REJECT REASONS | POTENTIAL HARMFUL EFFECTS |
|---|---|---|
| Combination General Education and Resource Classroo | Rejected | |
| In General Education Classroom Setting | Accepted | Possibility of missing academic instruction during |
| Out of General Education Classroom | Rejected | |

Modification(s)/Accommodation(s) to address the harmful effects:

Specific scheduling to accommodate for related service sessions

| | | | | DCPS - IEP |
|---|---|---|---|---|
| Student Name | Anna | Tiller | Managing School | Janney Elementary | Page 3 of 4 |
| Student ID Number | 9226868 | DOB 10/17/2003 | Attending School | Early Childhood | |

Goal Number: 1

**VIII SPECIALIZED SERVICES**    Additional Comments: ☐

Area addressed by goal: Motor/Health

**ANNUAL GOAL: (including mastery criteria )**

Improve sensorimotor skills for greater academic success as evidenced by meeting the following objectives with 80% accuracy.

Provider(s): Occupational Therapist

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| Maintain an upright seated position with adaptive equipment as needed during a table top activity for 15 minutes 4/5 trials. | | Monthly |
| Safely access 75% of playground equipment while completing a 3-4 step obstacle course 4/5 trials. | | Monthly |
| Copy basic forms (horizontal line, vertical line, circle, square and cross and eventually diagonal line, X and triangle) with adequate proportion 4/5 trials. | | Monthly |
| Completely color basic shapes with 1/4 inch outlines without deviating from the boundaries more than 1/4 inch 4/5 trials. | | Monthly |
| Cut basic shapes (square, triangle, circle) with 1/4 inch thick outlines without deviating more than 1/2 inch 4/5 trials using proper grip on the scissors and her "helper" hand to mainpulate the paper. | | Monthly |
| Utilize a dynamic tripod grasp on a writing tool with intrinsic hand muscle movement to operate the tool 50% of the time during a coloring/ drawing activity 4/5 trials. | | Monthly |

**EVALUATION PROCEDURE(S)**

☐ Portfolio  ☐ Log  ☐ Chart  ☐ Test  ☒ Documented Observation  ☐ Report  ☒ Other  work samples

| | | |
|---|---|---|
| Student Name  Anna  Tiller | Managing School  Janney Elementary | DCPS - IEP Page 3 of 4 |
| Student ID Number  9226868    DOB 10/17/2003 | Attending School  Early Childhood | |

**VIII. SPECIALIZED SERVICES**   Additional Comments: ☐    Goal Number: 2

Area addressed by goal:  Motor/Health

**ANNUAL GOAL: (including mastery criteria.)**

Improve sensorimotor skills for greater academic success as evidenced by meeting the following objectives with 80% accuracy.

**Provider(s):** Occupational Therapist

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| Maintain crossed leg or kneeling position while participating in a floor based activity 4/5 trials. | | Monthly |
| Navigate around stationary obstacles in the room without bumping into or tripping over them more than 2 times 4/5 trials. | | Monthly |
| Utilize both hands (one as a stabilizer and one to manipulate tool/ object) during a fine motor/ drawing/ coloring activity 4/5 trials. | | Monthly |
| Utilize good motor planning/ bilateral coordination/ crossing midline in order to complete a functional task in the classroom 8/10 trials. | | Monthly |
| Copy capital letters L,F,E,H,T,I with adequate formation, size, spacing and line orientation 4/5 trials. | | Monthly |
| Maintain focus and attention to a classroom activity until completion with minimal verbal and/or visual cues 8/10 trials. | | Monthly |

**EVALUATION PROCEDURE(S)**

☐ Portfolio  ☐ Log  ☐ Chart  ☐ Test  ☒ Documented Observation  ☐ Report  ☒ Other  work samples

| Student Name | Anna | Tiller | Managing School | Janney Elementary | DCPS - IEP |
|---|---|---|---|---|---|
| Student ID Number | 9226868 | | Attending School | Early Childhood | Page 3 of 4 |
| | | DOB 10/17/2003 | | | |

**VIII SPECIALIZED SERVICES**    Additional Comments: ☐    Goal Number: 3

Area addressed by goal: Communication

**ANNUAL GOAL: (including mastery criteria.)**

Anna will develop receptive and expressive language skills to 80% accuracy using appropriate modalities over 4 consecutive sessions with verbal and visual cuing as needed.

Provider(s): Speech and Language Therapist, Audiologist, Hearing Teacher, Home Based Teacher

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| Anna will comprehend the quantitative concepts of one, some, and all in 3/4 trials | | Monthly |
| Anna will answer "what where, and who" questions in 3/4 trials | | Monthly |
| Anna will spontaneously use 5 new theme-related vocabulary words per week | | Monthly |
| Anna will follow 2-3 step directions in 3/4 trials w/ minimal visual cues | | Monthly |
| Anna will identify common objects based on attribute or function in 3/4 trials | | Monthly |
| Anna will use progressive verb tense to describe actions 3/4 trials. | | Monthly |

**EVALUATION PROCEDURE(S)**

☐ Portfolio   ☒ Log   ☐ Chart   ☐ Test   ☒ Documented Observation   ☐ Report   ☐ Other _____

| Student Name  Anna         Tiller | Managing School  Janney Elementary | DCPS - IEP Page 3 of 4 |
|---|---|---|
| Student ID Number  9226868        DOB  10/17/2003 | Attending School  Early Childhood | |

| VIII, SPECIALIZED SERVICES | Additional Comments: ☒ | Goal Number: | 4 |

Area addressed by goal:  Communication

**ANNUAL GOAL:** (including mastery criteria.)
Anna will develop receptive and expressive language skills to 80% accuracy using appropriate modalities over 4 consecutive sessions with verbal and visual cuing as needed.

Provider(s): Speech and Language Therapist, Audiologist, Hearing Teacher, Home Based Teacher

| Consider audience, behavior, condition, degree and evaluation.<br>SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| Anna will use 3-4 words per utterance to communicate requests and questions 3/4 trials | | Monthly |
| Anna will use pronouns (he, she, her, him) w/ 80% acc | | Monthly |
| Anna will increase jaw and tongue strength and stability w/ 80% acc | | Monthly |
| Anna will differentiate her tongue from her jaw 3/4 trials | | Monthly |
| Anna will increase tongue elevation and mobility w/ 80% acc | | Monthly |
| Anna will repeat syllable patterns and words of increasing length w/ 80% acc | | Monthly |

**EVALUATION PROCEDURE(S)**

☐ Portfolio  ☒ Log  ☐ Chart  ☐ Test  ☒ Documented Observation  ☐ Report  ☐ Other _____

| Student Name: Anna    Tiller | Managing School: Janney Elementary | DCPS - IEP |
|---|---|---|
| Student ID Number: 9226868    DOB 10/17/2003 | Attending School: Early Childhood | Page 3 of 4 |

Goal Number: 5

**VIII. SPECIALIZED SERVICES**    Additional Comments: ☒

Area addressed by goal: Academic Areas: Reading

**ANNUAL GOAL: (including mastery criteria.)**

Will improve phonemic awareness to develop literacy skills as measured by mastering the following objectives using 80% mastery criteria unless otherwise indicated.

Provider(s): Hearing Teacher, Special Education Teacher/Resource, Speech and Language Therapist

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| Will identify letters and sounds through symbol system (90%) | | Quarterly |
| Will blend 3-4 sounds | | Quarterly |
| Will correctly match sound to letter and letter to sound (50%) | | Quarterly |
| Will Identify pictures of common objects and theme-related vocabulary 3 out of 4 trials | | Quarterly |
| Will Retell a story during classroom activities providing beginning, middle and end (50 %) | | Quarterly |
| Will answer comprehension questions with visual cues in 3 out of 4 opportunities | | Quarterly |

**EVALUATION PROCEDURE(S)**

☒ Portfolio   ☐ Log   ☐ Chart   ☐ Test   ☐ Documented Observation   ☐ Report   ☐ Other _____

IEP Continuation Page

District of Columbia Public Schools
Division of Special Education
Washington, D.C.

## IEP CONTINUATION PAGE

Student Name _Anna_ _Tiller_    DOB _10/17/2003_ DATE _____

Student ID Number _9226868_    Managing School _Janney Elementary_

Attending School _Early Childhood_

INSTRUCTIONS: Use this addendum when additional space is needed on an IEP section or part. Enter the *section/part, page number or addendum to identify each item being continued. Attach this addendum to the form.

Page _3_ of _4_   or **Addendum** _____

| | |
|---|---|
| Will identify and generate rhyme pairs | quarterly |
| Will identify first, middle, and last sound in words | quarterly |

| Student Name | Anna | Tiller | | Managing School | Janney Elementary | | DCPS - IEP |
| Student ID Number | 9226868 | | DOB 10/17/2003 | Attending School | Early Childhood | | Page 3 of 4 |

### VIII. SPECIALIZED SERVICES     Additional Comments: ☐

Goal Number: 6

Area addressed by goal: Academic readinesss

**ANNUAL GOAL: (including mastery criteria.)**

Will develop academic readiness skills to participate in classroom activities as demonstrated by completing the following objectives using 80% criteria for mastery unless otherwise indicated

**Provider(s):** Hearing Teacher, Special Education Teacher/Resource, Speech and Language Therapist

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| Will correctly identify temporal concepts during group discussion | | Quarterly |
| Will rote count 1 - 10 during classroom activities | | Quarterly |
| Will demonstrate one to one correspondence by correctly match numeral to a set of objects from 1 to 15 | | Quarterly |
| Will write letters to create meaningful text e.g., names, messages, story descriptions (3 out of 5) | | Quarterly |
| Will identify and name simple shapes while engaged in classroom activities | | Quarterly |
| Will identify and name alphabet letters while engaged in classroom activities (3 out of 5 opportunities) | | Quarterly |

### EVALUATION PROCEDURE(S)

☒ Portfolio  ☐ Log  ☐ Chart  ☐ Test  ☒ Documented Observation  ☐ Report  ☐ Other _____

District of Columbia Public Schools     07-02-2001     Division of Special Education     Appendix - A     IEP Page 3 of 4

| Student Name | Anna | Tiller | | Managing School | Janney Elementary | | DCPS - IEP Page 3 of 4 |
| Student ID Number | 9226868 | | DOB 10/17/2003 | Attending School | Early Childhood | | |

Goal Number: 7

| VIII. SPECIALIZED SERVICES | Additional Comments: ☒ |

Area addressed by goal: Communication

**ANNUAL GOAL: (including mastery criteria)**

Will improve auditory listening skills as demonstrated by completing the following objectives using 80% accuracy as criteria for mastery unless otherwise indicated

Provider(s): Audiologist, Hearing Teacher, Speech and Language

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| Will verbally reproduce alternating syllable strings of 4 syllables | | Quarterly |
| Will identify and repeat the Ling 6 sounds from 6 ft in a quiet setting (100%) | | Quarterly |
| Will label the quality of a sound using descriptor words when listening to environmental sounds (75%) | | Quarterly |
| Will verbalize when implant isn't working during daily activities (75%) | | Quarterly |
| Will identify quiet, medium and loud speech sounds when listening to words/phrases/sentences (100%) | | Quarterly |
| Will produce words with quiet, medium, and loud voice upon command with 75% accuracy | | Quarterly |

**EVALUATION PROCEDURE(S)**

☒ Portfolio   ☐ Log   ☒ Chart   ☐ Test   ☒ Documented Observation   ☐ Report   ☐ Other _____

District of Columbia Public Schools
Division of Special Education
Washington, D.C.

| IEP Continuation |
| Page |

## IEP CONTINUATION PAGE

Student Name  Anna                    Tiller                    DOB  10/17/2003   DATE _____

Student ID Number  9226868    Managing School    Janney Elementary

Attending School    Early Childhood

INSTRUCTIONS: Use this addendum when additional space is needed on an IEP section or part. Enter the
*section/part, page number or addendum to identify each item being continued. Attach this addendum to the form.

Page  3  of  4   or Addendum  _____

| | |
|---|---|
| Will alert to her name when called by teachrs or peers in a noisy classroom | quarterly |
| Will discriminate between minimal pairs by pointing to pictures/objects (75%) | quarterly |
| Will demonstrate auditory memory of 3-4 words by repeating strings of letters/numbers/words (75%) | quarterly |
| Will identify if implant is on or off during 1:1 listening check with 100% accuracy | quarterly |

| Student Name | Anna | Tiller | | Managing School | Janney Elementary | DCPS - IEP |
|---|---|---|---|---|---|---|
| Student ID Number | 9226868 | | DOB 10/17/2003 | Attending School | Early Childhood | Page 3 of 4 |

**VIII SPECIALIZED SERVICES**    Additional Comments: ☒    Goal Number: 8

Area addressed by goal:    Communication

**ANNUAL GOAL: (including mastery criteria )**

Will improve pragmatic language/behaviors as demonstrated by mastery of the following objectives using 80% criteria for mastery unless otherwise indicated

Provider(s): Speech and Language Therapist, Hearing Teacher, Sp

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| Will spontaneously use "it is my turn" and/or "Your turn . Two minutes" to negotiate turn taking with typically developing peers (75%) | | Quarterly |
| Will initiate play with peers and/or teachrs in dramatic-theme related play and on the playground (75%) | | Quarterly |
| Will verbally direct peers/teachers to follow her play plan in 2/4 opportunities | | Quarterly |
| Will ask peers/teachers novel questions or requests during conversational opportunities (75%) | | Quarterly |
| Will protest opportunities/objects by using phrase "no, thank you" . | | Quarterly |
| Will stay on topic by adding relevant comments to ongoing discussions | | Quarterly |

**EVALUATION PROCEDURE(S)**

☐ Portfolio  ☐ Log  ☐ Chart  ☐ Test  ☒ Documented Observation  ☐ Report  ☐ Other _____

District of Columbia Public Schools
Division of Special Education
Washington, D.C.

IEP Continuation Page

## IEP CONTINUATION PAGE

Student Name  Anna                    Tiller                         DOB  10/17/2003   DATE _____

Student ID Number  9226868     **Managing School**   Janney Elementary

                                     **Attending School**    Early Childhood

INSTRUCTIONS: Use this addendum when additional space is needed on an IEP section or part. Enter the
*section/part, page number or addendum to identify each item being continued. Attach this addendum to the form.

**Page  3  of  4   or Addendum** _____

| | |
|---|---|
| Will attend to speaker/group in structured classroom activities with no more than 2 prompts/redirections | quarterly |
| Will use conventional greetings with teachers and peers | quarterly |

| Student Name | Anna | Tiller | Managing School | Janney Elementary | DCPS - IEP |
|---|---|---|---|---|---|
| Student ID Number | 9226868 | DOB 10/17/2003 | Attending School | Early Childhood | Page 3 of 4 |

| VIII SPECIALIZED SERVICES | Additional Comments: ☒ | Goal Number: 9 |
|---|---|---|

Area addressed by goal: Communication

**ANNUAL GOAL: (including mastery criteria.)**

Will demonstrate improved language comprehension and use by completing the following objectives using 80% criteria for mastery unless otherwise indicated

Provider(s): Speech and Language Therapist, Hearing Teacher, Sp

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| Will use correct prepositions (75%) | | Quarterly |
| Will demonstrate understanding of comparative concepts (hot cold, wet dry) while making classroom observations (75%) | | Quarterly |
| Will demonstrate comprehension of quantitative concepts (one, some, all) while making classroom observations (75%) | | Quarterly |
| Will use quantitative concepts (one some all) while making classroom observations (75%) | | Quarterly |
| Will retell/share home experiences in response to WH questions (50%) | | Quarterly |
| Will use 5 new theme-related vocabulary words per week while engaged in both structured and unstructured classroom activities | | Quarterly |

**EVALUATION PROCEDURE(S)**

☒ Portfolio  ☐ Log  ☐ Chart  ☐ Test  ☒ Documented Observation  ☐ Report  ☐ Other _____

District of Columbia Public Schools
Division of Special Education
Washington, D.C.

<div style="border:1px solid">IEP Continuation Page</div>

## IEP CONTINUATION PAGE

Student Name  Anna                    Tiller                    DOB  10/17/2003  DATE _____

Student ID Number  9226868      Managing School    Janney Elementary

                                 Attending School    Early Childhood

INSTRUCTIONS: Use this addendum when additional space is needed on an IEP section or part. Enter the
*section/part, page number or addendum to identify each item being continued. Attach this addendum to the form.

Page  3  of  4    or Addendum    _____

| | |
|---|---|
| Will follow 2-3 step directions with minimal visual cues while engaged in classroom activity (75%) | quarterly |
| Will follow 1-2 step directions with 2 critical elements while engaged in classroom activity (75%) | quarterly |
| Will identify common object based on attribute or function (75%) | quarterly |
| Will correctly use modifiers (small, big, long, short) (75%) | quarterly |
| Will correctly use present progressive verb tense with copular "to be" to describe actions (75%) | quarterly |
| Will correctly use regular past tense verbs | quarterly |
| Will correctly use sequential terms (first middle then last) to sequence events of stories, daily schedules, or steps to complete a task (75%) | quarterly |
| Will use an average of 4-5 words per utterance to communicate requests and formulate comments | quarterly |
| Will demonstrate understanding of 8-10 vocab words related to current theme | quarterly |

| Student Name | Anna | Tiller | Managing School | Janney Elementary | DCPS - IEP |
|---|---|---|---|---|---|
| Student ID Number | 9226868 | DOB 10/17/2003 | Attending School | Early Childhood | Page 3 of 4 |

**VIII. SPECIALIZED SERVICES**    Additional Comments: ☐    Goal Number: 10

Area addressed by goal:  Communication

ANNUAL GOAL: (including mastery criteria.)

Will improve articulation skills as demonstrated by completing the following objectives

Provider(s): Speech and Language Therapist, Hearing Teacher, Special Education Teacher/Resource Roo

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| Will differentiate tonge from jaw (75%) | | Quarterly |
| Will disassociate lips from tongue during OM activity (75%) | | Quarterly |
| Will repeat syllable patterns and words of increasing length (75%) | | Quarterly |
| Will produce age appropriate phonemes while engaged in classroom activities at single word level (75%) | | Quarterly |
| Will perform DDK exercises with increased rate (75%) | | Quarterly |
| | | |

EVALUATION PROCEDURE(S)

☒ Portfolio  ☐ Log  ☐ Chart  ☒ Test  ☒ Documented Observation  ☐ Report  ☐ Other _____

DRAFT

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, D.C

Multidisciplinary Team
(MDT)
MEETING NOTES

Annual IEP Review **Meeting Notes**

STUDENT: Anna _____ Tiller _____ SCHOOL: Janney Elementary _____ DATE: 2/4/2008

| PARTICIPANTS: (Print Name) | PARTICIPANTS: (Sign Name) | POSITION |
|---|---|---|
| Mr./Mrs. Tiller | | Parent/Guardian |
| Shellie Wood, Ph.D. | | Special Ed |
| Katie Copps | _____ M.S. /Teacher | General Ed Teacher |
| Shellie Wood | | LEA Representative |
| Scott Cartland | Scott Cartland | Principal or Designee |
| Jean Tebinka | Jean Tebinka | Student Auditory/Oral Teacher of the Deaf |
| Toni Carroll | Allison Murtha | Speech Therapist |
| Julianne Lull | Julianne Lull, OTR/L | OT Therapist |

Jean Tabinka _____ Audiologist, DCPS
Jen Mertes _____ Aud — RS
Ellen Dalton Cane _____ Attorney; Kim Sak _____ Speech Pathologist, River School; Mary O'Leary
_____ River School; Amy Muldoon _____ River School; Michael Smith
_____ OT, River School; Jen Mertes, _____ Audiologist, River School

The purpose of the meeting is to review Anna's progress and develop an IEP for the coming year. Delivery of related and therapeutic services will be discussed along with intensity of program and location of placement. The Parents Procedural Handbook was offered and signed for. Anna has attended River School this year and received related services from Janney. See attached for IEP discussion. Placement will be considered and a prior notice will be issued within the next 2 weeks. Dr. Wood will consult with school personnel re placement options to fulfill the components of the IEP in a setting that is conducive to hearing impaired children with proper acoustics and appropriate staffing ratio.

*See attached.*

The Parent ☑ is present ☐ is not present at the meeting.

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, D.C.

MULTIDISCIPLINARY TEAM
(MDT)
MEETING NOTES (continuation)

| | | MDT |

STUDENT: _____ Anna  Tiller _____ SCHOOL: Early Childhood _____ DATE: 2/12/2008

The MDT is meeting today to revise Anna's IEP for the coming 10 month period and once again determine the least restrictive environment for service delivery as well as recommend a placement for the location of those program services. Introductions were made. Anna's current teacher described her current classroom and progress this year. She is currently in a class with 13 students, one other child with HI. The Speech therapist is in the class f/t to provide integration of language development with academic skills. Her language is dependent on cueing but she can participate in classroom social and academic activities with prompting. RE: level and intensity of programming for the coming school year. Audiologist from River brought in current report. Noise impacts. Functions as mild hearing loss with new implant. The MDT agrees to recommend full time classroom placement with support in hearing/speech and current related services. Ms. Tiller pleased with Anna's progress from beginning of the year where she was unable to be conversant to now where she can make her mind known. However it is still a major effort for her to complete 2 sentences together. Low muscle tone of needs—uses bumper seats and movement breaks. "Sensory gym" activities have been incorporated into therapy using a variety of environments and equipment. Ms. Lull recommends PT eval and new OT eval. Ms. Tiller agrees to new evals and says she had one from Jose Serjas but report was not given to Tillers and is not in record. Authorization papers for evals will be prepared. Page 2 data gathered from therapists and teacher. River School has not done formal academic assessments thus no scores are entered. Ms. Wills reviewed progress of goals and new drafts with Ms. Sac and will incorporate goals from River School to the current IEP removing any duplication from the DCPS goal sheet. Ms. Tobinka reviewed audiology drafted goals with River School audiologist and removed duplicated goals from DCPS document. Ms. Lull reviewed drafted goals for movement and OT collaborating with current teacher. Anna's disability classification is changed to reflect the impact of apraxia to that of multiple disabilities (MD) with hearing impaired (HI) and Speech/language impairment (SLI). River staff feel strongly that a full time sli therapist co teach in general ed setting. Others questioned whether that function can be served through co-teaching with multiple providers i.e., teacher of deaf and less than f/t sli therapist. Suggestion made that the SLI therapist should be training others to properly prompt and cue so that the methods can be more universal and generalized to other environments. Reference on page one to specialized instructional services and SLI services should be interpreted as conjoint efforts of speech therapist and teacher of deaf in conjunction with general ed teacher to provide full time support along with teacher in classroom setting. Placement discussion included recommendation for placement in a general education classroom with non-disabled peers to facilitate language modeling and development. Dr. Wood will consult with DCPS authorities to determine a placement site and issue a prior notice when determined. Meeting adjourned at 5:00 p.m.

# DCPS AUDITORY/ORAL HEARING IMPAIRED PROGRAM
# ELIGIBILITY FOR SERVICES

**Name:** Anna Tiller
**Date of birth:** 10/17/03
**Chronological age:** 3 years 6 months
**Hearing age:** 2 years 1 month
**Age of diagnosis:** 15 months
**Degree of hearing loss:** Bilateral profound sensorineural hearing loss
**Amplification:** Nucleus 24 Cochlear Implant, right side

**Date of Evaluation:** 5/2/07
**Duration of observation:** 2.5 hours
**Evaluator:** Allison Murtha, M.E.D., CTRS

## A. BACKGROUND INFORMATION

All information in this report was obtained through review of medical and educational records and discussions, in person, with Anna's teacher, classroom speech-language pathologist (SLP), and director of speech and language services at the River School.

Anna is a 3 year 6 month old identical twin and one of six siblings in the Tiller family. She was born in Naples, Italy via cesarean section following complications in her delivery due to a prolapsed cord. Anna's birth history is also significant for jaundice at one week old. Her hearing was screened at birth and results revealed responses within normal limits. At 2½ months Anna contracted bacterial meningitis. Following recovery, her hearing was screened at 6 months to rule out hearing loss from ototoxic drugs used to treat this condition. The screening yielded results within normal limits. Medical and educational reports indicate that Anna presented with developmental delays in her language and motor skills following her diagnosis and treatment of bacterial meningitis, and she was referred to the US Naval Hospital's Educational and Developmental Intervention Services for further evaluation. Anna's hearing was tested for a third time following concerns in her language development, and she was diagnosed with bilateral middle ear effusion at 11 months. She began receiving speech and language and physical therapy services at this time. At 14 months, Anna's hearing was re-evaluated and results were consistent with her previous evaluation. She received ventilation tubes at this time, but reports indicate further concerns regarding the status of her hearing following this surgery. She was referred to Walter Reed Army Hospital upon moving back to the United States. Her hearing was re-evaluated for a fifth time and was results revealed a bilateral profound sensorineural hearing loss. Anna qualified as a cochlear implant candidate, and received a Nucleus 24 cochlear implant from Walter Reed Army Hospital in Washington, DC in February of 2005 and was activated a month later at 17 months old. She is followed by clinical audiologist, Pamela Cain, at Bethesda Naval Hospital.

Anna currently attends the River School in Washington, DC. She is in a preschool class with 12 other peers and is one of two children with hearing loss in her class. The children are instructed by an early childhood educator and an SLP, and follow a thematic curriculum. Spoken language is the primary language used in the classroom. Anna receives speech and language therapy for one hour per week outside of the classroom from another SLP at the River School. She does not use an FM system during school. Per discussion with the director of speech and language services at the school, the staff prefers to wait until a child is able to convey whether or not their amplification is working before introducing FM systems. In July of 2006, Anna was diagnosed with verbal apraxia secondary to her hearing loss. She does not receive occupational therapy services at this time.

Plaintiff Exhibit    4

B. OBSERVATION

Observation of Anna and her class routine took place within the first two and half hours of school (8:30 a.m. – 11:00 a.m.). The following observation checklists were used to assess Anna's environment and performance in her school routine:

- *District of Columbia Hearing-Impaired Department Mainstream Observation Form*
- *Checklist for Observing Classroom Participation of Hearing-Impaired Student (Cochlear Implant Center at Manhattan Eye, Ear, and Throat Hospital)*
- *Children's Auditory Performance Scale (C.H.A.P.S.)*

Anna is a vivacious and social young girl. She arrived to school with her mother and twin sister, and immediately joined peers at the sensory table in the classroom. She was taken to a small, closed off hallway area for a listening check with the SLP. Anna was attentive during the task and verbally discriminated all 6 Ling sounds, but did need a second auditory prompt to properly discriminate /m/ from /oo/. She then returned to the classroom to join her peers in activity time.

The physical classroom is average in size. It is acoustically treated with carpeting and has low ceilings. The walls facing the hallway and the outside of school are primarily comprised of windows. The activity area was set up in one half of the classroom, and included 4 centers for the children to move about freely. The theme in the classroom this month was pizza, and all activities corresponded with this theme. Environmental/external noise was minimal in the classroom, but linguistic noise was loud at times due to the location and type of the activities taking place in the room. The teacher and SLP moved about the activity area to participate with the children in their play. They each took turns interacting with Anna, often clarifying or mediating language between her and her peers. Anna appeared to have most difficulty in properly responding to questions. The adult interacting with her often had to rephrase or provide more contextual information for Anna to properly respond. When not interacting with an adult, Anna's use of spoken language was minimal as she played with peers, but she was able to convey her wants through simple phrases and natural gestures (e.g. "No, my turn." *pointing to self*).

After a half hour of activity time, the children transitioned into circle time for a brief meeting. Anna sat to right of the teacher, and the SLP sat behind her at circle. Her teacher and SLP report that Anna has difficulty attending to circle time, and uses a sensory cushion, which seems to improve her attention to the task at hand. The recommendation for use of the cushion came from an occupational therapist at the school. The teacher discussed the day's schedule and reviewed the circle time story from yesterday. The SLP often repeated or rephrased the message for Anna. When asked an open-ended question regarding what happened in the story that they had read the previous day, Anna had difficulty in appropriately responding. She needed verbal prompts and modeled language from the SLP as well as pictures of from the book to assist her in organizing and verbally conveying the events from the story. Anna was very eager to share her thoughts with others, but did need adult intervention in order to do so.

The class participated in "mouth time" which is a combination of oral motor activities and visual phonics. The children took turns working with the teacher and the SLP on lip popping for stimulation and bilabial sounds, raising the tongue to the alveolar ridge in the mouth to produce /l/, and bubble blowing for lip-rounding and breath control. Anna needed tactile input and support from the SLP to

reproduce an /l/ sound five times in isolation. She uses short, abrupt breaths to blow bubbles, but with practice was able to elongate her breath to blow bubbles successfully.

Anna and her peers transitioned to physical education. Physical education is held in a large gym with one adult to instruct the class. The children engaged in a scooter board activity with partners that relied heavily on following the directions of the gym teacher to stop, switch positions, line up, etc. Anna appeared to enjoy physical education, but relied heavily on watching her peers for information. The teacher did not stay within close proximity to Anna during this activity, making it difficult for her to hear spoken directions. Following physical education, Anna's class took a bathroom break before proceeding outside for playground time. On the playground, Anna engaged in pretend play with her peers, teacher, and SLP. While she actively and happily played with her peers, Anna's verbal communication with them was minimal and it appeared that it was often difficult for her to understand them. Her teacher and SLP often mediated the language when present during such play activities. Anna and her peers returned to the classroom for snack time, completing the observation.

## C. SUMMARY & IMPRESSIONS

Anna is a sweet and outgoing preschooler who loves interacting with her peers, teacher, and SLP. Anna's cochlear implant has been activated and in use for over two years, and while she has been making progress her SLP and teacher report "significant lag" in her spoken language in comparison to her hearing peers. Observation of Anna in her classroom revealed that she often omits articles, copulas and syllables from words and sentences, substitutes and omits medial and final consonants in words, and gives inappropriate or one-word responses to questions less familiar and out of context. She relies heavily on the adults in her classroom environment to mediate language in both structured and unstructured times in her daily routine. These behaviors and language errors are typical of individuals with a significant hearing loss. Anna did show that she is able to follow stereotypic directions in her daily routine, retain concepts learned in school as evidenced through her play, and is a very willing participant in all her school routines.

Although Anna's behavior is socially appropriate at this time, her ability to effectively use spoken language is significantly impacted by her access to consistent auditory information and her ability to properly reproduce speech as she perceives it. Even with amplification Anna must work harder than her hearing peers to hear and understand everyday spoken language, particularly in environments that do not provide good acoustics. Access to good auditory input from amplification, strong language models, and appropriate educational staff who are knowledgeable regarding the educational needs of children with hearing loss are essential in helping Anna become a successful spoken language user as she continues to be exposed to more complex language in increasingly challenging environments.

## D. RECOMMENDATIONS

The following recommendations have been made to help Anna receive the most appropriate services to meet her auditory, language, speech and cognitive needs.

1. Anna should receive educational services in an inclusive classroom environment with small student to teacher ratio that offers opportunities for intensive language instruction in both group and individual situations.
2. Anna should have access to a teacher of the deaf and hard of hearing specifically trained in auditory/oral education to monitor her educational progress and address auditory, language, and speech concerns specific to children with hearing loss in an auditory/oral environment, particularly in pre-teaching and post-teaching academic content.

3. Anna should have access to an FM system while in school to provide her with the best possible access to speech, particularly in situations that do not offer the best signal to noise ratio.

4. Anna should continue to receive speech and language services outside of the classroom with a speech-language pathologist to address her oral motor issues in addition to her speech and language needs related to hearing loss. It is recommended that these services be spread over the course of her school week to encourage consistency and regular practice of therapy targets.

ALLISON M. MURTHA, M.E.D., CTRS

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **SARAH & MICHAEL TILLER,**<br>**as parents and next friend of the minor child,**<br>**A.T.**<br>**and**<br>**A.T., individually** | : <br> : <br> : <br> : <br> : <br> : <br> : |
| **Plaintiffs** | : <br> : |
| **v.** | : **Civil Action No.  07-1736 (JR)** <br> : |
| **GOVERNMENT OF THE DISTRICT OF COLUMBIA** | : <br> : |
| **A Municipal Corporation** | : <br> : |
| **Defendant.** | : <br> : |

## DECLARATION OF SARAH TILLER

I, Sarah Tiller, do hereby declare under penalty of perjury that the foregoing is true and accurate:

1. I am a citizen of the United States of America, over the age of eighteen (18), and I have personal knowledge of the facts contained herein.

2. I am the mother of A.T.

3. I have reviewed Exhibit 1 attached to the Defendant's Opposition to Plaintiff's Motion for Summary Judgment filed on February 29, 2008.  See Attached Exhibit 1.

4. At no time prior to February 29, 2008 did DCPS provide me or my husband who is currently deployed oversee's in the military a copy of Exhibit 1, the Physical Therapy Evaluation dated February 23, 2007.

5. At no time has DCPS ever contacted or sent me or my husband notice that they wanted to convene a meeting to review this evaluation and to this date this evaluation

has never been reviewed with me or my husband.

6. At A.T.'s most recent annual IEP meeting on February 12, 2008, I was for the first time provided with a report from Allision Murtha, M.E.D., CTRS dated May 2, 2007. Prior to February 12, 2008, neither I nor my husband had never been told of the existence of this report by a DCPS teacher of the deaf and hard of hearing. The report is attached as Exhibit 4. "DCPS Auditory/Oral Hearing Impaired Program Eligibility For Services.

Sarah Tiller, Mother of A.T

April 20, 2008
Date

2

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| | : |
| **SARA & MICHAEL TILLER,** | : |
| **as parents and next friend of the minor child,** | : |
| **A.T.** | : |
| **and** | : |
| **A.T., individually** | : |
| | : |
| **Plaintiffs** | : |
| | : |
| **v.** | : **Civil Action No.  07-1736 (JR)** |
| | : |
| **GOVERNMENT OF THE DISTRICT OF COLUMBIA** | : |
| **A Municipal Corporation** | : |
| | : |
| **Defendant.** | : |

---

## ORDER

Upon consideration of the Plaintiffs' Motion for Summary Judgment, and any opposition thereto, it is hereby

ORDERED: that Plaintiffs' Motion for Summary Judgment is GRANTED;

FURTHER ORDERED:  The June 29,  2007, Hearing Officer's Determination is reversed and

FURTHER ORDERED: that DCPS shall place and fund A.T. at the River School retroactively from the date of October 17, 2006 until such time as DCPS proposes an appropriate placement.

_____
Date

_____
James Robertson
United States District Judge